## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Preston Byron Knapp,<br><br>        Plaintiff,<br><br>vs.<br><br>Wings Credit Union; AKA Wings Financial Credit Union,<br><br>        Defendant. | Case No: 0:24-cv-00434 (DWF/ECW)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |

### INTRODUCTION

Defendant Wings Financial Credit Union ("Wings") moves the Court for an Order dismissing Plaintiff Preston Byron Knapp's ("Plaintiff") Complaint, with prejudice, for failure to state a claim upon which relief can be granted. Plaintiff's Complaint is frivolous, nonsensical, and legally meritless, and Plaintiff failed to personally serve Wings, as required by the Federal Rules of Civil Procedure.

Plaintiff's Complaint is based on conspiracy theories that courts around the country have repeatedly and resoundingly rejected. Wings and Plaintiff have entered into a number of binding agreements related to a mortgage loan and home equity line of credit ("HELOC"), which are secured by the property owned by Plaintiff and his wife. The claims he alleges are frivolous attempts to avoid actually paying Wings the amounts owed under the parties' binding contracts and are brought solely to harass Wings and advance the conspiracy theories of Plaintiff's "attorney-in-fact" Brandon Joe Williams. This Court should therefore dismiss the Complaint, with prejudice.

## FACTUAL BACKGROUND

Wings is a state-chartered credit union organized pursuant to Chapter 52 of Minnesota Statutes. Plaintiff Preston Byron Knapp and his wife, non-party Michelle Nichole Knapp, have a mortgage loan with Wings (the "Mortgage"), and a HELOC with Wings (the "HELOC"). (Compl. ¶¶ 10–11, ECF No. 1; Declaration of Tessa Mansfield Hirte ("Hirte Decl."), Ex. 1 (Mortgage); Ex. 2 (Note); Ex. 3 (Revolving Credit Mortgage); Ex. 4 (Open-End Home Equity Credit Agreement and Truth in Lending Disclosure).

Under the terms of Plaintiff's Mortgage and HELOC, he is required to make payments on the loans when due. *See* Hirte Decl. Ex. 2, at 1 ("In return for a loan that I have received, I promise to pay U.S. $1,119,400.00 (this account is called 'Principal'), plus interest, to the order of the Lender."); Hirte Decl. Ex. 1, at 2–3 (agreeing to "pay when due the principal of, and interest on, the debt evidenced by the Note"); Hirte Decl. Ex. 3, at 2 ("Borrower shall promptly pay when due all amounts borrowed under the Credit Agreement, all finance charges and applicable other charges and collection costs as provided in Credit Agreement."); Hirte Decl. Ex. 4, at 1 ("You promise to repay to the Credit Union, or order, all advances made to you under this Plan, plus finance charges, other applicable charges, and costs of voluntary payment protection for which you are responsible for under this Plan."). Plaintiff further agreed to make all payments under the Mortgage "in the form of cash, check or money order" and "in U.S. currency." Hirte Decl. Ex. 2, at 1; Ex. 1, at 3.

In November of 2023, Plaintiff signed a document appointing Brandon Joe Williams ("Williams") as his "attorney-in-fact" and purporting to grant Williams the power to "[p]erform any act necessary to deposit, negotiate, sell or transfer any note, real estate, security, or draft of the United States of America, including U.S. Treasury Securities. This includes any non-US notes, securities, drafts, etc. This includes indorsements, approvals, exchanges, etc." *See* Compl. ¶¶ 39, 43; *see also* Hirte Decl. Ex. 5, Documents Received from Williams January 11, 2024, at 6–17.

In January of 2024, Williams sent "orders" to Wings related to Plaintiff's mortgage loan and HELOC. *See* Compl. ¶¶ 39–40; Hirte Decl. Ex. 5. Plaintiff alleges these "orders" included at "unconditional tender of payment in accordance with UCC 3-603," "a payment for US dollars," and "an unconditional order to pay." *Id.* ¶¶ 47, 49–50. The Complaint also alleges that Plaintiff "submitted another entire promissory note in order to perform on the mortgage." *Id.* ¶ 60. Plaintiff's theory appears to be that, by signing the documents included in the "orders" with a "special indorsement," he converted the documents to "negotiable instruments" which constitute "payment in US dollars" and thereby satisfy Plaintiff's loans with Wings. *See id.* ¶¶ 15, 49, 74–75.

Plaintiff's Complaint asserts state-law claims for breach of contract (Count 1) and breach of fiduciary duties (Count 2), and federal claims for violation of 12 U.S.C. § 504 (Count 3), violation of securities-related criminal statutes (Counts 4–6), and violations of Chapter 77 of Title 18 related to peonage, slavery, and trafficking in persons (Counts 7–11). *See* Compl.

