

# Novation and Tender of Payment

Date: 1/2/24

From: Brandon Joe Williams
Williams and WILLIAMS Law Group
PO Box 1962
Glendale, CA 91209
(747) 273-0799
Brandon@williamsandwilliamslawfirm.com
www.williamsandwilliamslawfirm.com

To:
Wings Financial Credit Union
ATTN: Legal Dept
14985 Glazier Avenue
Apple Valley, MN 55124
Certified Mail # 9589 0710 5270 0926 1867 24

\*\*\*\*\*

# Section 1: Definitions

## Payment:

The fulfillment of a promise, or the performance of an agreement. -Black's Law 4th Edition

## Tender:

EXHIBIT 5

1. The offer of performance, not performance itself, and, when unjustifiably refused, places other party in default and permits party making tender to exercise remedies for breach of contract. -Black's Law 4th Edition

2. An offer of money; the act by which one produces and offers to a person holding a claim or demand against him the amount of money which he considers and admits to be due, in satisfaction of such claim or demand, without any stipulation or condition. -Black's Law 4th Edition

## Check:
The Federal Reserve Board defines a check as "a draft or order upon a bank or banking house purporting to be drawn upon a deposit of funds for the payment at all events of a certain sum of money to a certain person therein named or to him or his order or to bearer and payable instantly on demand." It must contain the phrase "pay to the order of." - Black's Law 5th Edition

## US dollars:
United States coins and currency (including Federal reserve notes and circulating notes of Federal reserve banks and national banks) are legal tender for all debts, public charges, taxes, and dues. Foreign gold or silver coins are not legal tender for debts. - 31 USC 5103

## Novation:
The substitution of a new debt or obligation for an existing one. -Black's Law 4th Edition

## Consideration:
1. Consideration is not to be confounded with motive. Consideration means something which is of value in the eye of the law, moving from the plaintiff, either of benefit to the plaintiff or of detriment to the defendant. -Black's Law 4th Edition

2. Nothing is consideration that is not regarded as such by both parties. Schlecht v. Schlecht, 168 Minn. 168, 209 N.W. 883, 887

## UCC 3-103 definitions of "order" and "promise":
(8) "Order" means a written instruction to pay money signed by the person giving the instruction. The instruction may be addressed to any person, including the person giving the instruction, or to one or more persons jointly or in the alternative but not in succession. An authorization to pay is not an order unless the person authorized to pay is also instructed to pay.

(12) "Promise" means a written undertaking to pay money signed by the person undertaking to pay. An acknowledgment of an obligation by the obligor is not a promise unless the obligor also undertakes to pay the obligation.

**EXHIBIT 5**

# Section 2: Information and Explicit Orders

### (by legal definition, this is a check for US dollars)

RE: Loan #⬛⬛⬛⬛⬛ (copy of original note enclosed)

My clients, Michelle and Preston Knapp, signed this promissory note, which is a negotiable instrument as per UCC 3-104. It is also a collateral security pursuant to 12 USC 412.

My clients have been failing to perform properly on this account and they have hired me to help them handle their account. My clients have been failing to write proper indorsements on both the original security as well as any subsequent bills of exchange.

I have attached two Limited Power of Attorneys that outlines how my clients have canceled all previous POAs and they have also been trained on how to do a special indorsement, in accordance with UCC 3-205, and also a restrictive indorsement pursuant to UCC 3-206.

My clients were not aware that they were doing a blank indorsement on all previous bills of exchange and the loan promissory note. My clients rescind ALL previous negotiation of all instruments on this account in accordance with UCC 3-306.

Wings Financial Credit Union failed to disclose to my clients that all the transactions on this credit account were manufacturing valuable promissory notes (collateral securities) that are then exchanged with the Federal Reserve via the Federal Reserve Window pursuant to the Federal Reserve Act, Section 16, part 2 (also found at 12 USC 412).

UCC 3-305 states (I will bold the section in play in these orders):

"(a) Except as otherwise provided in this section, the right to enforce the obligation of a party to pay an instrument is subject to the following:

(1) a defense of the obligor based on (i) infancy of the obligor to the extent it is a defense to a simple contract, (ii) duress, lack of legal capacity, or illegality of the transaction which, under other law, nullifies the obligation of the obligor, (iii) **fraud that induced the obligor to sign the instrument with neither knowledge nor reasonable opportunity to learn of its character or its essential terms**, or (iv) discharge of the obligor in insolvency proceedings;"

In pursuance of UCC 1-304, it is clear that we all need to operate in good faith: "Every contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance and enforcement."

UCC 2-103 defines "good faith" as: "means honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade."

*****

EXHIBIT 5

My clients have, unknowingly, been releasing these valuable collateral securities using a blank indorsement.

Due to a breach of fiduciary duties by Wings Financial Credit Union (failure to assist my clients to understand what they were supposed to do with the bills of exchange and notes), all previous indorsements on behalf of my clients are hereby canceled and there is a special/restrictive indorsement that is explicitly explained in the Limited Power of Attorneys. The new special indorsement for all past, present and future securities is now the following:

WITHOUT RECOURSE
Pay to the Order of:
PRESTON BYRON KNAPP
By: /s/ Preston Byron Knapp/agent
---------
Preston Byron Knapp/attorney-in-fact

And

WITHOUT RECOURSE
Pay to the Order of:
MICHELLE NICHOLE KNAPP
By: /s/ Michelle Nichole Knapp/agent
---------
Michelle Nichole Knapp/attorney-in-fact

All previous "payments" (failures to perform by sending in extraneous Federal Reserve Notes and failing to claim the manufactured collateral securities on the account) are hereby considered overpayments now due to my clients now officially claiming all previous securities manufactured on this account.

I hereby request that all previous overpayments (failures to properly perform) on this account be returned to my clients and I also request that someone reach out to myself or my clients in order to submit a Limited Power of Attorney in order to give Wings Financial Credit Union the legal ability to do special indorsements on behalf of my client. I can help write this POA. Please have someone contact me if absolutely any assistance is required. Then my clients would like credit cards issued in this manner and also other types of possible credit lines established - please call me (agent) to discuss.

What I would also like to clarify is that all interest generated on these securities on this account are all now payable to Wings Financial Credit Union in an effort to establish equal consideration on this account in order to continue an equitable contract between my clients and Wings Financial Credit Union. All previous interest generated on this account is also payable to Wings Financial Credit Union. My clients would like to clean up this misunderstanding with honor and move forward.

These orders, being a check by legal definition, constitute tender of payment as per UCC 3-603 and a failure to accept this payment will cause a default on this account on behalf of Wings Financial Credit

EXHIBIT 5

Union. If Wings Financial Credit Union decides to default on this payment, my client may pursue litigation for breach of contract as well as purloined securities.

Because the collateral securities have already been exchanged for Federal Reserve Notes (legal tender) and deposited into the credit account, this document, itself, is legally a check for US dollars (see definition of US dollars above in definitions section).

My clients want to clean up this account and begin to properly perform on the account (properly make PAYMENT, as per the proper legal definition).

My clients feel that their responsibility to understand their own role as the holder/persons entitled to enforce the instruments has been lacking and they have taken quite a bit of time and I have personally trained them to understand how to properly perform on this account. My clients are now (finally) the persons entitled to enforce these instruments pursuant to UCC 3-301.

Due to this letter being so explicit and specific (and because of the holidays), in order to stay in honor, please respond to either myself or my clients within 45 days of the receipt of this check. If these orders are not responded to within 45 days of the receipt of these orders, this account will be construed to be in default on behalf of Wings Financial Credit Union. If there is no coherent and relevant response to this novation and orders/payment, these orders will constitute a "notice of dishonor" as per 3-503. Any additional notice, which may or not be sent, may be done through "oral, written, or electronic communication" in accordance with UCC 3-503(b). That notice may be delivered as part of litigation due process.

Absolutely any communication that states that this is not a "check," not a "payment," this will "not be accepted," or any other entirely ridiculous and illogical response will be retained as "evidence of dishonor" as per UCC 3-505 and will be used in any litigation efforts. Please respond in a coherent and at least somewhat linear fashion, in accordance with UCC Article 3.

My clients have already completed a full fee simple absolute title process on this property as well, which I will enclose a copy of. That is a superior title to any quitclaim or warranty deeds on the land.

Thank you very much. You may call me, text me, email me or mail to me at the contact information at the top of this check. If there is absolutely any confusion or difficulty with processing these orders (check), please do not hesitate to call me, text me or contact me in absolutely any way.

Yours truly,

/s/ Brandon Joe Williams, agent

Brandon Joe Williams, attorney-in-fact
On behalf of principals: Preston Byron Knapp (who is an agent of PRESTON BYRON KNAPP)
And
Michelle Nichole Knapp (who is an agent of MICHELLE NICHOLE KNAPP)

**EXHIBIT 5**



# *LIMITED* *POWER OF ATTORNEY*

Made by Brandon Joe Williams
Williams and WILLIAMS Law Group
PO Box 1962
Glendale, CA 91209
(747) 273-0799
Brandon@williamsandwilliamslawfirm.com
www.williamsandwilliamslawfirm.com

\*\*\*\*\*

# Section 1: Definitions

**Important note: these definitions apply both within the agent/principal relationship and without. Any entity or natural people receiving this limited power of attorney are officially receiving a novation in relation to the contract between you and the principal (both the living man/woman as well as the ens legis/public corporation or other corporation represented by the living man/woman). All definitions from Black's Law come directly from previous court cases and are CASE LAW. Any attempt to mitigate their validity and importance will be equated to a blatant disrespect and criticism of the entire American judicial system.**

Client:
Someone who is being assisted to present themselves. This term indicates absolutely no degradation of character or ability and simply means someone who is getting assistance while simultaneously educating themselves in law and statute. NO CLIENT, WITHIN THIS AGREEMENT, IS A CHILD, INFANT, RETARDED OR OF UNSOUND MIND.

Ens legis:
A creature of the law; an artificial being, as contrasted with a natural person. Applied to corporations, considered as deriving their existence entirely from the law. -Black's Law 4th Edition

EXHIBIT 5

A creature of the law; an artificial being, as contrasted with a natural person. Applied to corporations, considered as deriving their existence entirely from the law. -Black's Law 4th Edition

Public corporation:
A public corporation is one created by the state for political purposes and to act as an agency in the administration of civil government. -Black's Law 4th edition

Signature:
Defined as: A cursive writing, using a pen and paper, unique to each person, of some sort of artistic symbolism that proves their identity due to the unique style in which it is written. If this is to be done on behalf of a trust, corporation or any "artificial entity," it must be expressed, in the same font and size, like this: "Signature of living man or woman [name of living man or woman] on behalf of artificial person named [name of artificial person]." - ALL RIGHTS BEING RESERVED AT ALL TIMES WILL ALWAYS BE IMPLIED IN ALL SIGNATURES AND THE WAIVING OF THOSE RIGHTS ARE NOT POSSIBLE IN ANY SITUATION.

All "signatures" are also, by definition, indorsements, when they are involving some sort of financial promise or a promise to perform. All "signatures" will be treated as indorsements and will be released restrictively or in some way as to control the transfer of the security. The definition of "indorsement" is "orders and commands that specify how an instrument/security may be exchanged or transferred."

De facto:
Defined as: the corporate world that is under the Crown of England. The entire structure that was created under the Crown and is offered as a structure for Commerce. People can voluntarily contract into this system as they want in an effort to have a pre-built structure that they may plug into for ease-of-use, support, etc.

De jure:
Defined as: the non-corporate world that has nothing to do with the statutes, rules and boundaries set up by the Crown. Operating entirely in a new space where you create your own rules and boundaries. Your "Codes" are created by you and used to contract as you see fit. The de jure is governed by Common Law which is simply don't hurt people or their property and be transparent in your offers and contracts. True law is found in the de jure.

"person," "human being" and "individual":
These words/terms are defined as: "a nothingness which produces a somethingness. The seat of creativity. This is not the brain, nor the body, but is a potential consciousness that has no space, no wavelength, no mass and no location. This essence contains the decisions and definitions associated with interaction, identity, ethics, morals and integrity."

Entities must be explicitly described as such and may not use these words to describe them any longer.

This definition explicitly replaces anything from 1 USC 8.