Plaintiff and his wife have also commenced a separate lawsuit in the District of Minnesota against Compass Minnesota, LLC and Daniel Phillip Hollerman, their real estate broker and agent, asserting similar claims to those asserted here. *See Knapp v. Compass Minnesota, LLC*, No. 24-cv-00100-SRN-DTS (D. Minn.).

## ARGUMENT

### I.   Legal Standard.

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must establish sufficient facts that state a claim for relief "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). To determine if a claim is sufficient, the Court accepts and treats all the factual allegations as true and draws reasonable inferences in favor of the plaintiff. *Paisley Park Enterprises, Inc. v. Boxill*, 361 F. Supp. 3d 869, 880 (D. Minn. 2019) (citing *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010)). However, the Court must disregard legal conclusions couched as fact, and merely reciting the elements of a cause of action is insufficient to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Similarly, while the factual allegations need not be detailed, they must demonstrate a "right to relief above the speculative level" and "state a claim to relief that is plausible on its fact." *Id*. at 555, 570.

While pro se complaints are liberally construed, even pro se litigants must set forth their claims "in a manner which, taking the pleaded facts as true, states a claim as a matter of law." *Cunningham v. Ray*, 648 F.2d 1185, 1186 (8th Cir. 1981). "[P]ro se litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*,

745 F.2d 526, 528 (8th Cir. 1984). Even pro se complaints "still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004); *see also Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (explaining that courts "will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded").

On a motion to dismiss, courts consider not only the complaint, but also "materials that are necessarily embraced by the pleadings," including "documents incorporated into the complaint by reference." *Bachman's Inc. v. Florists' Mut. Ins. Co.*, 525 F. Supp. 3d 984, 986 (D. Minn. 2021). "In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss.  This is true even if contract documents not attached to the complaint refute a breach-of-contract claim, or a claim that defendant breached a statutory or common law duty." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (citation and quotation omitted); *see also Iqbal*, 556 U.S. at 678 (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (quotation omitted)).

## II.    Counts 1 and 2 Must be Dismissed Because They are Based on Meritless Conspiracy Theories.

Plaintiff's Count 1 claim for breach of contract and Count 2 claim for breach of fiduciary duty must be dismissed because both are premised upon conspiracy theories that have been repeatedly rejected by federal courts.

Plaintiff's claims appear to be based on a theory often referred to as the "vapor money" theory. The vapor money theory posits "that promissory notes (and similar

instruments) are the equivalent of 'money' that citizens literally 'create' with their signatures." *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 212 (D. Conn. 2010).

> Bolstering this argument (at least for its adherents) is the fact that once received, banks typically deposit promissory notes into their own accounts and list them as assets. Then, according to the vapor money theory, the bank purports to lend the 'money' that was "created" by the citizen's signature back to the citizen-borrower.

*Id.*

Plaintiff's Complaint appears to rely on a form of the "vapor money" theory, under which Plaintiff apparently believes that by sending Wings documents containing his signature and specific language (which he refers to as a "special indorsement"), he can then convert various documents, including the notes underlying the Mortgage and HELOC, an additional "promissory note" he created, and the monthly billing statements sent by Wings (which he claims are "bills of exchange") into "negotiable instruments," which he can then use as payments to satisfy his debts to Wings.[1] *See* Compl. ¶¶ 23, 30-34.

---

[1] In Plaintiff's version, he appears to assert that Wings exchanged the original loan documents he signed for Federal Reserve Notes (i.e., paper US currency) pursuant to 12 U.S.C. § 412, and that by sending Wings "orders" with his signature and a "special indorsement" those Federal Reserve Notes are then used to payoff his loans. *See* Compl. ¶ 15 ("Proper performance would have been to indorse the original collateral securities under special negotiation, prior to them being exchanged for Federal Reserve Notes."); *id.* ¶ 49 ("Due to the original application having already been swapped for Federal Reserve Notes after the application was indorsed with a blank indorsement, the orders inside the parcel were a payment for US dollars."); *see also id.* ¶¶ 29, 74. In addition to being based on conspiracy theories universally rejected by the federal courts, the underlying premise that Wings can obtain Federal Reserve Notes pursuant to 12 U.S.C. § 412 is false. Section 412 requires that an application for Federal Reserve Notes be made by a "Federal Reserve bank." Clearly, Wings is not a "Federal Reserve bank," and thus Section 412 is inapplicable to it. *See, e.g.*, 12 U.S.C. § 225 (requiring federal reserve banks to "include in its title the name of the city in which it is situated, as 'Federal Reserve Bank of Chicago'").