Ethics:
Defined as: what the individual considers right/wrong (and why).

Morals:
Defined as: the spoken AND UNSPOKEN ideas of what a group considers right/wrong (and why).

EXHIBIT 5

Banking:
Defined as: the operation of electrical energy translated to the world of money and finance. The creation, flow and use of any form of energy that is used as the intermediary of trade or commerce. Any item that would be used as a mode of exchange and that follows all the rules of physics as regards to flow and energy. The highest form of "banker," in the literal sense, would be an electrical engineer. Banking in the de facto is accomplished by the creation of credit in relationship to the overall future potential exchange capacity of a person. Banking in the de jure is the coining and handling of silver and gold COINS in an effort to create a stable and functional exchange medium.

Payment:
This definition will defer to Black's Law 4th Edition: "The fulfillment of a promise, or the performance of an agreement."

Consideration:
Defined as: something given of value that all parties consider of value and continue to consider of value throughout the entire life of the contract or agreement. If either party decides, during the life of a contract, that consideration is no longer equal, then that contract is instantaneously canceled from that moment. Fraud vitiates all contracts from their inception and acts as though a contract never existed to begin with.

Fraud:
Defined as: any attempt to create illusion, delusion, vagueness or over-complexity in an effort to confuse or reduce the ability to perceive or understand something. THE HIGHEST LEVEL OF FRAUD IS THE ALTERATION OF DEFINITIONS OF WORDS OR TERMS. Fraud, when applied to the definitions of words, terms or phrases will be a charge of treason and, pursuant to even the de facto 18 U.S. Code § 2381, EVERYONE involved will be sentenced to death if found guilty by a Grand Jury. All men and all women deserve to live a life of honest and transparent dealings.

Understand/under stand/under-stand:
Defined as: to conceptually copy information into your own mind, contribute to it (invest in it) in an effort to make it your own, then be able to apply it in the physical world to the product of an effective effect. This definition explicitly negates any idea that these words may be used to trick someone into granting dominion or power over them.

Conceptually:
Defined as: to have a basic idea in the mind that comes across almost as the idea of "an understanding in the form of energy" - meaning having so much comprehension of some particular word or thing that you can get the feeling in your mind that you do not even need words or symbols to explain the ideas. A conceptual understanding of something may even leave the person saying "I know what it is, I simply can't put it into words." The ideas are devoid of having to use the "crutch" of other words or symbols. It is a full immersion into an idea or term that feels almost as if you are the source of the definition of the word or idea itself. You can "feel" the definition. YOU ARE THE DEFINITION.

Definition:
Defined as: the exact, agreed-upon boundaries of the meaning of a series of symbols, behavior, or anything else. A definition could be entirely unknown or mistaken, but an "incorrect definition" would be the largest aspect that this section should clarify. An "incorrect definition" would be a meaning that is either too narrow or too wide, too simple or too complex, too vague or too specific. A definition is the contract associated with the meaning of the word, idea, phrase, etc. The source of credit and law, which is the well-intentioned inhabitant or contributing member of a group, has the highest rank in

EXHIBIT 5

terms of the creation, clarification or changing of definitions. Definitions are living, breathing things and are the most important aspect to all contracts and communication. VAGUE OR OVER-COMPLICATED DEFINITIONS WILL BE VIEWED AND ASSUMED TO BE AN ATTEMPT TO DECEIVE AND WILL BE CLASSIFIED AS FRAUD.

Consent:
Defined as: understanding, as defined in this definitions section, of the contract or agreement in question. This understanding is then mixed with explicit agreement. Explicit agreement is important because assuming agreement or consent is quite dangerous. Agreement and consent should be explicit and "tacit consent" or "consent due to acquiescence" is essentially rape in commerce.

Rape:
Defined as: any forced contract that did not have explicit understanding and consent at the inception and throughout the entire duration of the contract.

Debtor:
A debtor is someone who owes a true negative in an agreement or contract where they have received true value and consideration but have not reciprocated that consideration to a sufficient point for both parties (within reason). A debtor cannot be a debtor if they did not consciously and expressly involve themselves in the contract to begin with.

Creditor:
Defined as: Someone who leverages their future potential productivity in a way to help someone else. In America, the basic creditor is a common American. Corporations cannot be creditors, only individual people can be creditors. A creditor is only a creditor if they offer something of value that is fully transparent and not some form of trickery where there is only the ILLUSION of value and not true substantiated value. Any attempt to use illusion and trickery to create debtors out of large groups of people will be charged with treason and, pursuant to even the de facto 18 U.S. Code § 2381, EVERYONE involved will be sentenced to death if found guilty by a Grand Jury. The de facto 15 USC 1602 has an EXCELLENT definition as well: "(f) The term "credit" means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment."

Money:
Defined as: gold and/or silver coins. Without gold and/or silver coins involved in a transaction, there is no negative or positive gain in the real world. There can only be a false illusion of positive or negative gain. "Profit and loss" can only be computed through the exchange of gold/silver coins. Any commercial activity in the de facto that is not exchanging silver and gold coins is, by definition, a "non-profit activity."

United States:
Defined as: the original states of the Republic being referred to as a collective. The "United States" is not, in itself, a country. Each individual state is a country, by law. This definition specifically and explicitly negates the definition found in 28 USC 3002(15), as well as the description found in UCC 9-307(h). Any de facto corporation found using the term "United States" will automatically be changed to "only and explicitly the District of Columbia." The "Federal corporation" does not have any jurisdiction in the 50 individual states of America (or any additional states or nations in those areas) and this term being used is very heavy fraud that very few people know about. Any vague or unclear use of this term will be a charge of treason and, pursuant to even the de facto 18 U.S. Code § 2381, everyone involved will be sentenced to death if found guilty by a Grand Jury. Any use of this definition will be assumed that the person using it does not know this definition and the prosecution of the use of

EXHIBIT 5

this term will need EXTENSIVE levels of evidence that proves INTENT. This term is the core aspect of the difficulties in our glorious country. Assumption that the use of this term is of ill-will should NOT be done, as all assumptions should be a lack of comprehension of this most deadly term.

Currency:
Defined as: anything used as a medium of exchange. The words "money" and "currency" ARE VERY DIFFERENT. Currency could be bottle caps, small pieces of metal, paper, or anything else. Currency is not required to be silver/gold coins. Promissory notes are currency in a fiat, de facto world.

Loan:
Defined as: in the de facto, it is the creation of a promissory note by a person based off their future potential productivity, which is then exchanged with the Federal Reserve for Federal Reserve Notes. A "financial institution" is not required to convert the promissory note into Federal Reserve Notes but may be utilized for assistance if needed. A "financial institution" hired to provide this service is nothing more than a contracted servicer and the loan is NOT being given by them. Any effort to trick or deceive as to who is creating the loan or giving the loan will be treated as fraud or treason and handled accordingly. In the de jure it is the issuing of silver/gold coins at interest.

"You," "Your" or any other small common word:
Defined as: "you" or "your" or any other variation of showing identity and any usage of small common words to try and trick someone into special definitions that degrade or harm them in any way will fall under treason and, pursuant to even the de facto 18 U.S. Code § 2381, anyone involved will be sentenced to death if found guilty by a Grand Jury. Redefining these words are an obvious attempt at subversion and are never going to be used in an effort to assist someone. The creation of special definitions for small common words are immediately assumed to be treason, as the intent is clear. This definition was born out of a cognizance of the existence of 20 CFR 422.402 subsection (e). This definition automatically eliminates all definitions of this type and vitiates their existence since their supposed inception.

Represent:
Defined as: to assist another in presenting themselves. No one waives their rights or degrades their status in having or demanding assistance.

Resident alien:
Defined as: someone who is PROVEN to live in the District of Columbia. Assumptions are always defaulted to nonresident alien and the status of resident alien must be PROVEN.

Nonresident alien:
Defined as: someone who is PROVEN to not live in the District of Columbia.

Man:
Defined as: the ultimate title. The ultimate simplicity. One of the basic elements of the battery of nature. The desire to protect. The drive and focus to achieve a goal. One of two original bodies created by God in an effort to be a creation of half of what God is composed of. An incomplete expression of nature. The searcher of beauty.

Woman:
Defined as: The ultimate title. The creator of beauty. Beauty is created by the manufacturer of art. Beauty is not inherent, it is created. The dancing, warm flow of existence. That of which is the great mediator of life. The true logic of life that understands life through the emotional and instinctual

EXHIBIT 5

understanding of experience. That of which prevents life and existence from using the drive of masculinity in an effort to drive our human race into oblivion. Softness, mediation, flow.

Intent:
"Intent" expresses mental action at its most advanced point, or as it actually accompanies an outward, corporal [of or involving the body] act which has been determined on. Intent shows the presence of will in the act which consummates a crime. It is the exercise of intelligent will, the mind being fully aware of the nature and consequences of the act which is about to be done, and with such knowledge, and with full liberty of action, willing and electing to do it. -Black's Law 4th Edition (bracket section added by Brandon Joe Williams to clarify the word "corporal")

EXHIBIT 5

# Section 2: Notice to Person Executing Limited Power of Attorney

IMPORTANT NOTE 1: THIS CONTRACT INFERS NO INFIRMITY OF THE PRINCIPAL. THE PRINCIPAL IS SIMPLY REQUESTING ASSISTANCE WHILE THEY LEARN AND EDUCATE THEMSELVES IN ORDER TO STAND MORE EFFECTIVELY IN LAW. THERE IS NO IMPLIED OR EXPRESS WAIVING OF ANY RIGHTS BEYOND WHAT IS EXPLICITLY MENTIONED IN THIS POA. WITHOUT PREJUDICE AND ALL RIGHTS RESERVED IS FULLY IMPLIED AND EXPRESSED FOR ALL CONTRACTS AND RELATIONSHIPS. THE ONLY RIGHTS THAT ARE WAIVED BY THE PRINCIPAL SIGNING THIS LIMITED POWER OF ATTORNEY IS THE RIGHT TO INDORSE INSTRUMENTS WITH A BLANK INDORSEMENT AND ALSO THE RIGHT TO GRANT JURISDICTION OVER THE LIVING MAN/WOMAN WITHOUT EXPRESS AND WRITTEN AGREEMENT BY THE AGENT. ANY INTIMIDATION, THREATS, LIES OR OTHER TACTICS TO MAKE THE PRINCIPAL WAIVE OR NEGATE ANY RIGHTS OR INDORSE ANY INSTRUMENT WITH A BLANK INDORSEMENT WILL BE MET WITH AGGRESSIVE LITIGATION FOR PEONAGE, INVOLUNTARY SERVITUDE AND MASSIVE SECURITIES FRAUD.

IMPORTANT NOTE 2: ANY ASSUMPTION THAT THE PRINCIPAL HAS EVER INDORSED ANYTHING WITH A BLANK INDORSEMENT IS HEREBY EXPLICITLY NEGATED. THIS AGREEMENT HEREBY EXPLICITLY WAIVES THE RIGHT OF THE PRINCIPAL TO INDORSE ANY INSTRUMENT WITH A BLANK INDORSEMENT (PHYSICALLY, MENTALLY, EMOTIONALLY AND SPIRITUALLY IMPOSSIBLE). ALL INDORSEMENTS ARE ASSUMED TO BE FULL, RESTRICTIVE OR QUALIFIED. ALL INDORSED INSTRUMENTS FROM THE PAST ASSUMED TO BE BLANK ARE HEREBY TO BE CONSIDERED FRAUD AND NEED TO BE REINDORSED OR CLARIFIED BY BOTH THE PRINCIPAL AND AGENT. THE DEFAULT OR ASSUMED INDORSEMENT FOR ALL PAST, CURRENT AND FUTURE INSTRUMENTS IS:

WITHOUT RECOURSE
Pay to the Order of:
PRESTON BYRON KNAPP
By: Preston Byron Knapp/agent
---------
Preston Byron Knapp/attorney-in-fact

*****

A limited power of attorney is an important legal document. By signing the limited power of attorney, you are authorizing another person to act for you, the principal. Before you sign this limited power of attorney, you should know these important facts:

Your agent (attorney-in-fact) has no duty to act unless you and your agent agree otherwise in writing. This document gives your agent the powers to manage, dispose of, sell, and convey your securities and

EXHIBIT 5

relationships in an effort to correct your performance of bills of exchange, banking, using promissory notes, etc. This agreement includes the handling of real estate. This agreement does not stem into other areas beyond the handling, transfer and discharge or settling of securities, bonds, notes, bills of exchange, real estate etc. This POA can also cover the use and exchange of lawful money (gold and silver coins), but this will most likely not be necessary.