Federal courts have widely and universally rejected the theories underlying Plaintiff's allegations for decades. For example, in *Demmler v. Bank One NA*, 2006 U.S. Dist. LEXIS 9409, *3 (S.D. Oh. Mar. 9, 2006), the plaintiff obtained a loan that was secured by a mortgage on his real property. *Id.* When the plaintiff defaulted on the loan, the defendant initiated foreclosure proceedings. *Id.* The plaintiff sued the defendant alleging twenty-one causes of action related to the note and mortgage. *Id.* The court explained the basic theory behind the plaintiff's complaint as follows:

> [A]ll of Plaintiff's claims, federal and state, stem from the same basic premise. Plaintiff alleges that the promissory note he executed is the equivalent of "money" that he gave to the bank. He contends that Bank One took his "money," i.e., the promissory note, deposited it into its own account without his permission, listed it as an "asset" on its ledger entries, and then essentially lent his own money back to him. He contends that Bank One did not actually have the funds available to lend to him, but instead "created" the money through its bookkeeping procedures.

*Id.* *10-11.

The court dismissed the entire case, noting that the plaintiff provided "no authority for this patently ludicrous argument" and that "[s]imilar arguments have been rejected by federal courts across the country." *Id.* at *11. The court further explained, "While a promissory note may be a negotiable instrument, the note itself is not 'money.' It is nothing more than the acknowledgment of a debt and a promise to repay the debt at some date in the future." *Id.* at *13-14. *See also McLaughlin*, 726 F. Supp. 2d at 214 (rejecting plaintiff's claims under the "Redemptionist" theory, the "vapor money" theory; and the "unlawful money" theory, and noting "all three of these theories have been universally and emphatically rejected by numerous federal courts for at least the last 25 years"); *Harp v.*

*Police*, No. 23-2577, 2023 U.S. Dist. LEXIS 139418 (E.D. Pa. Aug. 10, 2023) ("[O]ther courts nationwide have rejected such 'frivolous' attempts to satisfy a debt through a fictitious 'bill of exchange.'"); *Rabbe v. Wells Fargo Home Mortg., Inc.*, No. 8:17-CV-131, 2017 U.S. Dist. LEXIS 88910, at *4 (D. Neb. June 9, 2017) ( "The plaintiffs' particular permutation is commonly referred to as a 'vapor money' or an 'unlawful money' claim, and has been uniformly rejected by every court to consider it."); *Hennis v. Trustmark Bank*, 2010 U.S. Dist. LEXIS 45759, *16 (S.D. Miss. May 10, 2010) ("From coast to coast, claims that debts have been paid under the redemption theory by the plaintiffs' issuance of 'bills of exchange' have been dismissed as frivolous.").

Similar to the claims in *Demmler* and related authorities, Plaintiff's claim that by submitting a "special indorsement" he somehow converted the original notes and monthly billing statements into legal tender is patently ludicrous and frivolous. Consequently, Plaintiff's claims of breach of contract and breach of fiduciary duty must be dismissed with prejudice.

## III. Plaintiff's Breach of Contract Claim (Count 1) Must be Dismissed Because Plaintiff Has Not Identified Any Provisions Within the Parties' Contracts That Wings Has Allegedly Breached.

Plaintiff's breach of contract claim must be dismissed for failure to identify any contract or contractual provision that has allegedly been breached. Breach of contract is a state law claim to which federal courts apply Minnesota law. *See Bores v. Domino's Pizza, LLC*, 530 F.3d 671, 674 (8th Cir. 2008). "A breach of contract is a failure, without legal excuse, to perform any promise that forms the whole or part of the contract." *Lyon Fin. Servs., Inc. v. Illinois Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014) (citations

omitted). "To plausibly plead breach of contract, it is not enough to allege that the defendants acted contrary to an agreement. The plaintiff must allege sufficient details for the Court to infer that a material term of the contract has been breached." *Hopper v. BMO Harris Bank, N.A* (D. Minn. Aug. 2, 2023).

At a basic level, Plaintiff's breach of contract claim fails to identify any contact or contractual provision that has allegedly been breached. *See generally* Compl. In Count 1, Plaintiff alleges that he submitted a promissory note to Wings "in order to perform on the mortgage" and alleges that Wings ignored that "tender." *Id.* ¶ 60–61. While unclear, it appears Plaintiff is alleging that he fulfilled his obligations with regard to his loans with Wings by providing Wings with a "promissory note." Plaintiff does not identify what provision(s) in any of his contracts were breached or what language within those contracts would require Wings to accept this alleged "promissory note" as the payment he is required to make under the terms of both loans.