Your agent will have the right to receive reasonable payment for services provided under this limited power of attorney.

You can amend or change this limited power of attorney only by executing a new power of attorney or by executing an amendment through the same formalities as an original. You have the right to revoke or terminate this power of attorney at any time, so long as you are competent.

This power of attorney must be dated and must be acknowledged before a notary public or signed by two witnesses. If it is signed by two witnesses, they must witness either (1) the signing of the power of attorney or (2) the principal's signing or acknowledgment of his or her signature. A power of attorney that may affect real property should be acknowledged before a notary public so that it may easily be recorded.

You WILL read this power of attorney carefully. YOUR AGENT WILL VERIFY YOUR COMPREHENSION OF THIS DOCUMENT. When effective, this power of attorney will give your agent the right to deal with property, securities and contracts that you now have or might acquire/involve yourself with in the future. The power of attorney is important to you. If you do not understand the power of attorney, or any provision of it, then you should obtain the assistance needed to understand it or bury yourself in the dictionary for as long as required to be fully tracking with each word and its meaning.

NOTICE: THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING. THEY ARE EXPLAINED IN THE UNIFORM STATUTORY FORM POWER OF ATTORNEY ACT (CALIFORNIA PROBATE CODE SECTIONS 4400-4465 AS WELL AS BY NATURAL FREEDOM TO CONTRACT AS YOU SEE FIT). IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, DO WHAT IS REQUIRED TO CLEAN UP ANY MISUNDERSTANDINGS. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.

I, Preston Byron Knapp/principal, residing at C/O 2624 N Saunders Lake Drive, Minnetrista, Minnesota, 55364, hereby appoint Brandon Joe Williams/agent of PO Box 1962, Glendale, California 91209, as my attorney-in-fact ("Agent") to exercise the powers and discretions described below. THESE ADDRESSES ARE WITHOUT THE UNITED STATES PURSUANT TO 28 USC 1746. THERE IS A COMPLETED LAND PATENT ON 2624 N Saunders Lake Drive, Minnetrista, Minnesota, 55364.

I hereby revoke any and all general powers of attorney and special powers of attorney that previously have been signed by me.

My Agent shall have full power and authority to act on my behalf involving lawful money, securities, bonds, instruments, investments, real estate, etc. My Agent's powers shall include, and are limited to, the power to:

EXHIBIT 5

1. Perform any act necessary to deposit, negotiate, sell or transfer any note, real estate, security, or draft of the United States of America, including U.S. Treasury Securities. This includes any non-US notes, securities, drafts, etc. This includes indorsements, approvals, exchanges, etc.

ABSOLUTELY ANY CURRENCY, SECURITY, BOND, NOTE, INSTRUMENT, NEGOTIABLE INSTRUMENT, PIECE OF PROPERTY, ETC ARE WITHIN THE PURVIEW OF THIS LPOA.

Any power or authority granted to my Agent under this document shall be limited to the extent necessary to prevent this Power of Attorney from causing, (i) my income to be taxable to my Agent, (ii) my assets to be subject to a general power of appointment by my Agent, or (iii) my Agent to have any incidents of ownership with respect to any life insurance policies that I may own on the life of my Agent.

My Agent shall not be liable for any loss that results from a judgment error that was made in good faith. However, my Agent shall be liable for willful misconduct or the failure to act in good faith while acting under the authority of this Power of Attorney. A Successor Agent shall not be liable for acts of a prior Agent.

No person who relies in good faith on the authority of my Agent under this instrument shall incur any liability to me, my estate or my personal representative. I authorize my Agent to indemnify and hold harmless any third party who accepts and acts under this document.

If any part of any provision of this instrument shall be invalid or unenforceable under applicable law, such part shall be ineffective to the extent of such invalidity only, without in any way affecting the remaining parts of such provision or the remaining provisions of this instrument.

My Agent shall be entitled to reasonable compensation for any services provided as my Agent. My Agent shall be entitled to reimbursement of all reasonable expenses incurred as a result of carrying out any provision of this Power of Attorney.

My Agent shall provide an accounting for all funds handled and all acts performed as my Agent as required under state law or upon my request or the request of any authorized personal representative, fiduciary or court of record acting on my behalf.

This Limited Power of Attorney shall become effective immediately, and shall not be affected by my disability or lack of mental competence, except as may be provided otherwise by an applicable state statute. This is a Limited Power of Attorney. This Limited Power of Attorney shall continue effective until December 12, 2026. This Limited Power of Attorney may be revoked by me at any time by providing written notice to my Agent.

It is acknowledged that myself, Preston Byron Knapp, operates and exists WITHOUT the United States at all times while the agent also operates WITHOUT the United States at all times pursuant to 28 USC 1746. The ens legis/public corporation, PRESTON BYRON KNAPP, of which the principal is an authorized representative, is located within the United States. Preston Byron Knapp is a foreign non-citizen national as it is defined in 8 USC 1101(a)(21).

**[SIGNATURE PAGE FOLLOWS]**

EXHIBIT 5

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

Minnesota,
Carver County

On _November 6th_ before me, _Alex Prigge_____, personally appeared Preston Byron Knapp, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Minnesota that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ (Notary Seal)
Signature of Notary Public

ALEXANDER M. PRIGGE
Notary Public-Minnesota
My Commission Expires Jan. 31, 2027

This document was prepared by:
Brandon Joe Williams/agent

EXHIBIT 5

Dated ___November 6, 2023___ at Minnetrista, Minnesota.

*Preston Byron Knapp*

Preston Byron Knapp/principal (also on behalf of PRESTON BYRON KNAPP)

EXHIBIT 5

**Notice to Person Accepting the Appointment as Attorney-in-Fact:**

By acting or agreeing to act as the agent (attorney-in-fact) under this power of attorney you assume the fiduciary and other legal responsibilities of an agent. These responsibilities include:

1. The legal duty to act solely in the interest of the principal and to avoid conflicts of interest.

2. The legal duty to keep the principal's property separate and distinct from any other property owned or controlled by you.

You MAY transfer the principal's property to yourself without the need for full and adequate consideration and you may accept a gift of the principal's property. The only provision would be that the transferring of such property would need to be beneficial to the principal.

I have read the foregoing notice and I understand the legal and fiduciary duties that I assume by acting or agreeing to act as the agent (attorney-in-fact) under the terms of this power of attorney.

Agent attests this document to be signed on his behalf on:

Republic of California State (unincorporated),
Los Angeles County (unincorporated)

Date: 11/9/2023

Signed:

_without Prejudice_
_by: walles, Brandon-Sergent_
Brandon Joe Williams/agent

EXHIBIT 5



# *LIMITED* POWER OF ATTORNEY

Made by Brandon Joe Williams
Williams and WILLIAMS Law Group
PO Box 1962
Glendale, CA 91209
(747) 273-0799
Brandon@williamsandwilliamslawfirm.com
www.williamsandwilliamslawfirm.com

\*\*\*\*\*

# Section 1: Definitions

Important note: these definitions apply both within the agent/principal relationship and without. Any entity or natural people receiving this limited power of attorney are officially receiving a novation in relation to the contract between you and the principal (both the living man/woman as well as the ens legis/public corporation or other corporation represented by the living man/woman). All definitions from Black's Law come directly from previous court cases and are CASE LAW. Any attempt to mitigate their validity and importance will be equated to a blatant disrespect and criticism of the entire American judicial system.

Client:
Someone who is being assisted to present themselves. This term indicates absolutely no degradation of character or ability and simply means someone who is getting assistance while simultaneously educating themselves in law and statute. NO CLIENT, WITHIN THIS AGREEMENT, IS A CHILD, INFANT, RETARDED OR OF UNSOUND MIND.

Ens legis:

EXHIBIT 5

A creature of the law; an artificial being, as contrasted with a natural person. Applied to corporations, considered as deriving their existence entirely from the law. -Black's Law 4th Edition

Public corporation:
A public corporation is one created by the state for political purposes and to act as an agency in the administration of civil government. -Black's Law 4th edition

Signature:
Defined as: A cursive writing, using a pen and paper, unique to each person, of some sort of artistic symbolism that proves their identity due to the unique style in which it is written. If this is to be done on behalf of a trust, corporation or any "artificial entity," it must be expressed, in the same font and size, like this: "Signature of living man or woman [name of living man or woman] on behalf of artificial person named [name of artificial person]." - ALL RIGHTS BEING RESERVED AT ALL TIMES WILL ALWAYS BE IMPLIED IN ALL SIGNATURES AND THE WAIVING OF THOSE RIGHTS ARE NOT POSSIBLE IN ANY SITUATION.

All "signatures" are also, by definition, indorsements, when they are involving some sort of financial promise or a promise to perform. All "signatures" will be treated as indorsements and will be released restrictively or in some way as to control the transfer of the security. The definition of "indorsement" is "orders and commands that specify how an instrument/security may be exchanged or transferred."

De facto:
Defined as: the corporate world that is under the Crown of England. The entire structure that was created under the Crown and is offered as a structure for Commerce. People can voluntarily contract into this system as they want in an effort to have a pre-built structure that they may plug into for ease-of-use, support, etc.

De jure:
Defined as: the non-corporate world that has nothing to do with the statutes, rules and boundaries set up by the Crown. Operating entirely in a new space where you create your own rules and boundaries. Your "Codes" are created by you and used to contract as you see fit. The de jure is governed by Common Law which is simply don't hurt people or their property and be transparent in your offers and contracts. True law is found in the de jure.

"person," "human being" and "individual":
These words/terms are defined as: "a nothingness which produces a somethingness. The seat of creativity. This is not the brain, nor the body, but is a potential consciousness that has no space, no wavelength, no mass and no location. This essence contains the decisions and definitions associated with interaction, identity, ethics, morals and integrity."

Entities must be explicitly described as such and may not use these words to describe them any longer.

This definition explicitly replaces anything from 1 USC 8.

Ethics:
Defined as: what the individual considers right/wrong (and why).

EXHIBIT 5

Morals:
Defined as: the spoken AND UNSPOKEN ideas of what a group considers right/wrong (and why).

Banking:
Defined as: the operation of electrical energy translated to the world of money and finance. The creation, flow and use of any form of energy that is used as the intermediary of trade or commerce. Any item that would be used as a mode of exchange and that follows all the rules of physics as regards to flow and energy. The highest form of "banker," in the literal sense, would be an electrical engineer. Banking in the de facto is accomplished by the creation of credit in relationship to the overall future potential exchange capacity of a person. Banking in the de jure is the coining and handling of silver and gold COINS in an effort to create a stable and functional exchange medium.

Payment:
This definition will defer to Black's Law 4th Edition: "The fulfillment of a promise, or the performance of an agreement."

Consideration:
Defined as: something given of value that all parties consider of value and continue to consider of value throughout the entire life of the contract or agreement. If either party decides, during the life of a contract, that consideration is no longer equal, then that contract is instantaneously canceled from that moment. Fraud vitiates all contracts from their inception and acts as though a contract never existed to begin with.

Fraud:
Defined as: any attempt to create illusion, delusion, vagueness or over-complexity in an effort to confuse or reduce the ability to perceive or understand something. THE HIGHEST LEVEL OF FRAUD IS THE ALTERATION OF DEFINITIONS OF WORDS OR TERMS. Fraud, when applied to the definitions of words, terms or phrases will be a charge of treason and, pursuant to even the de facto 18 U.S. Code § 2381, EVERYONE involved will be sentenced to death if found guilty by a Grand Jury. All men and all women deserve to live a life of honest and transparent dealings.

Understand/under stand/under-stand:
Defined as: to conceptually copy information into your own mind, contribute to it (invest in it) in an effort to make it your own, then be able to apply it in the physical world to the product of an effective effect. This definition explicitly negates any idea that these words may be used to trick someone into granting dominion or power over them.