Courts have rejected similar claims on numerous occasions. For example, in *Harp v. Police*, 2023 U.S. Dist. LEXIS 139418, *2 (E.D. Penn. Aug. 10, 2023), the plaintiff attempted to pay her credit card bill by submitting to the defendant credit union a "bill of exchange" that "was fashioned from the Enclosure Form sent with her credit card statement, on which [the plaintiff] indicated that the 'Amount Enclosed' was $5,480.46, with notations stating 'ACCEPTED,' 'PAY TO BEARER,' 'PAY WITH INTEREST,' and 'PAY ON DEMAND.'" Along with the "bill of exchange", the plaintiff sent a letter claiming, "I have performed my contractual obligations by remitting payment via bill of exchange as collateral security and legal tender." *Id.* at *2-3. When the credit union refused

to accept the "bill of exchange" as legal tender, the plaintiff sued the credit union asserting, among other claims, breach of contract. *Id.* at *4.

The court dismissed the breach of contract claim, noting that the terms of the plaintiff's account agreement gave the credit union discretion to refuse any financial instrument presented for deposit. *Id.* at *8. Moreover, the court found that, even if the terms of the agreement did not give the credit union such discretion, the "bill of exchange" presented by the plaintiff clearly was not valid legal tender. *Id.* The court explained, "In other circumstances, a bill of exchange is certainly a valid financial instrument, often used to keep track of debt in international trade. … But here, rather than a legally enforceable document noting an existing debt that PFFCU owed to her, Harp simply handwrote an array of financial buzzwords on her credit card statement and tried to pass this off to PFFCU as valid legal tender for her credit card debt. This is not a valid financial instrument, and other courts nationwide have rejected such 'frivolous' attempts to satisfy a debt through a fictitious 'bill of exchange.'" *Id.* at *8-9.

Similarly, here, the Mortgage, HELOC, and related loan documents do not contain any provisions requiring Wings to accept an alleged "promissory note" or "bill of exchange" in lieu of payment. Instead, the Mortgage and underlying note require Plaintiff to repay the loan in the form of cash, check or money order and make payments "in U.S. currency." *See* Hirte Decl. Ex. 2, at 1; Ex. 1, at 2–3. Nowhere in the Mortgage, HELOC, or related loan documents does it state that Wings is required to accept a fictitious "promissory note" or "bill of exchange" in lieu of payment. Similar to the "bill of

exchange" in *Harp*, Plaintiff's "promissory note", "bills of exchange", and "special indorsements" are not valid financial instruments.

The entire theory underlying Plaintiff's breach of contract claim is frivolous and unsupported by both the law and the factual allegations. As such, this Court should dismiss Plaintiff's breach of contract claim with prejudice.

**IV.  Plaintiff's Breach of Fiduciary Duty Claim (Count 2) Must Be Dismissed Because Wings Does Not Owe Plaintiff Fiduciary Duties and Plaintiff Fails to Identify Any Actions That Would Constitute a Breach.**

Plaintiff's breach of fiduciary duty claim fails because Wings does not owe Plaintiff any fiduciary duties, and the Complaint does not identify actions that would constitute a breach of fiduciary duties. Plaintiff alleges that Wings "has a fiduciary duty to [his] financial success," "is paid to ensure the law is correctly applied in respect to" him, and that Wings never mentioned to him "the benefits of special indorsements," claiming that "[t]his breach of fiduciary duty has caused years of anxiety over the extraneous paying of bills that is entirely unnecessary." Compl. ¶¶ 69–70, 78, 80. This claim is meritless.

First, Wings does not owe Plaintiff fiduciary duties. *See Roers v. Countrywide Home Loans, Inc.*, 728 F.3d 832, 838 (8th Cir. 2013) ("The general rule in Minnesota is that lenders bear no fiduciary duty to borrowers." (quotation omitted)); *Impulse Trading v. Norwest Bank Minn., N.A.*, 870 F. Supp. 954, 961 (D. Minn. 1994) ("The relationship between a bank and its customer is one of debtor and creditor, with the customer as the creditor and the bank the debtor. This relationship is not one of agent and principle and therefore does not give rise to a fiduciary relationship." (citation omitted)). Plaintiff's relationship with Wings is contractual, not fiduciary.

Plaintiff also fails to identify any actions that would constitute a breach of fiduciary duty, if such a duty existed. Plaintiff's breach of fiduciary duty claim appears to be based on his theory that he can do a "special indorsement" on certain documents and somehow that constitutes payment of Plaintiff's loans with Wings. Plaintiff seems to assert that Wings should have advised him regarding his ability to do a "special indorsement." *See* Compl. ¶¶ 15–19, 45, 49, 51–54, 74–80. As explained above, Plaintiff's theory regarding a "special indorsement" is meritless, and therefore cannot support a claim for breach of fiduciary duty.