Conceptually:
Defined as: to have a basic idea in the mind that comes across almost as the idea of "an understanding in the form of energy" - meaning having so much comprehension of some particular word or thing that you can get the feeling in your mind that you do not even need words or symbols to explain the ideas. A conceptual understanding of something may even leave the person saying "I know what it is, I simply can't put it into words." The ideas are devoid of having to use the "crutch" of other words or symbols. It is a full immersion into an idea or term that feels almost as if you are the source of the definition of the word or idea itself. You can "feel" the definition. YOU ARE THE DEFINITION.

EXHIBIT 5

Definition:
Defined as: the exact, agreed-upon boundaries of the meaning of a series of symbols, behavior, or anything else. A definition could be entirely unknown or mistaken, but an "incorrect definition" would be the largest aspect that this section should clarify. An "incorrect definition" would be a meaning that is either too narrow or too wide, too simple or too complex, too vague or too specific. A definition is the contract associated with the meaning of the word, idea, phrase, etc. The source of credit and law, which is the well-intentioned inhabitant or contributing member of a group, has the highest rank in terms of the creation, clarification or changing of definitions. Definitions are living, breathing things and are the most important aspect to all contracts and communication. VAGUE OR OVER-COMPLICATED DEFINITIONS WILL BE VIEWED AND ASSUMED TO BE AN ATTEMPT TO DECEIVE AND WILL BE CLASSIFIED AS FRAUD.

Consent:
Defined as: understanding, as defined in this definitions section, of the contract or agreement in question. This understanding is then mixed with explicit agreement. Explicit agreement is important because assuming agreement or consent is quite dangerous. Agreement and consent should be explicit and "tacit consent" or "consent due to acquiescence" is essentially rape in commerce.

Rape:
Defined as: any forced contract that did not have explicit understanding and consent at the inception and throughout the entire duration of the contract.

Debtor:
A debtor is someone who owes a true negative in an agreement or contract where they have received true value and consideration but have not reciprocated that consideration to a sufficient point for both parties (within reason). A debtor cannot be a debtor if they did not consciously and expressly involve themselves in the contract to begin with.

Creditor:
Defined as: Someone who leverages their future potential productivity in a way to help someone else. In America, the basic creditor is a common American. Corporations cannot be creditors, only individual people can be creditors. A creditor is only a creditor if they offer something of value that is fully transparent and not some form of trickery where there is only the ILLUSION of value and not true substantiated value. Any attempt to use illusion and trickery to create debtors out of large groups of people will be charged with treason and, pursuant to even the de facto 18 U.S. Code § 2381, EVERYONE involved will be sentenced to death if found guilty by a Grand Jury. The de facto 15 USC 1602 has an EXCELLENT definition as well: "(f) The term "credit" means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment."

Money:
Defined as: gold and/or silver coins. Without gold and/or silver coins involved in a transaction, there is no negative or positive gain in the real world. There can only be a false illusion of positive or negative gain. "Profit and loss" can only be computed through the exchange of gold/silver coins. Any commercial activity in the de facto that is not exchanging silver and gold coins is, by definition, a "non-profit activity."

**EXHIBIT 5**

United States:
Defined as: the original states of the Republic being referred to as a collective. The "United States" is not, in itself, a country. Each individual state is a country, by law. This definition specifically and explicitly negates the definition found in 28 USC 3002(15), as well as the description found in UCC 9-307(h). Any de facto corporation found using the term "United States" will automatically be changed to "only and explicitly the District of Columbia." The "Federal corporation" does not have any jurisdiction in the 50 individual states of America (or any additional states or nations in those areas) and this term being used is very heavy fraud that very few people know about. Any vague or unclear use of this term will be a charge of treason and, pursuant to even the de facto 18 U.S. Code § 2381, everyone involved will be sentenced to death if found guilty by a Grand Jury. Any use of this definition will be assumed that the person using it does not know this definition and the prosecution of the use of this term will need EXTENSIVE levels of evidence that proves INTENT. This term is the core aspect of the difficulties in our glorious country. Assumption that the use of this term is of ill-will should NOT be done, as all assumptions should be a lack of comprehension of this most deadly term.

Currency:
Defined as: anything used as a medium of exchange. The words "money" and "currency" ARE VERY DIFFERENT. Currency could be bottle caps, small pieces of metal, paper, or anything else. Currency is not required to be silver/gold coins. Promissory notes are currency in a fiat, de facto world.

Loan:
Defined as: in the de facto, it is the creation of a promissory note by a person based off their future potential productivity, which is then exchanged with the Federal Reserve for Federal Reserve Notes. A "financial institution" is not required to convert the promissory note into Federal Reserve Notes but may be utilized for assistance if needed. A "financial institution" hired to provide this service is nothing more than a contracted servicer and the loan is NOT being given by them. Any effort to trick or deceive as to who is creating the loan or giving the loan will be treated as fraud or treason and handled accordingly. In the de jure it is the issuing of silver/gold coins at interest.

"You," "Your" or any other small common word:
Defined as: "you" or "your" or any other variation of showing identity and any usage of small common words to try and trick someone into special definitions that degrade or harm them in any way will fall under treason and, pursuant to even the de facto 18 U.S. Code § 2381, anyone involved will be sentenced to death if found guilty by a Grand Jury. Redefining these words are an obvious attempt at subversion and are never going to be used in an effort to assist someone. The creation of special definitions for small common words are immediately assumed to be treason, as the intent is clear. This definition was born out of a cognizance of the existence of 20 CFR 422.402 subsection (e). This definition automatically eliminates all definitions of this type and vitiates their existence since their supposed inception.

Represent:
Defined as: to assist another in presenting themselves. No one waives their rights or degrades their status in having or demanding assistance.

Resident alien:

EXHIBIT 5

Defined as: someone who is PROVEN to live in the District of Columbia. Assumptions are always defaulted to nonresident alien and the status of resident alien must be PROVEN.

Nonresident alien:
Defined as: someone who is PROVEN to not live in the District of Columbia.

Man:
Defined as: the ultimate title. The ultimate simplicity. One of the basic elements of the battery of nature. The desire to protect. The drive and focus to achieve a goal. One of two original bodies created by God in an effort to be a creation of half of what God is composed of. An incomplete expression of nature. The searcher of beauty.

Woman:
Defined as: The ultimate title. The creator of beauty. Beauty is created by the manufacturer of art. Beauty is not inherent, it is created. The dancing, warm flow of existence. That of which is the great mediator of life. The true logic of life that understands life through the emotional and instinctual understanding of experience. That of which prevents life and existence from using the drive of masculinity in an effort to drive our human race into oblivion. Softness, mediation, flow.

Intent:
"Intent" expresses mental action at its most advanced point, or as it actually accompanies an outward, corporal [of or involving the body] act which has been determined on. Intent shows the presence of will in the act which consummates a crime. It is the exercise of intelligent will, the mind being fully aware of the nature and consequences of the act which is about to be done, and with such knowledge, and with full liberty of action, willing and electing to do it. -Black's Law 4th Edition (bracket section added by Brandon Joe Williams to clarify the word "corporal")

EXHIBIT 5

# Section 2: Notice to Person Executing Limited Power of Attorney

IMPORTANT NOTE 1: THIS CONTRACT INFERS NO INFIRMITY OF THE PRINCIPAL. THE PRINCIPAL IS SIMPLY REQUESTING ASSISTANCE WHILE THEY LEARN AND EDUCATE THEMSELVES IN ORDER TO STAND MORE EFFECTIVELY IN LAW. THERE IS NO IMPLIED OR EXPRESS WAIVING OF ANY RIGHTS BEYOND WHAT IS EXPLICITLY MENTIONED IN THIS POA. WITHOUT PREJUDICE AND ALL RIGHTS RESERVED IS FULLY IMPLIED AND EXPRESSED FOR ALL CONTRACTS AND RELATIONSHIPS. THE ONLY RIGHTS THAT ARE WAIVED BY THE PRINCIPAL SIGNING THIS LIMITED POWER OF ATTORNEY IS THE RIGHT TO INDORSE INSTRUMENTS WITH A BLANK INDORSEMENT AND ALSO THE RIGHT TO GRANT JURISDICTION OVER THE LIVING MAN/WOMAN WITHOUT EXPRESS AND WRITTEN AGREEMENT BY THE AGENT. ANY INTIMIDATION, THREATS, LIES OR OTHER TACTICS TO MAKE THE PRINCIPAL WAIVE OR NEGATE ANY RIGHTS OR INDORSE ANY INSTRUMENT WITH A BLANK INDORSEMENT WILL BE MET WITH AGGRESSIVE LITIGATION FOR PEONAGE, INVOLUNTARY SERVITUDE AND MASSIVE SECURITIES FRAUD.

IMPORTANT NOTE 2: ANY ASSUMPTION THAT THE PRINCIPAL HAS EVER INDORSED ANYTHING WITH A BLANK INDORSEMENT IS HEREBY EXPLICITLY NEGATED. THIS AGREEMENT HEREBY EXPLICITLY WAIVES THE RIGHT OF THE PRINCIPAL TO INDORSE ANY INSTRUMENT WITH A BLANK INDORSEMENT (PHYSICALLY, MENTALLY, EMOTIONALLY AND SPIRITUALLY IMPOSSIBLE). ALL INDORSEMENTS ARE ASSUMED TO BE FULL, RESTRICTIVE OR QUALIFIED. ALL INDORSED INSTRUMENTS FROM THE PAST ASSUMED TO BE BLANK ARE HEREBY TO BE CONSIDERED FRAUD AND NEED TO BE REINDORSED OR CLARIFIED BY BOTH THE PRINCIPAL AND AGENT. THE DEFAULT OR ASSUMED INDORSEMENT FOR ALL PAST, CURRENT AND FUTURE INSTRUMENTS IS:

WITHOUT RECOURSE
Pay to the Order of:
MICHELLE NICHOLE KNAPP
By: Michelle Nichole Knapp/agent
---------
Michelle Nichole Knapp/attorney-in-fact

*****

EXHIBIT 5

A limited power of attorney is an important legal document. By signing the limited power of attorney, you are authorizing another person to act for you, the principal. Before you sign this limited power of attorney, you should know these important facts:

Your agent (attorney-in-fact) has no duty to act unless you and your agent agree otherwise in writing. This document gives your agent the powers to manage, dispose of, sell, and convey your securities and relationships in an effort to correct your performance of bills of exchange, banking, using promissory notes, etc. This agreement includes the handling of real estate. This agreement does not stem into other areas beyond the handling, transfer and discharge or settling of securities, bonds, notes, bills of exchange, real estate etc. This POA can also cover the use and exchange of lawful money (gold and silver coins), but this will most likely not be necessary.

Your agent will have the right to receive reasonable payment for services provided under this limited power of attorney.

You can amend or change this limited power of attorney only by executing a new power of attorney or by executing an amendment through the same formalities as an original. You have the right to revoke or terminate this power of attorney at any time, so long as you are competent.

This power of attorney must be dated and must be acknowledged before a notary public or signed by two witnesses. If it is signed by two witnesses, they must witness either (1) the signing of the power of attorney or (2) the principal's signing or acknowledgment of his or her signature. A power of attorney that may affect real property should be acknowledged before a notary public so that it may easily be recorded.

You WILL read this power of attorney carefully. YOUR AGENT WILL VERIFY YOUR COMPREHENSION OF THIS DOCUMENT. When effective, this power of attorney will give your agent the right to deal with property, securities and contracts that you now have or might acquire/ involve yourself with in the future. The power of attorney is important to you. If you do not understand the power of attorney, or any provision of it, then you should obtain the assistance needed to understand it or bury yourself in the dictionary for as long as required to be fully tracking with each word and its meaning.

NOTICE: THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING. THEY ARE EXPLAINED IN THE UNIFORM STATUTORY FORM POWER OF ATTORNEY ACT (CALIFORNIA PROBATE CODE SECTIONS 4400-4465 AS WELL AS BY NATURAL FREEDOM TO CONTRACT AS YOU SEE FIT). IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, DO WHAT IS REQUIRED TO CLEAN UP ANY MISUNDERSTANDINGS. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.