**V.    Plaintiff's Claim for Civil Penalties Under 12 U.S.C. § 504 Fails as a Matter of Law Because the Statute Does Not Apply to Wings, The Statute Does Not Provide a Private Right of Action, and Plaintiff Failed to Plead Facts that Would Support Imposition of a Civil Penalty.**

Plaintiff's federal claims fair no better than his state law claims. To begin with, Plaintiff's claim that Wings is subject to a civil penalty pursuant to 12 U.S.C. § 504 is frivolous. Section 504 provides civil penalties for any "member bank" which engages in certain conduct. A "member bank" is "any national bank, State bank, or bank or trust company which has become a member of one of the Federal reserve banks." 12 U.S.C. § 221. Wings is not a "national bank, State bank, or bank or trust company." It is a state-chartered credit union organized pursuant to Chapter 52 of Minnesota Statutes, and thus cannot be "a member of one of the Federal reserve banks." *See id.*; *see also* Minn. Stat. § 52.001 (defining credit union as "a cooperative, not-for-profit financial institution formed and operating under this chapter"); Minn. Stat. § 52.01 (providing the manner of

organization for a Minnesota credit union).  Thus, this claim must be dismissed because Wings is not subject to the requirements of Section 504.

Plaintiff's claim is also meritless because section 504 does not provide a private right of action. *See* 12 U.S.C. § 504 (e) (providing that penalties shall be assess and collected be either the Comptroller of the Currency or the Federal Reserve Board); *Harp*, 2023 U.S. Dist. LEXIS 139418, at *12   (holding that "the imposition of civil penalties under [12 U.S.C. § 504] is carried out by federal officials, and private individuals do not have a private right of action to enforce [12 U.S.C. § 504] of the Federal Reserve Act"); *see also Ritchie*, 2024 U.S. Dist. LEXIS 12159, at *6 ( "Plaintiff has not stated a claim for relief under the Federal Reserve Act because this statutory scheme does not contain a private right of action."). Plaintiff has failed to plead any facts to indicate that he is a federal official with the authority to impose civil penalties under section 504—to the contrary, he pleaded that he is "a person residing in Hennepin County, Minnesota." Compl. ¶ 5.

Finally, Plaintiff's claim also fails because Plaintiff failed to plead facts that support a violation of Section 504. Plaintiff alleges that Section 504 "is involved because WINGS never attempted to work with Preston Byron Knapp's performance." Even if true, such an allegation does not amount to a violation of the Federal Reserve Act. Section 504 provides for several different tiers of violations, subject to different penalties. *See* 12 U.S.C. § 504. Subsection (a) provides that, "Any member bank which . . . violates any provision of section 371c, 371c–1, 375, 375a, 375b, 376, or 503 of this title, or any regulation issued pursuant thereto, shall forfeit and pay a civil penalty of not more than $5,000 for each day during which such violation continues." *Id.*, (a). However, Sections 371c and 371c-1 relate

to affiliate transactions, Section 375 is blank (reserved for future use), Sections 375a and 375b relate to loans and extension of credit to executive officers, Section 376 relates to the interest rates paid to directors, employees, etc., and Section 503 imposes liability for directors and officers for violation of sections 375, 375a, 375b, and 376. None of the allegations in the Complaint bear any logical connection with those sections of the Act.

Subsection (b) provides liability for committing a violation described in subsection (a), recklessly engaging "in an unsafe or unsound practice in conducting the affairs of such member bank" or breaching a fiduciary duty, if such violation, practice, or breach is: "(A) is part of a pattern of misconduct; (B) causes or is likely to cause more than a minimal loss to such member bank; or (C) results in pecuniary gain or other benefit to such party." *Id.*, (b). Plaintiff does not allege a violation of subsection (a) or that Wings engaged in an unsafe or unsound practice, and as addressed above, Wings neither owes Plaintiff fiduciary duties nor breached such non-existent duties to Plaintiff. Subsection (c) provides similar liability where such conduct "knowingly or recklessly causes a substantial loss to such credit union or a substantial pecuniary gain or other benefit to such party by reason of such violation, practice, or breach." *Id.*, (c). Plaintiff's Complaint does not allege facts which, if true, would amount to a violation of Section 504, and thus Plaintiff's Complaint fails to identify any actions by Wings that would lead to imposition of a penalty under section 504, even if it applied.

Plaintiff's Count 3 fails because Section 504 does not apply to Wings, Plaintiff cannot enforce Section 504, and Plaintiff's Complaint fails to allege facts that, if true, would support a violation of Section 504.