I, Michelle Nichole Knapp/principal, residing at C/O 2624 N Saunders Lake Drive, Minnetrista, Minnesota, 55364, hereby appoint Brandon Joe Williams/agent of PO Box 1962, Glendale, California 91209, as my attorney-in-fact ("Agent") to exercise the powers and discretions described below. THESE ADDRESSES ARE WITHOUT THE UNITED STATES PURSUANT TO 28 USC 1746. THERE IS A COMPLETED LAND PATENT ON 2624 N Saunders Lake Drive, Minnetrista, Minnesota, 55364.

**EXHIBIT 5**

I hereby revoke any and all general powers of attorney and special powers of attorney that previously have been signed by me.

My Agent shall have full power and authority to act on my behalf involving lawful money, securities, bonds, instruments, investments, real estate, etc. My Agent's powers shall include, and are limited to, the power to:

1. Perform any act necessary to deposit, negotiate, sell or transfer any note, real estate, security, or draft of the United States of America, including U.S. Treasury Securities. This includes any non-US notes, securities, drafts, etc. This includes indorsements, approvals, exchanges, etc.

ABSOLUTELY ANY CURRENCY, SECURITY, BOND, NOTE, INSTRUMENT, NEGOTIABLE INSTRUMENT, PIECE OF PROPERTY, ETC ARE WITHIN THE PURVIEW OF THIS LPOA.

Any power or authority granted to my Agent under this document shall be limited to the extent necessary to prevent this Power of Attorney from causing, (i) my income to be taxable to my Agent, (ii) my assets to be subject to a general power of appointment by my Agent, or (iii) my Agent to have any incidents of ownership with respect to any life insurance policies that I may own on the life of my Agent.

My Agent shall not be liable for any loss that results from a judgment error that was made in good faith. However, my Agent shall be liable for willful misconduct or the failure to act in good faith while acting under the authority of this Power of Attorney. A Successor Agent shall not be liable for acts of a prior Agent.

No person who relies in good faith on the authority of my Agent under this instrument shall incur any liability to me, my estate or my personal representative. I authorize my Agent to indemnify and hold harmless any third party who accepts and acts under this document.

If any part of any provision of this instrument shall be invalid or unenforceable under applicable law, such part shall be ineffective to the extent of such invalidity only, without in any way affecting the remaining parts of such provision or the remaining provisions of this instrument.

My Agent shall be entitled to reasonable compensation for any services provided as my Agent. My Agent shall be entitled to reimbursement of all reasonable expenses incurred as a result of carrying out any provision of this Power of Attorney.

My Agent shall provide an accounting for all funds handled and all acts performed as my Agent as required under state law or upon my request or the request of any authorized personal representative, fiduciary or court of record acting on my behalf.

This Limited Power of Attorney shall become effective immediately, and shall not be affected by my disability or lack of mental competence, except as may be provided otherwise by an applicable state statute. This is a Limited Power of Attorney. This Limited Power of Attorney shall continue effective

EXHIBIT 5

until December 12, 2026. This Limited Power of Attorney may be revoked by me at any time by providing written notice to my Agent.

It is acknowledged that myself, Michelle Nichole Knapp, operates and exists WITHOUT the United States at all times while the agent also operates WITHOUT the United States at all times pursuant to 28 USC 1746. The ens legis/public corporation, MICHELLE NICHOLE KNAPP, of which the principal is an authorized representative, is located within the United States. Michelle Nichole Knapp is a foreign non-citizen national as it is defined in 8 USC 1101(a)(21).

**[SIGNATURE PAGE FOLLOWS]**

**EXHIBIT 5**

Dated _December 26_____, _2023_, at Minnetrista, Minnesota.


By: _Michelle Nichole Knapp_
Michelle Nichole Knapp/principal (also on behalf of MICHELLE NICHOLE KNAPP)

**EXHIBIT 5**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

Minnesota,
Hennepin County

On 26 December 2023 before me, Michelle Nichole Knapp _____, personally appeared Michelle Nichole Knapp, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Minnesota that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.


_____ (Notary Seal)
Signature of Notary Public


This document was prepared by:
Brandon Joe Williams/agent

JUSTIN J KUMMER
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2026

**EXHIBIT 5**

**Notice to Person Accepting the Appointment as Attorney-in-Fact:**

By acting or agreeing to act as the agent (attorney-in-fact) under this power of attorney you assume the fiduciary and other legal responsibilities of an agent. These responsibilities include:

1. The legal duty to act solely in the interest of the principal and to avoid conflicts of interest.

2. The legal duty to keep the principal's property separate and distinct from any other property owned or controlled by you.

You MAY transfer the principal's property to yourself without the need for full and adequate consideration and you may accept a gift of the principal's property. The only provision would be that the transferring of such property would need to be beneficial to the principal.

I have read the foregoing notice and I understand the legal and fiduciary duties that I assume by acting or agreeing to act as the agent (attorney-in-fact) under the terms of this power of attorney.

Agent attests this document to be signed on his behalf on:

Republic of California State (unincorporated),
Los Angeles County (unincorporated)

Date:

Signed:

Brandon Joe Williams/agent

**EXHIBIT 5**



When recorded, return to:
Wings Financial Credit Union
Attn: 1st Mortgage Department
14985 Glazier Avenue Suite 100
Apple Valley, MN 55124
800-692-2274

Title Order No.: 15585

LOAN #: ██████████

———————————————————[Space Above This Line For Recording Data]———————————————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **March 19, 2021,** together with all Riders to this document.

**(B) "Borrower" is  PRESTON KNAPP AND MICHELLE KNAPP, HUSBAND AND WIFE.**

Borrower is the mortgagor under this Security Instrument.

**(C) "Lender" is  Wings Financial Credit Union.**

Lender is a Corporation, organized and existing under the laws of Minnesota. Lender's address is **14985 Glazier Avenue Suite 100, Apple Valley, MN 55124**

Lender is the mortgagee under this Security Instrument.

**(D) "Note"** means the promissory note signed by Borrower and dated **March 19, 2021.** The Note states that Borrower owes Lender **ONE MILLION ONE HUNDRED NINETEEN THOUSAND FOUR HUNDRED AND NO/100** * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S. **$1,119,400.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **April 1, 2051.**

**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

MINNESOTA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT     Form 3024 1/01
Ellie Mae, Inc.                                    Page 1 of 9                         MNUDEED   0315
                                                                                       MNUDEED (CLS)
                                                                                       03/17/2021 12:08 PM PST

EXHIBIT 5

LOAN #:

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider     ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider             ☒ Planned Unit Development Rider   ☐ Other(s) [specify]
☐ 1-4 Family Rider          ☐ Biweekly Payment Rider
☐ V.A. Rider

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the **County**
[Type of Recording Jurisdiction] of **Hennepin**                          [Name of Recording Jurisdiction]:
**Lot 18, Block 1, Saunders Lake North, Hennepin County, Minnesota**
**PIN# 2211724140014**

which currently has the address of **2624 N Saunders Lake Dr., Minnetrista,**

[Street] [City]

Minnesota  **55364**          ("Property Address"):
        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges

EXHIBIT 5

due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.



**EXHIBIT 5**

LOAN #: ▮▮▮▮▮▮▮

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**EXHIBIT 5**

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the note, another insurer, any reinsurer, any other entity, or affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage





EXHIBIT 5

insurer's risk, or reducing losses. If such agreement provided that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this

EXHIBIT 5

LOAN #:

Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument at the time such documents are executed or within a reasonable time thereafter.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might



EXHIBIT 5

result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower by certified mail to the address of the Property or another address designated by Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees.**

**If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**25. Interest on Advances.** The interest rate on advances made by Lender under this Security Instrument shall not exceed the maximum rate allowed by Applicable Law.



**EXHIBIT 5**

LOAN #: ███████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

PRESTON KNAPP                                   3/19/21 (Seal)
                                                DATE

MICHELLE KNAPP                                  3/19/21 (Seal)
                                                DATE

State of: MINNESOTA
County of: HENNEPIN

This instrument was acknowledged before me on ___March 19, 2021___ by PRESTON KNAPP AND MICHELLE KNAPP, HUSBAND AND WIFE.

My commission expires: _____

_____
Signature of Notarial Officer

_____
(Title or Rank)

SHELLY M SOLUM BULLOCK
Notary Public
State of Minnesota
My Commission Expires
January 31, 2025

Lender: Wings Financial Credit Union
NMLS ID: 403259
Loan Originator: Roxy Johnson
NMLS ID: 525219

THIS INSTRUMENT WAS DRAFTED BY:
WINGS FINANCIAL CREDIT UNION
14985 GLAZIER AVENUE SUITE 100
APPLE VALLEY, MN 55124

TAX STATEMENTS FOR THE REAL PROPERTY DESCRIBED IN THIS INSTRUMENT SHOULD BE SENT TO:
WINGS FINANCIAL CREDIT UNION
14985 GLAZIER AVENUE SUITE 100
APPLE VALLEY, MN 55124

MINNESOTA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3024 1/01
Ellie Mae, Inc.                      Page 9 of 9                    MNUDEED  0315
                                                                   MNUDEED (CLS)
                                                                   03/17/2021 12:08 PM PST



EXHIBIT 5

LOAN #: █████████

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this **19th** day of **March, 2021** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to **Wings Financial Credit Union, a Corporation**

(the "Lender")
of the same date and covering the Property described in the Security Instrument and located at: **2624 N Saunders Lake Dr., Minnetrista, MN 55364.**

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in **COVENANTS, CONDITIONS AND RESTRICTIONS**

(the "Declaration").
The Property is a part of a planned unit development known as **Saunders Lake**

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to ensure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 1/01
Ellie Mae, Inc.                                       Page 1 of 2                                       F3150RDU 0115
                                                                                                                                                F3150RLU (CLS)
                                                                                                                                03/17/2021 12:08 PM PST



EXHIBIT 5

LOAN #: ▆▆▆▆▆▆

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____  3/19/21 (Seal)
**PRESTON KNAPP**                                              DATE

_____  3/19/21 (Seal)
**MICHELLE KNAPP**                                              DATE

MULTISTATE PUD RIDER--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3150 1/01
Ellie Mae, Inc.                          Page 2 of 2                          F3150RDU  0115
                                                                        F3150RLU (CLS)
                                                                03/17/2021 12:08 PM PST



EXHIBIT 5

DocuSign Envelope ID: AA2FBA83-3300-4BC8-94B5-BAB4DF61F86D



LAND TYPE Torrens (T)

DOC NUM 5816482

Certified, filed and/or recorded on
Mar 22, 2021 1:48 PM

Office of the Registrar of Titles
Hennepin County, Minnesota
Martin McCormick, Registrar of Titles
Mark Chapin, County Auditor and Treasurer

| Deputy 1 | Pkg ID 2200834E |
|---|---|
| Conservation Fee | $5.00 |
| Document Recording Fee | $46.00 |
| Environmental Response Fund (MRT .0001) | $111.94 |
| Mortgage Registration Tax (.0023 rate) | $2,574.62 |
| *Document Total* | $2,737.56 |

**Existing Certs**
1519505

This cover sheet is now a permanent part of the recorded document.

EXHIBIT 5

20231140244
MISC
04/24/2023 02:51:59 PM          Page: 1 of 33
Gabriella Cázares-Kelly  Recorder
OFFICIAL RECORDS OF PIMA COUNTY, AZ

PIMA COUNTY RECORDING DISTRICT

COURT OF RECORD OF THE LAND JURISDICTION

PUBLICLY RECORDED

TO ALTER, IGNORE, OR DISPOSE OF IS A FELONY

**Preston Knapp© and Michelle Knapp© Acceptance of Declaration of Land Patent**

**Certificate of Acceptance of Declaration of Land Patent....Pages 2-6**

Exhibit A .... Warranty Deed .... Pages 7-9

Exhibit B .... Summary Chain of Title .... Pages 10-12

Exhibit C .... Notice to Contact .... Pages 13-14

Exhibit D.... Certified Patent Number 18734 .... Pages 15-16

Exhibit E .... Affidavit of Publishing .... Pages 17-33

**Grantor Affirms there are no wells on the property**

Drafted by and Return to:

Preston Knapp and Michelle Knapp
c/o 2624 North Saunders Lake Drive
Minnetrista, Minnesota [55364]

This cover sheet has been added to these recorded documents to provide space for the
recording data.
This cover sheet appears as the first page of the document in the official public record.
Do not detach.