14

**VI.    Plaintiff's Claims Based on 18 U.S.C. § 1956, 18 U.S.C. § 2314, and 18 U.S.C. § 1348, (Counts 4–6) Must Be Dismissed Because Plaintiff, as a Private Citizen, Cannot Enforce Criminal Statutes.**

Plaintiff's claims under 18 U.S.C. §§ 1348, 1956, and 2314 also fail as a matter of law because they are all based on alleged violations of criminal statutes. Count 4 is based on 18 U.S.C. § 1956 (Laundering of Monetary Instruments), Count 5 is based on 18 U.S.C. § 2314 (Transportation of Stolen Securities), and Count 6 is based on 18 U.S.C. § 1348 (Securities and Commodities Fraud). As a private citizen, Plaintiff does not have standing to bring these claims. *See Kunzer v. Magill*, 667 F. Supp. 2d 1058, 1062 (D. Minn. 2009) ("A private citizen does not have standing either to enforce federal criminal statutes or to have such statutes enforced.").

These claims also fail because there is no private right of action under these statutes. In determining if a statute provides a private right of action, courts look to congressional intent to see if a private right of action was contemplated by Congress. *Patil v. Minn. State Univ.*, No. 12-1052 (JRT/JSM), 2012 U.S. Dist. LEXIS 187279, at *40-41 (D. Minn. Dec. 10, 2012). If such intent cannot be inferred from the statutory language, its structure, or some other source, there is no private right of action. *Id.* The presence of a criminal statute neither creates nor implies a corresponding private right of action. *See United States v. Wadena*, 152 F.3d 831, 845–46 (8th Cir. 1998). Only the United States attorney has the right to assert claims under Title 18. *See* 28 U.S.C. § 547(a) ("[E]ach United States attorney, within his district, shall . . . prosecute for all offenses against the United States.").

There is no question that Plaintiff cannot assert a private right of action under these sections of Title 18. Numerous courts have found there is no private right of action under

Section 1956. *See Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 668 (S.D.N.Y. 2000) (finding that § 1956 does not expressly provide a private right of action); *see also Selmon-Austin El v. Wells Fargo Bank*, No. 2:19-cv-02538-JTF-cgc, 2020 U.S. Dist. LEXIS 61713, at *10 (W.D. Tenn. Mar. 12, 2020) (citing a number of cases holding Section 1956 does not provide a private right of action); *Barrett v. City of Allentown*, 152 F.R.D. 50, 56 (E.D. Pa. 1993) (holding there is no civil action available under 18 U.S.C. § 1956). Likewise, there is no language within Section 2314 that provides a private right of action, *see* 18 U.S.C. § 2314, and courts in other districts have found no private right of action exists under Section 2314, *see Klein v. Sutro Bros. & Co.*, No. 69 Civ. 3693., 1970 U.S. Dist. LEXIS 13072, at *4 (S.D.N.Y. Jan. 26, 1970); *Carroll v. United States Equities Corp.*, No. 1:18-CV-667, 2020 U.S. Dist. LEXIS 258605, at *49 (N.D.N.Y. Nov. 30, 2020) (holding there is no independent civil claim under 18 U.S.C. § 2314). Additionally, nothing in the language of Section 1348 implies a private right of action, *see* 18 U.S.C. § 1348, and courts have held there is no private right of action, *see, e.g.*, *Barringer v. Ohio*, No. 3:23 CV 1530, 2023 U.S. Dist. LEXIS 216430, at *3 (N.D. Ohio Dec. 5, 2023); *Francis v. Fannie Mae*, No. 20-CV-5863(EK)(LB), 2021 U.S. Dist. LEXIS 48595, at *5 (E.D.N.Y. Mar. 15, 2021).

Finally, even if Plaintiff could assert a claim for a violation of Section 1348, such claim is not pleaded with the particularity required by Fed. R. Civ. P. 9(b). When alleging fraud or mistake, a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The complaint must plead such matters as the time, place and contents of false representations, as well as the identity of the person

making the misrepresentation and what was obtained or given up thereby." *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 421 (8th Cir. 2020).

Here, Plaintiff's only assertion of fraud is that fraud resulted "due to complete failure to disclose the terms and options of signing/indorsing above collateral securities." Compl. ¶ 98. Plaintiff's cursory assertion of fraud is not pleaded with sufficient particularity to comply with requirements of the federal rules—it does not identify the time, place, or contents of the misrepresentation, or the identity of the person making it. Therefore, Count 6 must also be dismissed with prejudice for failing to meet the requirements of Rule 9(b).

Plaintiff's claims under 18 U.S.C. §§ 1348, 1956, and 2314 fail to state a claim for which relief can be granted, because Plaintiff does not have standing to prosecute federal criminal statutes and there are no private rights of action under the referenced statutes. These claims must be dismissed with prejudice.