EXHIBIT 5

**The united states of America, And In The Republic state of Minnesota**

Preston Knapp and Michelle Knapp
c/o 2624 North Saunders Lake Drive
Minnetrista, Minnesota
Republic, usA
NON-DOMESTIC

## NOTICE OF,

## CERTIFICATE OF ACCEPTANCE OF DECLARATION OF LAND PATENT,

## u.s.A LAND PATENT # 18734. Dated, October 5, 1861. (SEE ATTACHED),

## KNOW ALL YE MEN AND WOMEN BY THESE PRESENT.

We, Preston Knapp and Michelle Knapp, do hereby certify and declare that we are "Assignees" at law in the LAND PATENT named and numbered above; that we have brought forward said **Land Patent Forever Benefit (See HOOPER V. SCHEIMER, 64 U.S. 23 HOW 235),** in our names as it pertains to the land described below. The Character of said land so claimed by the patent, and legally described and referenced under the Land Patent Number 18734 listed herein is;

The south east quarter of the north east quarter of Section twenty two, and, the south west quarter of the north west quarter of Section twenty three in Township one hundred and seventeen, of Range twenty four, in the district of lands, subject to sale, at Forest City, Minnesota, containing eighty acres.

That we, Preston Knapp and Michelle Knapp, are domiciled at 2624 North Saunders Lake Drive, Minnesota Republic, usA, NON-DOMESTIC. Unless otherwise stated, we have individual knowledge of matters contained in this Certification of Acceptance of Declaration of Land Patent. We are fully competent to testify with respect to these matters.

1 of 4

**EXHIBIT 5**

That we, Preston Knapp and Michelle Knapp, are Assignees at Law and a bona fide subsequent assignees by contract, of certain legally described portion of LAND PATENT under the original, certified LAND PATENT Number 18734, Dated October 5, 1861, which is duly authorized to be executed in pursuance of the supremacy of treaty law, citation and Constitutional Mandate, herein referenced, whereupon a duly authenticated true and correct lawful description, together with all hereditament, tenements, pre-emptive rights appurtenant thereto, the lawful and valuable consideration which is appended hereto, and made a part of this NOTICE OF CERTIFICATE OF ACCEPTANCE OF DECLARATION OF LAND PATENT. (SEE ATTACHED).

No claim is made herein that we have been assigned the entire tract of land as described in the original patent. Our assignment of land is inclusive of only the land described herein,

Lot 18, Block 1, Saunders Lake North, according to the plat thereof on file and of record in the Office of the County Recorder in and for Hennepin County, Minnesota.

The recording of this NOTICE OF CERTIFICATE OF ACCEPTANCE OF SAID DECLARATION OF LAND PATENT shall not deny or infringe on any right/s, privilege, or Immunity of any other Heir or Assigns as to any other portion of land covered in the above-described Patent Number 18734. (SEE ATTACHED).

If this duly certified LAND PATENT is not challenged by a lawfully qualified party having a Lawful claim, Lawful lien, Lawful debt, or other Lawful interest in said land having filed a claim in a court of competent jurisdiction at law within **sixty (60) days** from the date of this posting of this NOTICE, then the above described land shall remain an Allodial Freehold title of the Heir or Assignee.

We, Preston Knapp and Michelle Knapp, claim said Allodial Patent; this Land Patent shall be considered henceforth perfected in our names as Assignees. We, Preston Knapp and Michelle Knapp, hereby make lawful claim to the **FOREVER BENEFIT**, in Our names in said land described above, and all future claims by others against this land shall be forever waived!

If a lawfully qualified Sovereign American individual has a Lawful claim to said title and is challenged, the court must be a court of competency and jurisdiction is the Common law Supreme Court, or any other court of competent jurisdiction (Article III). Any action against a patent by a corporate state or their respective statutory, legislative units (i.e. courts) would be an action at law which is outside the venue and jurisdiction of these Article III courts. There is no Law issue contained herein which may be heard in any of

EXHIBIT 5

the State or Federal courts (Article I / IV), nor can any court of Equity / Admiralty / Military set aside, annul, or change a LAND PATENT. **(See, Corpus Juris Secundum, volume 73(B), Topic of Public Lands, section on Land Patents.) Quote, "Nothing in this patent can be changed by either party, nothing can be added, nor can anything be deducted once the patent is issued."**

Therefore, said land remains unencumbered, free and clear, and without liens or lawful attachment of any kind, and is hereby declared to be private land and private property, not subject to any commercial forums (i.e. U.C.C., Etc.) what so ever.

At common Law, if after **sixty (60) days** is stipulated for any challenges hereto and no lawful challenge is presented or otherwise, latches or estoppel shall forever bar the same against said Free Hold Patent (Allodial) land so described herein; assessment lien theory to the contrary, notwithstanding. Therefore, said Certificate of Acceptance of said Declaration of Land Patent, if after **sixty (60) days** from date of posting, if no challenges are brought forth and upheld, perfects this Patent (Allodial) Title in the name/names so listed above forever.

## JURISDICTION

THE RECIPIENT HERETO IS MANDATED by Article IV, Sec. 3, Clause 2, the 9th and 10th Amendments with reference to the 7th Amendment, enforced under Article III, Sec. 3, Clause 1, Article 1 Sec. 10, Clause 1 of the Constitution for the united states of America.

## PERJURY JURAT

Pursuant to Title 28 USC sec. 1746 (1) and executed "without the United States", we, Preston Knapp and Michelle Knapp, affirm under penalty of perjury under the laws of the united states of America that the foregoing is true and correct to the best of our belief and informed knowledge. And further deponent saith not. We now affix our autographs of the above affirmations with EXPLICIT RESERVATION OF ALL OF OUR UNALIENABLE RIGHTS, WITH OUT PREJUDICE to any of those rights pursuant to U.C.C. 1-308 and U.C.C. 1-103.6.

Respectfully,                          Dated as of _December 8,_____ 2022

by: _Presbo Byron Knapp_

Preston Knapp©

3 of 4

**EXHIBIT 5**

by: *Michelle Nichole Mapp*
Michelle Knapp©

Witnessed by: *Danielle Lou Mannchen*

Witnessed by: *Nichole Renee Mannchen*

**Witness Jurat**

Minnesota State }

*Carver* County }

I, a Public Notary, was visited today by the living man and woman known and identified as Preston Knapp and Michelle Knapp and they did sign and seal this Certificate of Acceptance of Declaration of Land Patent in my presence and did affirm the same in my sight, whereupon I affix my signature and seal as testimony to these facts:

_____
(Official signature and seal of Notary)

PAUL KAIRU MBUGUA
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2025

My commission expires on: *January 31st 2025*

_____

NOTE: Use of the notary public is for verification of autograph or seal of individual biological 'character' confirmation only implying no presumption to federal jurisdiction whatsoever.

4 of 4

EXHIBIT 5

C.V. filed___X___C.V. not req._____



No delinquent taxes

Transfer Entered

Mar 22, 2021 1:48 PM

Hennepin County, Minnesota
Mark Chapin
County Auditor and Treasurer

LAND TYPE Torrens (T)
DOC NUM 5816481

Certified, filed and/or recorded on
Mar 22, 2021 1:48 PM

Office of the Registrar of Titles
Hennepin County, Minnesota
Martin McCormick, Registrar of Titles
Mark Chapin, County Auditor and Treasurer

| Deputy 1 | Pkg ID 2200834E |
| --- | --- |
| CRV# 1227330 | |
| Conservation Fee | $5.00 |
| Document Recording Fee | $46.00 |
| Environmental Response Fund (SDT .0001) | $139.93 |
| State Deed Tax (.0033 rate) | $4,617.53 |
| *Document Total* | $4,808.46 |

**PID(s)**
22-117-24-14-0014

**Existing Certs**
1415484

**New Certs**
1519505

**EOT Notes**
I certify that this deed, with Certificate of Trust and Affidavit of Trustee filed herewith, is legally sufficient for issuance of a new Certificate of Title to grantees for lands described in the deed, owned by grantors and included in Certificate of Title No. 1415484.

Susan Ledray, Examiner of Titles
By: /s/ David B. Gates, Deputy Examiner of Titles



STATE OF MINNESOTA, COUNTY OF HENNEPIN
Certified to be a true and correct copy of the
original on file and of record in my office

AUG 1 1 2022

Amber Bougie, Registrar of Titles

By_____Deputy

This cover sheet is now a permanent part of the recorded document.

**EXHIBIT 5**

(Top 3 inches reserved for recording data)

**TRUSTEES' DEED**
by Trustees

ECrv·1227330

DEED TAX DUE: $ 4757.45                                    DATE: _March 15_, 2021

FOR VALUABLE CONSIDERATION, Bryan G. Bower, a/k/a Bryan Gregory Bower and Merle D. Bower, a/k/a Merle Diane Bower, as Trustees of The Merle Diane Bower Revocable Living Trust, dated November 20, 2015 ("Grantors"), hereby convey and quitclaim to Preston Knapp and Michelle Knapp, as joint tenants with rights of survivorship ("Grantees"), real property in Hennepin County, Minnesota, legally described as follows:

        Lot 18, Block 1, Saunders Lake North, Hennepin County, Minnesota.

_Check here if all or part of the described real property is Registered (Torrens)_ ☒

together with all hereditaments and appurtenances belonging thereto.

_Check applicable box:_

☒ The Seller certifies that the Seller does not know of any wells on the described real property.

☐ A well disclosure certificate accompanies this document or has been electronically filed. (If electronically filed, insert WDC number: [...].)

☐ I am familiar with the property described in this instrument and I certify that the status and number of wells on the described real property have not changed since the last previously filed well disclosure certificate.

Grantors

_Bryan Gregory Bower, Trustee_
Bryan G. Bower, a/k/a Bryan Gregory Bower, Trustee

_Merle Diane Bower, Trustee_
Merle D. Bower, a/k/a Merle Diane Bower, Trustee

ECB-1041                                                  Page 1 of 2

**EXHIBIT 5**

Page 2 of 2                                                                    **TRUSTEE'S DEED**

State of Minnesota, County of *Hennepin*

This Instrument was acknowledged before me on *March 15*____, 2021, by Bryan G. Bower, a/k/a Bryan Gregory Bower and Merle D. Bower, a/k/a Merle Diane Bower, as Trustees of The Merle Diane Bower Revocable Living Trust, dated November 20, 2015.

(Seal, if any)

JESSICA A. SABA-JOHNSON
Notary Public-Minnesota
My Commission Expires Jan 31, 2023

_____
(Signature of notarial officer)

Title (and Rank): *Notary*_____

My commission expires: _*1/31/2023*____
                        (month/day/year)

THIS INSTRUMENT WAS DRAFTED BY:
Gregory W. Deckert (#192867)
DECKERT LAW, P.A.
12912 63rd Avenue North
Maple Grove, MN 55369

TAX STATEMENTS FOR THE REAL PROPERTY DESCRIBED IN THIS
INSTRUMENT SHOULD BE SENT TO:
Preston Knapp and Michelle Knapp
2824 Saunders Lake Drive N
Minnetrista, MN 55364

**EXHIBIT 5**

## SUMMARY CHAIN OF TITLE

### SE 1/4 of NE 1/4  N 30 Acres Split

| | | | |
|---|---|---|---|
| Edwin Gribble & Rosa J. Gribble | to | Edwin Jackson | October 16, 1860 |
| Edwin Jackson | to | Rosa Gribble | October 18, 1860 |
| United States of America | to | Edwin Gribble | October 5, 1861 |
| Rosa J. Gribble & Edwin Gribble | to | Minnie S. Gribble | October 24, 1895 |
| Rosa J. Gribble & Edwin Gribble | to | David Sanford Jr. | December 31, 1901 |
| David Sanford | to | Minnie S. Gribble | February 10, 1903 |
| Estate of Minnie S. Gribble | to | Charles G. Gribble | December 4, 1940 |

**East 30 Acres Split Off**

| | | | |
|---|---|---|---|
| Heirs of Madge J. Gribble<br>Risdon Oliver Gribble<br>Daisy Mary Gribble – Orton<br>Madge Gribble Askonas<br>Ann Taylor Gribble Barnett<br>Charles G. Gribble Jr. | to | William N. Johnson | August 3, 1959 |