## VII. Plaintiff's Remaining Claims (Counts 7–11) Must Be Dismissed Because the Facts Alleged Have No Connection to the Claims Asserted.

Plaintiff's remaining claims are all based on Chapter 77 of Title 18 of the US Code, which deals with the federal crimes of peonage, slavery, and trafficking in persons. In particular, Plaintiff's Count 7 asserts a violation of 18 U.S.C. § 1581 (Peonage), Count 8 asserts a violation of 18 U.S.C. § 1583 (Enticement into Slavery); Count 9 asserts a violation of 18 U.S.C. § 1584 (Sale into Involuntary Servitude); Count 10 asserts a violation of 18 U.S.C. § 1589 (Forced Labor); and Count 11 asserts a violation of 18 U.S.C. § 1593A (Benefitting Financially from Peonage, Slavery, and Trafficking in Persons).

None of the facts in Plaintiff's Complaint bear any logical connection to these claims and they fail as a matter of law.

> Peonage is 'compulsory service in payment of a debt'" and "'compulsory service' is the equivalent of 'involuntary servitude', which the Supreme Court has defined as 'a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process.'

*United States v. Farrell*, 563 F.3d 364, 372 (8th Cir. 2009) (quoting *Bailey v. Alabama*, 219 U.S. 219, 242 (1911)) (cleaned up) (noting that threatening to put workers who "run away" in a balikbayan box and ship them back to the Philippines was a threat of physical force).

Section 1583 (Enticement into Slavery) and section 1584 (Sale into Involuntary Servitude) address very similar conditions. "The essence of a holding in involuntary servitude is the exercise of control by one individual over another so that the latter is coerced into laboring for the former." *United States v. Mussry*, 726 F.2d 1448, 1452 (9th Cir. 1984); *see also Saraswat v. Bus. Integra, Inc.*, No. 15-CV-4680 (PKC) (LB), 2019 U.S. Dist. LEXIS 70054, at *17 (E.D.N.Y. Apr. 25, 2019) (explaining that "Civil liability for forced labor under § 1589 requires a finding, by a preponderance of the evidence, that the defendant 'knowingly provide[d] or obtain[ed] the labor or services of a person' by means of: (1) force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) serious harm or threats of serious harm to that person or another person; (3) the abuse or threatened abuse of law or legal process; or (4) any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical

restraint"); *Aragon v. Ku*, 277 F. Supp. 3d 1055, 1069 (D. Minn. 2017) (explaining that the purpose of Section 1589 "is to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominately women and children, to ensure just and effective punishment of traffickers").

Here, Plaintiff's allegations do not state a claim for violations of Sections 1581, 1583, 1584, 1589, or 1593A.[2] Plaintiff alleges that these statutes apply because he has to work in order to pay back the loans he obtained from Wings and feared losing his home if he failed to make payments on the loans. *See* Compl. ¶¶ 103, 108–09, 112, 119, 122, 125, 130; *see also id.* ¶ 117 (acknowledging that the transaction was "not legally theft"). Such allegations are wholly inadequate to state claims under any of the alleged statutes, as the Ninth Circuit has explained:

> We recognize that economic necessity may force persons to accept jobs that they would prefer not to perform or to work for wages they would prefer not to work for. Such persons may feel coerced into laboring at those jobs. That coercion, however, results from societal conditions and not from the employer's conduct. Only improper or wrongful conduct on the part of an employer subjects him to prosecution. To illustrate this point further, an employer who truthfully informs an individual that there are no other available jobs in the market, merely provides an opportunity for a person to work for low wages, or simply takes advantage of circumstances created by others is not guilty of an offense. An employer who

---

[2] Liability under Section 1593A requires receiving a benefit "from participation in a venture which has engaged in any act in violation of this chapter, knowing or in reckless disregard of the fact that the venture has engaged in such violation." 18 U.S.C. § 1593A. As Plaintiff's Complaint contains no allegations that Wings violated any provisions of Chapter 77 of Title 18 of the US Code and contains no allegations Wings participated in a venture which engaged in such violations (much less knowingly or in reckless disregard of such violations), Plaintiff's Complaint fails to state a claim under Section 1593A as well.

has not engaged in improper or wrongful conduct has not
violated the law.