**All Back Together**

| | | | |
|---|---|---|---|
| William N. Johnson &<br>Phyllis A. Johnson | to | William R. Koenig &<br>Edythe F. Koenig | October 27, 1965 |
| William R. Koenig &<br>Edythe F. Koenig | to | William N. Johnson &<br>Phyllis A. Johnson | October 28, 1965 |
| William N. Johnson as Conco Inc. | to | Woodcrest, Inc. | June 15, 1975 |
| Woodcrest, Inc. | to | First Southdale National Bank of<br>Edina | September 30, 1981 |
| First Southdale National Bank of<br>Edina | to | Mohammad Rafie Husain Marafie<br>Sons Co. | August 12, 1985 |
| Mohammad Rafie Husain Marafie<br>Sons Co. | to | Wara Real Estate Inc. | August 13, 1985 |
| Wara Real Estate Incorporated | to | Stephen L. Strobel &<br>Holly E. Strobel | March 4, 2003 |
| Stephen L. Strobel &<br>Holly E. Strobel | to | Bryan G. Bower & Merle D. Bower | June 8, 2007 |
| Bryan G. Bower & Merle D. Bower | to | Bryan G. Bower and Merle D. Bower<br>as Trustees of The Merle Diane<br>Bower Revocable Living Trust | November 20, 2015 |
| Bryan G. Bower and Merle D. Bower<br>as Trustees of The Merle Diane<br>Bower Revocable Living Trust | to | Preston Knapp & Michelle Knapp | March 15, 2021 |

**EXHIBIT 5**

## SUMMARY CHAIN OF TITLE

### SE 1/4 of NE 1/4  N 88' Split

| | | | |
|---|---|---|---|
| Edwin Gribble & Rosa J. Gribble | to | Edwin Jackson | October 16, 1860 |
| Edwin Jackson | to | Rosa Gribble | October 18, 1860 |
| United States of America | to | Edwin Gribble | October 5, 1861 |
| Rosa J. Gribble & Edwin Gribble | to | Minnie S. Gribble | October 24, 1895 |
| Rosa J. Gribble & Edwin Gribble | to | David Sanford Jr. | December 31, 1901 |
| David Sanford | to | Minnie S. Gribble | February 10, 1903 |
| Estate of Minnie S. Gribble | to | Charles G. Gribble | December 4, 1940 |

**North 88' Split Off**

| | | | |
|---|---|---|---|
| Charles G. Gribble & Madge Gribble | to | Ida W. Hasslinger | April 10, 1941 |
| Ida W. Hasslinger & Frank Hasslinger | to | Adolph Awe & Ida Awe | May 2, 1942 |
| Adolph Awe & Ida Awe | to | Adler W. Kullberg & Selina Henrietta Kullberg | October 16, 1947 |
| Selina Henrietta Kullberg | to | William N. Johnson & Phyllis A. Johnson | November 4, 1964 |

**All Back Together**

| | | | |
|---|---|---|---|
| William N. Johnson & Phyllis A. Johnson | to | William R. Koenig & Edythe F. Koenig | October 27, 1965 |
| William R. Koenig & Edythe F. Koenig | to | William N. Johnson & Phyllis A. Johnson | October 28, 1965 |
| William N. Johnson as Conco Inc. | to | Woodcrest, Inc. | June 15, 1975 |
| Woodcrest, Inc. | to | First Southdale National Bank of Edina | September 30, 1981 |
| First Southdale National Bank of Edina | to | Mohammad Rafie Husain Marafie Sons Co. | August 12, 1985 |
| Mohammad Rafie Husain Marafie Sons Co. | to | Wara Real Estate Inc. | August 13, 1985 |
| Wara Real Estate Incorporated | to | Stephen L. Strobel & Holly E. Strobel | March 4, 2003 |
| Stephen L. Strobel & Holly E. Strobel | to | Bryan G. Bower & Merle D. Bower | June 8, 2007 |
| Bryan G. Bower & Merle D. Bower | to | Bryan G. Bower and Merle D. Bower as Trustees of The Merle Diane Bower Revocable Living Trust | November 20, 2015 |
| Bryan G. Bower and Merle D. Bower as Trustees of The Merle Diane Bower Revocable Living Trust | to | Preston Knapp & Michelle Knapp | March 15, 2021 |

**EXHIBIT 5**

## SUMMARY CHAIN OF TITLE

### SE 1/4 of NE 1/4  W 10 Acres Split

| | | | |
|---|---|---|---|
| Edwin Gribble & Rosa J. Gribble | to | Edwin Jackson | October 16, 1860 |
| Edwin Jackson | to | Rosa Gribble | October 18, 1860 |
| United States of America | to | Edwin Gribble | October 5, 1861 |
| Rosa J. Gribble & Edwin Gribble | to | Minnie S. Gribble | October 24, 1895 |
| Rosa J. Gribble & Edwin Gribble | to | David Sanford Jr. | December 31, 1901 |
| David Sanford | to | Minnie S. Gribble | February 10, 1903 |
| Estate of Minnie S. Gribble | to | Charles G. Gribble | December 4, 1940 |

**West 10 Acres Split Off**

| | | | |
|---|---|---|---|
| Charles G. Gribble & Madge Gribble | to | William N. Johnson | March 3, 1926 |
| Alfred E. Jackson & Agnes Jackson | to | Ida W. Hasslinger | August 17, 1940 |

**N 88' and W 10 Acres Together**

| | | | |
|---|---|---|---|
| Ida W. Hasslinger & Frank Hasslinger | to | Adolph Awe & Ida Awe | May 2, 1942 |
| Adolph Awe & Ida Awe | to | Adler W. Kullberg & Selina Henrietta Kullberg | October 16, 1947 |
| Selina Henrietta Kullberg | to | William N. Johnson & Phyllis A. Johnson | November 4, 1964 |

**All Back Together**

| | | | |
|---|---|---|---|
| William N. Johnson & Phyllis A. Johnson | to | William R. Koenig & Edythe F. Koenig | October 27, 1965 |
| William R. Koenig & Edythe F. Koenig | to | William N. Johnson & Phyllis A. Johnson | October 28, 1965 |
| William N. Johnson as Conco Inc. | to | Woodcrest, Inc. | June 15, 1975 |
| Woodcrest, Inc. | to | First Southdale National Bank of Edina | September 30, 1981 |
| First Southdale National Bank of Edina | to | Mohammad Rafie Husain Marafie Sons Co. | August 12, 1985 |
| Mohammad Rafie Husain Marafie Sons Co. | to | Wara Real Estate Inc. | August 13, 1985 |
| Wara Real Estate Incorporated | to | Stephen L. Strobel & Holly E. Strobel | March 4, 2003 |
| Stephen L. Strobel & Holly E. Strobel | to | Bryan G. Bower & Merle D. Bower | June 8, 2007 |
| Bryan G. Bower & Merle D. Bower | to | Bryan G. Bower and Merle D. Bower as Trustees of The Merle Diane Bower Revocable Living Trust | November 20, 2015 |
| Bryan G. Bower and Merle D. Bower as Trustees of The Merle Diane Bower Revocable Living Trust | to | Preston Knapp & Michelle Knapp | March 15, 2021 |

**EXHIBIT 5**

# NOTICE

This notice is to inform any person who has lawful claim/standing to view this file and/or who wishes to review the complete file on record may do so by requesting an appointment with,

**Preston Knapp and Michelle Knapp**
**c/o 2624 North Saunders Lake Drive**
**Minnetrista, Minnesota [55364]**
**262-496-8083**

**NOTICE # 1**
**We, Preston Knapp and Michelle Knapp,** will set the time, date and place for the review of my documents, no exceptions!

**NOTICE # 2**
This notice is to inform any person who has lawful claim/standing to view this file and/or who wishes to review the complete file on record may do so by requesting an appointment with,

**Preston Knapp and Michelle Knapp**
**c/o 2624 North Saunders Lake Drive**
**Minnetrista, Minnesota [55364]**
**262-496-8083**

**NOTICE # 3**
**We, Preston Knapp and Michelle Knapp,** have included my summary of chain of title regarding our land patent.

**NOTICE # 4**
This land patent document file has a total of __14__ pages.

EXHIBIT 5

**NOTICE;**

Failure of any lawful party claiming an interest to bring forward a lawful challenge to this **Certificate of Acceptance of Declaration of Land Patent and the benefit of Original Land Grant/Patent Forever Benefit, as stipulated herein, will be leached and estoppel to any and all parties claiming an interest forever.**

**Failure to make a lawful claim, as indicated herein, within sixty (60) calendar days of this notice, will forever bar any claimant from any claim against our Allodial Land Patent estate as described herein and will be Final Judgement.**

December 8, 2022                              **Dated**

by: _Preston Byron Knapp_ ©

by: _Michelle Nichole Knapp_ ©

EXHIBIT 5

115



# THE UNITED STATES OF AMERICA

## To all to whom these Presents shall come, Greeting:

**WHEREAS,** In pursuance of the Act of Congress, approved March 3, 1855, entitled "An Act in addition to certain Acts granting Bounty Land to certain Officers and Soldiers who have been engaged in the military service of the United States," there has been deposited in the GENERAL LAND OFFICE, Warrant No. 18.734         for 80         acres, in favor of *Jonathan Potts, Private, Captains Snow and Blakes Companies, Georgia Militia, Florida War*

with evidence that the same has been duly located upon *the south east quarter of the south east quarter of Section twenty two, and the south west quarter of the north west quarter of Section twenty three, in Township one hundred and seventeen, of Range twenty four, in the district of lands subject to sale at Forest City, Minnesota, containing eighty acres*

according to the Official Plat of the Survey of said Lands returned to the GENERAL LAND OFFICE by the SURVEYOR GENERAL *the said Warrant having been assigned by the said Jonathan Potts, to Edwin Gribble, in whose favor said tract has been located*

**NOW KNOW YE,** That there is therefore granted by the UNITED STATES unto the said *Edwin Gribble, as assignee, as aforesaid, and to his heirs*

the tract of Land above described: TO HAVE AND TO HOLD the said tract of Land, with the appurtenances thereof, unto the said *Edwin Gribble, as assignee, as aforesaid, and to his*

heirs and assigns forever.

In testimony whereof, I, *Abraham Lincoln*, PRESIDENT OF THE UNITED STATES OF AMERICA, have caused these Letters to be made Patent, and the SEAL OF THE GENERAL LAND OFFICE to be hereunto affixed.

GIVEN under my hand, at the CITY OF WASHINGTON, the *Fifth* day of *October* in the year of our Lord one thousand eight hundred and *Sixty one* and of the INDEPENDENCE OF THE UNITED STATES the *Eighty Sixth*

BY THE PRESIDENT: *Abraham Lincoln*

By *W. O. Stoddard* Sec'y.

*J. N. Granger,* Recorder of the General Land Office.

EXHIBIT 5

Bureau of Land Management
Eastern States
5275 Leesburg Pike
Falls Church, VA 22041

JUL 2 5 2022
Date

I hereby certify that this reproduction is a true copy of the official record on file in this office.

Authorized Signature

EXHIBIT 5

Bureau of Land Management
Eastern States
5275 Leesburg Pike
Falls Church, VA 22041

JUL 2 5 2022

Date

I hereby certify that this reproduction is a true copy of the
official record on file in this office.

Authorized Signature

EXHIBIT 5

By: Preston Knapp sui juris.

By: Michelle Knapp sui juris.

in care of / rural route 2624 North Saunders Lake Drive

Minnetrista, Minnesota, Zip exempt

**Notice to Agent[s] is Notice to Principal[s], and Notice to Principal[s] is Notice to Agent[s]**

# AFFIDAVIT OF TRUTH,

# PUBLICATION OF ACCEPTANCE OF LAND PATENT

This document contains evidence of a Certificate of Acceptance of Declaration of Land Patent posted on a publicly accessible web page hosted on the URL described herein,

https://drive.google.com/file/d/1MiL-07CcAzdkL7nYjete_VyqOwlpp6Be/view

Public notice has been posted in perpetuity commencing at 1:30 pm Central Standard Time on February 7, 2023 and ceasing at 10:00 pm Central Daylight Time on April 9, 2023 as evidenced by the screenshots captured herein,

Page 1 of 14

**EXHIBIT 5**

February 7, 2023



The united states of America, And In The Republic state of Minnesota

Preston Knapp and Michelle Knapp
c/o 2624 North Saunders Lake Drive
Minnetrista, Minnesota
Republic, usA
NON-DOMESTIC

NOTICE OF,

CERTIFICATE OF ACCEPTANCE OF DECLARATION OF LAND PATENT,

u.s A LAND PATENT # 18734. Dated, October 6, 1861. (SEE ATTACHED),

KNOW ALL YE MEN AND WOMEN BY THESE PRESENT.