*Mussry*, 726 F.2d at 1453; *see also Heart of Atlanta Motel v. United States*, 379 U.S. 241, 244, 261 (1964) (rejecting the contention that "by requiring appellant to rent available rooms to Negroes against its will, Congress is subjecting it to involuntary servitude"). Rather, "courts assessing claims concerning § 1583's prohibition against slavery and § 1584's similar prohibition against involuntary servitude make clear that circumstances running afoul of those provisions are typically 'limited to labor camps, isolated religious sects, or forced confinement.'" *Tegete v. Maryknoll Sisters of Saint Dominic, Inc.*, No. 20-CV-5023 (CS), 2023 U.S. Dist. LEXIS 43034, at *38 (S.D.N.Y. Mar. 14, 2023) (quoting *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 540 (3d Cir. 2012)).

There is simply no question that Plaintiff—who had sufficient assets and income to obtain a loan of over $1 million to purchase his house—is not being subjected to peonage, slavery, involuntary servitude, or forced labor, simply because Wings is requiring him to pay back his loans. Plaintiff's Chapter 77 claims are utterly absurd on their face and must be dismissed, with prejudice.

## VIII.  Wings Was Not Properly Served.

Finally, Plaintiff's attempt to serve Wings via certified mail is insufficient. Under Fed. R. Civ. P. 4, "a domestic or foreign corporation, or a partnership or other unincorporated association" must be served either "in the manner prescribed by Rule 4(e)(1) for serving an individual" or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by

appointment or by law to receive service of process." Fed R. Civ. P 4(h)(1). Rule 4(e)(1) authorizes "following state law for serving a summons." Under Minnesota State law, personal service is also required. *See* Minn. R. Civ. P. 4.03; *see also Melillo v. Heitland*, 880 N.W.2d 862, 865 (Minn. 2016) ("In summary, the rules governing service by mail, personal service, and return of service are clear and unambiguous. Service by certified mail does not comply with them."); *Yohannes v. Minn. IT Servs.*, No. 21-CV-0620 (PJS/KMM), 2021 U.S. Dist. LEXIS 149934, at *10 (D. Minn. Aug. 10, 2021) (noting that the plaintiff must arrange for someone else to physically deliver the summons and complaint; he cannot deliver them himself, and he cannot effect service through mail or email); *Schnabel v. Wells*, 922 F.2d 726, 728 (11th Cir. 1991) (requiring personal service if service under the federal mail service rule is ineffective). If a defendant is not served pursuant to the rules, the Court will not hear the case. *See Printed Media Servs. v. Solna Web, Inc.*, 11 F.3d 838, 843 (8th Cir. 1993) ("If a defendant is improperly served, a federal court lacks jurisdiction over the defendant.").

Absent proper service, "a federal court lacks jurisdiction over the defendant even if the defendant had actual notice of the lawsuit." *Jackson v. Marathon Corp.*, No. 20-cv-79 (ECT/ECW), 2020 U.S. Dist. LEXIS 70951, at *3 (D. Minn. Apr. 22, 2020) (citations and quotations omitted). Plaintiff "bears the burden of proof to establish by a preponderance of the evidence that service was proper." *Lisa Truong v. Collins Aero. Sys.*, No. 23-1346 (JRT/DLM), 2024 U.S. Dist. LEXIS 4986, at *6 (D. Minn. Jan. 10, 2024).

Plaintiff did not personally serve Wings. Instead, Plaintiff attempted to serve Wings by certified mail. However, neither the federal rule nor the state rule allows for service by

mail. Here, Plaintiff chose not to personally serve Wings with a copy of the summons and complaint, instead choosing to attempt service via certified mail. As such, service upon Wings has not been perfected, and the Complaint must be dismissed.

## CONCLUSION

Plaintiff's legal theories are meritless, frivolous, and appear to be based on widely rejected conspiracy theories. The Complaint fails to state a claim upon which relief may be granted because it fails to identify any contractual provisions Wings has breached,  Wings does not owe Plaintiff fiduciary duties, Plaintiff does not have a private right of action to assert violations of criminal law, and Plaintiff's claims based on Chapter 77 of Title 18 are utterly absurd on their face. Finally, Plaintiff failed to adequately serve Wings pursuant to the Federal Rules of Civil Procedure. For all of these reasons, this Court should dismiss Plaintiff's Complaint in its entirety and with prejudice.

**FOLEY & MANSFIELD, PLLP**

Dated:  March 13, 2024          By:   *s/ Tessa Mansfield Hirte*
                                   Lisa M. Lamm Bachman (#264313)
                                   Tessa Mansfield Hirte (#0396591)
                                   Paul W. Magyar (#0399108)
                                   250 Marquette Avenue, Suite 540
                                   Minneapolis, MN 55401
                                   (612) 338-8788
                                   Email:  llammbachman@foleymansfield.com
                                           tmansfield@foleymansfield.com
                                           pmagyar@foleymansfield.com

                                   Attorneys for Defendant