We, Preston Knapp and Michelle Knapp, do hereby certify and declare that we are "Assignees" at law in the LAND PATENT named and numbered above, that we have brought forward said Land Patent Forever Benefit [See HOOPER V. SCHEIMER, 64 U.S. 23 HOW 235], in our names as it pertains to the land described below. The Character of said land so claimed by the patent, and legally described and referenced under the Land Patent Number 18734 listed herein is;

The south east quarter of the north east quarter of Section twenty two, and, the south west quarter of the north west quarter of Section twenty three in Township one hundred and seventeen, of Range twenty four, in the district of lands, subject to sale, at Forest City, Minnesota, containing eighty acres.

That we, Preston Knapp and Michelle Knapp, are domiciled at 2624 North Saunders Lake Drive, Minnesota Republic, usA, NON-DOMESTIC. Unless otherwise stated, we have individual knowledge of matters contained in this Certification of Acceptance of Declaration of Land Patent. We are fully competent to testify with respect to these matters

This Notice of Land Patent shall be posted for 61 days starting on February 7, 2023 until April 9, 2023.

1 of 4

Page 2 of 14

EXHIBIT 5

February 12, 2023



Page 3 of 14

EXHIBIT 5

February 14, 2023



The united states of America, And In The Republic state of Minnesota

Preston Knapp and Michelle Knapp
c/o 2624 North Saunders Lake Drive
Minnetrista, Minnesota
Republic, usA
NON-DOMESTIC

NOTICE OF,

CERTIFICATE OF ACCEPTANCE OF DECLARATION OF LAND PATENT,

u.s.A LAND PATENT # 18734. Dated, October 6, 1881. (SEE ATTACHED),

KNOW ALL YE MEN AND WOMEN BY THESE PRESENT,

We, Preston Knapp and Michelle Knapp, do hereby certify and declare that we are "Assignees" at law in the LAND PATENT named and numbered above, that we have brought forward said Land Patent Forever Benefit (See HOOPER V. SCHEIMER, 84 U.S. 23 HOW 235), in our names as it pertains to the land described below  The Character of said land so claimed by the patent, and legally described and referenced under the Land Patent Number 18734 listed herein is,

The south east quarter of the north east quarter of Section twenty two, and, the south west quarter of the north west quarter of Section twenty three in Township one hundred and seventeen, of Range twenty four, in the district of lands, subject to sale, at Forest City, Minnesota, containing eighty acres.

That we, Preston Knapp and Michelle Knapp, are domiciled at 2624 North Saunders Lake Drive, Minnesota Republic, usA, NON-DOMESTIC  Unless otherwise stated, we have individual knowledge of matters contained in this Certification of Acceptance of Declaration of Land Patent  We are fully competent to testify with respect to these matters.

This Notice of Land Patent shall be posted for 61 days starting on February 7, 2023 until April 9, 2023,

1 of 4

Page 1 / 14

EXHIBIT 5

February 21, 2023



EXHIBIT 5

March 2, 2023



EXHIBIT 5

March 9, 2023



The united states of America, And in The Republic state of Minnesota

Preston Knapp and Michelle Knapp
c/o 2024 North Saunders Lake Drive
Minnetrista, Minnesota
Republic, usA
NON-DOMESTIC

NOTICE OF,

CERTIFICATE OF ACCEPTANCE OF DECLARATION OF LAND PATENT,

u.s.A LAND PATENT # 18734. Dated, October 5, 1861. (SEE ATTACHED),

KNOW ALL YE MEN AND WOMEN BY THESE PRESENT.

We, Preston Knapp and Michelle Knapp, do hereby certify and declare that we are "Assignees" at law in the LAND PATENT named and numbered above, that we have brought forward said Land Patent Forever Benefit (See HOOPER V. SCHEIMER, 84 U.S. 23 HOW 235), in our names as it pertains to the land described below. The Character of said land so claimed by the patent, and legally described and referenced under the Land Patent Number 18734 listed herein is;

The south east quarter of the north east quarter of Section twenty two, and, the south west quarter of the north west quarter of Section twenty three in Township one hundred and seventeen, of Range twenty four, in the district of lands, subject to sale, at Forest City, Minnesota, containing eighty acres

That we, Preston Knapp and Michelle Knapp, are domiciled at 2024 North Saunders Lake Drive, Minnesota Republic, usA, NON-DOMESTIC. Unless otherwise stated, we have individual knowledge of matters contained in this Certification of Acceptance of Declaration of Land Patent. We are fully competent to testify with respect to these matters

This Notice of Land Patent shall be posted for 61 days starting on February 7, 2023 until April 9, 2023.

1 of 4

EXHIBIT 5

March 14, 2023



**EXHIBIT 5**

March 22, 2023



EXHIBIT 5

April 6, 2023



EXHIBIT 5

April 9, 2023



EXHIBIT 5

Dated this _12th_ day of _April_ in the Year of Our Lord Two Thousand

Twenty-three. Preston Knapp, Sui Juris, Jus Soli.

The true Trustee and Beneficent of dba PRESTON BYRON KNAPP and all estates of my

fathers and forefathers. See Genesis ch 1 verse 26-28, Genesis ch 2 verse 7, Job ch32

verse 21

As Beneficiary of CQV under the PCT.


Without Prejudice - Without Recourse - all unalienable rights guaranteed


Autographed by Preston Knapp; a man, a Living Soul on the _12th_ day of

_April_, 2023.

_Preston Knapp_

Preston Knapp

Seal

**EXHIBIT 5**

Dated this 12ᵗʰ day of ___April___ in the Year of Our Lord Two Thousand

Twenty-three. Michelle Knapp, Sui Juris, Jus Soli.

The true Trustee and Beneficent of dba MICHELLE NICHOLE MANNCHEN and dab
MICHELLE NICHOLE KNAPP and all estates of my fathers and forefathers. See Genesis ch
1 verse 26-28, Genesis ch 2 verse 7, Job ch32 verse 21

As Beneficiary of CQV under the PCT.


Without Prejudice - Without Recourse - all unalienable rights guaranteed


Autographed by Michelle Knapp; a woman, a Living Soul on the 12ᵗʰ day of
___April___, 2023.

_____ *Michelle Knapp*

                                                           Michelle Knapp

                                                                    Seal

**EXHIBIT 5**

Minnesota State

Carver County

On ___4|12|2023___ date before me, as Notary and as Jurat Certificate of Acceptance by court officer, Preston Knapp and Michelle Knapp personally appeared and proved to me on the basis of satisfactory evidence to be the man and woman whose Names are subscribed to the within attached instrument and acknowledged to me that they executed the same in his and her authorized capacity, and that by his and her autographs on the instrument the man and woman executed, the instrument.

I certify under PENALTY OF PERJURY under the lawful laws of Minnesota State and the STATE OF MINNESOTA that the foregoing paragraph is true and correct Witness my hand and official seal.

Signature________ seal
of Notary Republic

MA GRACE R. OLIVA
Notary Public-Minnesota
My Commission Expires Jan. 31, 2026

Page 14 of 14

EXHIBIT 5

AFFIDAVIT OF PUBLICATION



STATE OF MINNESOTA        )
COUNTY OF HENNEPIN )

650 3rd Ave. S, Suite 1300 | Mineapolis, MN | 55488

Terri Swanson, being first duly sworn, on oath states as follows:

1.  (S)He is and during all times herein stated has been an employee of the Star Tribune Media Company LLC, a Delaware limited liability company with offices at 650 Third Ave. S., Suite 1300, Minneapolis, Minnesota 55488, or the publisher's designated agent.  I have personal knowledge of the facts stated in this Affidavit, which is made pursuant to Minnesota Statutes §331A.07.

2.  The newspaper has complied with all of the requirements to constitute a qualified newspaper under Minnesota law, including those requirements found in Minnesota Statutes §331A.02.

3.  The dates of the month and the year and day of the week upon which the public notice attached/copied below was published in the newspaper are as follows:

| Dates of Publication | | Advertiser | Account # | Order # |
|---|---|---|---|---|
| StarTribune | 02/07/2023 | KNAPP PRESTON | | 449132 |
| StarTribune | 02/11/2023 | KNAPP PRESTON | | 449132 |
| StarTribune | 02/14/2023 | KNAPP PRESTON | | 449132 |
| StarTribune | 02/18/2023 | KNAPP PRESTON | | 449132 |
| StarTribune | 02/21/2023 | KNAPP PRESTON | | 449132 |
| StarTribune | 02/25/2023 | KNAPP PRESTON | | 449132 |
| StarTribune | 02/28/2023 | KNAPP PRESTON | | 449132 |
| StarTribune | 03/04/2023 | KNAPP PRESTON | | 449132 |
| StarTribune | 03/07/2023 | KNAPP PRESTON | | 449132 |
| StarTribune | 03/11/2023 | KNAPP PRESTON | | 449132 |
| StarTribune | 03/14/2023 | KNAPP PRESTON | | 449132 |
| StarTribune | 03/18/2023 | KNAPP PRESTON | | 449132 |
| StarTribune | 03/21/2023 | KNAPP PRESTON | | 449132 |
| StarTribune | 03/25/2023 | KNAPP PRESTON | | 449132 |
| StarTribune | 03/28/2023 | KNAPP PRESTON | | 449132 |
| StarTribune | 04/01/2023 | KNAPP PRESTON | | 449132 |

4.  The publisher's lowest classified rate paid by commercial users for comparable space, as determined pursuant to § 331A.06, is as follows:      **$627.20**

5.  Mortgage Foreclosure Notices.  Pursuant to Minnesota Statutes §580.033 relating to the publication of mortgage foreclosure notices:  The newspaper's known office of issue is located in Hennepin County. The newspaper complies with the conditions described in §580.033, subd. 1, clause (1) or (2).  If the newspaper's known office of issue is located in a county adjoining the county where the mortgaged premises or some part of the mortgaged premises described in the notice are located, a substantial portion of the newspaper's circulation is in the latter county.

FURTHER YOUR AFFIANT SAITH NOT.

*Terri Swanson*
_____

Subscribed and sworn to before me on:      04/03/2023
_____

*Diane E. Rak Klbozyk*
_____

**EXHIBIT 5**



Notary Public

EXHIBIT 5

# StarTribune
Twin Cities

Saturday, April 1, 2023

| Ad Number | 0000449132-01 | | Advertiser: | Knapp |
|---|---|---|---|---|
| Insertion Number: | N/A | | Agency: | N/A |
| Size: | 1 Col x 0.56 in | | Section-Page-Zone(s): | B-8-All |
| Color Type: | 0 | | Description: | We, Preston Knapp and Michel... |

# CLASSIFIEDS + PUBLIC NOTICES
STARTRIBUNE.COM/CLASSIFIEDS • 612.673.7000 • 800.927.9233

EXHIBIT 5

**Public Service Center Building**
240 N. Stone Ave., 1st Floor
Tucson, AZ 85701

**Doc. Recording:** (520) 724-4350
**Voter Registration:** (520) 724-4330

**PIMA COUNTY**
RECORDER'S OFFICE

**Mailing Address:**
PO Box 3145
Tucson, AZ 85702-3145

**Social:** @PimaRecorder
**Web:** recorder.pima.gov

Gabriella Cázares-Kelly, Recorder

The foregoing instrument is a full, true and correct copy of the original record in this office.

Sequence #: 2023/140244          # of Pages: 33

Docket # N/A

Starting Page#: N/A          Ending Page #: N/A

GABRIELLA CÁZARES-KELLY, County Recorder
In and for the County of Pima, State of Arizona

By: Ken Kashenberger

Deputy Recorder          AUGUST 3, 2023
                         Date

Form May 14, 2004
REVISED January 4, 2021

**EXHIBIT 5**