UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Preston Byron Knapp,<br><br>    Plaintiff,<br><br>vs.<br><br>Wings Credit Union; AKA Wings Financial<br>Credit Union,<br><br>    Defendant. | Case No: 0:24-cv-00434 (DWF/ECW)<br><br>**DEFENDANT'S MEMORANDUM<br>OF LAW IN SUPPORT OF<br>MOTION FOR SANCTIONS** |

## INTRODUCTION

Defendant Wings Financial Credit Union ("Wings") hereby moves the Court, pursuant to Rule 11 of the Federal Rules of Civil Procedure and the Court's inherent authority, for an order imposing sanctions against Plaintiff Preston Byron Knapp ("Plaintiff") due to his act of filing a patently frivolous complaint with claims that are clearly unwarranted under any existing law or any nonfrivolous argument for extending, modifying, or reversing existing law.

Plaintiff attempts to assert claims against Wings that arise from a conspiracy theory that has been widely rejected by federal courts. Plaintiff's Complaint further asserts claims that are patently frivolous because the statutes involved do not apply to Wings, do not provide a private right action, or assert claims that have no basis in law or fact. A brief review of case law from numerous jurisdictions across the United States would have revealed to Plaintiff the patently frivolous nature of his claims. Yet Plaintiff chose to ignore the law and file his absurd suit, thereby burdening both Wings and the Court. As a

consequence, the Court should grant Wing's Motion for Sanctions and impose sanctions sufficient to deter Plaintiff from engaging in any future misuse of the judicial system.

## FACTUAL BACKGROUND

Wings is a state-chartered credit union organized pursuant to Chapter 52 of Minnesota Statutes. Plaintiff Preston Byron Knapp and his wife, non-party Michelle Nichole Knapp, have a mortgage loan with Wings (the "Mortgage"), and a HELOC with Wings (the "HELOC"). Compl. ¶¶ 10–11, ECF No. 1; ECF No. 10-1 (Mortgage); ECF No. 10-2 (Note); ECF No. 10-3 (Revolving Credit Mortgage); ECF No. 10-4 (Open-End Home Equity Credit Agreement and Truth in Lending Disclosure). In November of 2023, Plaintiff signed a document appointing Brandon Joe Williams ("Williams") as his "attorney-in-fact" and purporting to grant Williams the power to "[p]erform any act necessary to deposit, negotiate, sell or transfer any note, real estate, security, or draft of the United States of America, including U.S. Treasury Securities. This includes any non-US notes, securities, drafts, etc. This includes indorsements, approvals, exchanges, etc." *See* Compl. ¶¶ 39, 43; *see also* ECF No. 10-5, at 6–17.

In January of 2024, Williams sent "orders" to Wings related to Plaintiff's mortgage loan and HELOC. *See* Compl. ¶¶ 39–40; Hirte Decl. Ex. 5. Plaintiff alleges these "orders" included at "unconditional tender of payment in accordance with UCC 3-603," "a payment for US dollars," and "an unconditional order to pay." *Id.* ¶¶ 47, 49–50. The Complaint also alleges that Plaintiff "submitted another entire promissory note in order to perform on the mortgage." *Id.* ¶ 60. Plaintiff's theory appears to be that, by signing the documents included in the "orders" with a "special indorsement," he converted the documents to "negotiable

2

instruments" which constitute "payment in US dollars" and thereby satisfy Plaintiff's loans with Wings. *See id.* ¶¶ 15, 49, 74–75. Williams describes this case as their "first official case for infinite money." *See* Williams & Williams Law Group, Current and Previous Litigation, https://www.williamsandwilliamslawfirm.com/current-and-previous-litigation (last visited Mar. 19, 2024).

On March 8, 2024, Wings served a copy of its Rule 11 Safe Harbor letter on Plaintiff. Declaration of Tessa Mansfield Hirte ("Hirte Decl.") ¶ 3; Hirte Decl. Exs. A, B. On March 9, 2024, Plaintiff responded to Wings by letter, indicating he planned on continuing with his frivolous lawsuit. Hirte Decl. ¶ 6; Hirte Decl., Ex. C. On March 13, 2024, Wings filed its Motion to Dismiss Plaintiff's Complaint and supporting documents. ECF No. 7; *see also* ECF Nos. 8–12. In response, Plaintiff filed a meritless Motion to Strike Wings' Motion to Dismiss and a meritless Motion for Sanctions against Attorney Hirte. *See* ECF No. 13; ECF No. 16. Wings responded to both Motions. *See* ECF No. 20; ECF No. 22. To date, Plaintiff has not filed a direct response to Wings' Motion to Dismiss, and the deadline to do so has passed.[1]

## ARGUMENT

### I.    <u>Standard For Rule 11 Motion For Sanctions</u>

Rule 11 of the Federal Rules of Civil Procedure provides, in pertinent part:

(b) By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge,

---

[1] Plaintiff's response was due on April 3, 2024. *See* LR 7.1(c)(2).

information, and belief, formed after an inquiry reasonable under the circumstances:

1.     it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and]

2.     the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law…

Fed. R. Civ. P. 11(b). Rule 11(c) provides for the imposition of sanctions in the event there is a violation of Rule 11(b).

"In determining whether this provision has been violated, a court 'must determine whether a reasonable and competent attorney would believe in the merit of an argument.'" *Welk v. GMAC Mortg.*, 850 F. Supp. 2d 976, 1000 (D. Minn. 2012) (quoting *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003)). Rule 11 requires parties or their attorneys to conduct a reasonable inquiry of the factual and legal bases for their claims. *Coonts*, 316 F.3d at 753. "Courts evaluate Rule 11 motions using a standard of objective reasonableness to assess the litigant's conduct, considering factors such as 'the wrongdoer's history, the severity of the violation, and the degree to which malice or bad faith contributed to the violation.'" *Sharma*, 2022 U.S. Dist. LEXIS 47796, *46, 2 (quoting *Bus. Guides v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551, (1991); *Pope v. Federal Express Corp.*, 49 F.3d 1327, 1328 (8th Cir. 1995)).

"[T]he central purpose of Rule 11 is to deter baseless filings in district court . . . ." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). "[P]ro se litigants are subject to the same Rule 11 standards as licensed attorneys." *Sharma v. Crosscode, Inc.*, 2022 U.S.

Dist. LEXIS 47796, *46, 2022 WL 816555 (D. Minn. March 17, 2022) (citing *Carman v. Treat*, 7 F.3d 1379, 1382 (8th Cir. 1993)).

## II. Sanctions Are Appropriate For Counts 1 and 2 Because They Are Based on A Conspiracy Theory That Has Been Repeatedly Rejected By Federal Courts Throughout The United States.

Plaintiff's Count 1 claim for breach of contract and Count 2 claim for breach of fiduciary duty appear to be based on a theory often referred to as the "vapor money" theory. The vapor money theory posits "that promissory notes (and similar instruments) are the equivalent of 'money' that citizens literally 'create' with their signatures." *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 212 (D. Conn. 2010).

> Bolstering this argument (at least for its adherents) is the fact that once received, banks typically deposit promissory notes into their own accounts and list them as assets. Then, according to the vapor money theory, the bank purports to lend the 'money' that was "created" by the citizen's signature back to the citizen-borrower.

*Id.*

Plaintiff's Complaint appears to rely on a form of the "vapor money" theory, under which Plaintiff apparently believes that by sending Wings documents containing his signature and specific language (which he refers to as a "special indorsement"), he can then convert various documents, including the notes underlying the Mortgage and HELOC, an additional "promissory note" he created, and the monthly billing statements sent by Wings (which he claims are "bills of exchange") into "negotiable instruments," which he can then use as payments to satisfy his debts to Wings.[2] *See* Compl. ¶¶ 23, 30–34. Plaintiff's

---

[2] In Plaintiff's version, he appears to assert that Wings exchanged the original loan documents he signed for Federal Reserve Notes (i.e., paper US currency) pursuant to 12

"attorney-in-fact" even describes this case as their "first official case for infinite money." *See* Williams & Williams Law Group, Current and Previous Litigation, https://www.williamsandwilliamslawfirm.com/current-and-previous-litigation (last visited Mar. 19, 2024); *see also* Williams, Brandon-Joe, *How to Have Infinite Money (in Less than 10 Minutes)*, YouTube (Jan. 3, 2024), https://www.youtube.com/watch?v= Qri0FHLO3ms.

Federal courts have widely and universally rejected the theories underlying Plaintiff's allegations for decades. For example, in *Demmler v. Bank One NA*, 2006 U.S. Dist. LEXIS 9409, *3 (S.D. Oh. Mar. 9, 2006), the plaintiff obtained a loan that was secured by a mortgage on his real property. *Id.* When the plaintiff defaulted on the loan, the defendant initiated foreclosure proceedings. *Id.* The plaintiff sued the defendant alleging twenty-one causes of action related to the note and mortgage. *Id.* The court explained the basic theory behind the plaintiff's complaint as follows:

> [A]ll of Plaintiff's claims, federal and state, stem from the same basic premise. Plaintiff alleges that the promissory note he executed is the equivalent of "money" that he gave to the bank. He contends that Bank One

---

U.S.C. § 412, and that by sending Wings "orders" with his signature and a "special indorsement" those Federal Reserve Notes are then used to payoff his loans. *See* Compl. ¶ 15 ("Proper performance would have been to indorse the original collateral securities under special negotiation, prior to them being exchanged for Federal Reserve Notes."); *id.* ¶ 49 ("Due to the original application having already been swapped for Federal Reserve Notes after the application was indorsed with a blank indorsement, the orders inside the parcel were a payment for US dollars."); *see also id.* ¶¶ 29, 74. In addition to being based on conspiracy theories universally rejected by the federal courts, the underlying premise that Wings can obtain Federal Reserve Notes pursuant to 12 U.S.C. § 412 is false. Section 412 requires that an application for Federal Reserve Notes be made by a "Federal Reserve bank." Clearly, Wings is not a "Federal Reserve bank," and thus Section 412 is inapplicable. *See, e.g.*, 12 U.S.C. § 225 (requiring federal reserve banks to "include in its title the name of the city in which it is situated, as 'Federal Reserve Bank of Chicago'").

took his "money," i.e., the promissory note, deposited it into its own account without his permission, listed it as an "asset" on its ledger entries, and then essentially lent his own money back to him. He contends that Bank One did not actually have the funds available to lend to him, but instead "created" the money through its bookkeeping procedures.

*Id.* *10–11.

The court dismissed the entire case, noting that the plaintiff provided "no authority for this patently ludicrous argument" and that "[s]imilar arguments have been rejected by federal courts across the country." *Id.* at *11. The court further explained, "While a promissory note may be a negotiable instrument, the note itself is not 'money.' It is nothing more than the acknowledgment of a debt and a promise to repay the debt at some date in the future." *Id.* at *13-14. *See also McLaughlin*, 726 F. Supp. 2d at 214 (rejecting plaintiff's claims under the "Redemptionist" theory, the "vapor money" theory; and the "unlawful money" theory, and noting "all three of these theories have been universally and emphatically rejected by numerous federal courts for at least the last 25 years"); *Harp v. Police*, No. 23-2577, 2023 U.S. Dist. LEXIS 139418 (E.D. Pa. Aug. 10, 2023) ("[O]ther courts nationwide have rejected such 'frivolous' attempts to satisfy a debt through a fictitious 'bill of exchange.'"); *Rabbe v. Wells Fargo Home Mortg., Inc.*, No. 8:17-CV-131, 2017 U.S. Dist. LEXIS 88910, at *4 (D. Neb. June 9, 2017) ( "The plaintiffs' particular permutation is commonly referred to as a 'vapor money' or an 'unlawful money' claim, and has been uniformly rejected by every court to consider it."); *Hennis v. Trustmark Bank*, 2010 U.S. Dist. LEXIS 45759, *16 (S.D. Miss. May 10, 2010) ("From coast to coast, claims that debts have been paid under the redemption theory by the plaintiffs' issuance of 'bills of exchange' have been dismissed as frivolous.").

Not only have claims brought under these theories been resoundingly rejected by federal courts, but their proponents have been prosecuted for criminal offenses. *See, e.g., United States v. Getzschman*, 81 Fed. Appx. 619, 620 (8th Cir. 2003) (affirming defendants' convictions for various crimes including conspiracy to make and pass false or fictitious financial instruments based upon their attempts to use money orders and sight drafts drawn on the Department of Treasury to pay for the goods); *United States v. Allison*, 264 Fed. Appx. 450, 451 (5th Cir. 2008) (upholding defendant's conviction for corruptly interfering with the administration of the Internal Revenue Code and willfully making and subscribing false documents based on defendant's act of mailing "municipal employees various papers purporting to be 'bills of exchange' and, when he received no response, … report[ing] to the IRS transfers of money or debt in the accounts maintained by the treasury.").

Plaintiff must be sanctioned for failing to conduct a reasonable inquiry into the merits of his case and initiating this lawsuit in bad faith. *See Coonts*, 316 F.3d at 753. Plaintiff could have readily determined the frivolous nature of his Complaint by conducting a brief review of the statutes in question and the numerous cases rejecting similar claims. Plaintiff has either failed to conduct such a review or willfully chose to ignore the voluminous case law refuting his legal claims. Importantly, pro se parties—such as Plaintiff—have been sanctioned under Rule 11 for advancing related theories. *See Thiel v. First Fed. Sav. & Loan Asso.*, 646 F. Supp. 592, 598 (N.D. Ind. 1986) (ordering pro se plaintiffs to pay $3,600, plus defendant's attorney's fees and costs, as sanction for frivolous lawsuit); *see also* Fed. R. Civ. P. 11, Advisory Committee cmt, 1983 Amend. ("The new

language stresses the need for some prefiling inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances. This standard is more stringent than the original good-faith formula and thus it is expected that a greater range of circumstances will trigger its violation." (citation omitted)). Because Plaintiff's claims are clearly frivolous and based on a nonsensical conspiracy theory, the Court should grant Wings' Motion for Sanctions.

III.  **Sanctions Are Appropriate Against Plaintiff Because Every Count of The Complaint Violates Rule 11.**

Looking beyond the frivolous theory upon which Plaintiff's Complaint is based, each of the individual claims also violate Rule 11(b), because they fail to set forth any cognizable claims for relief. The following sections discuss Plaintiff's Complaint claim-by-claim and establish that the claims are not supported by existing law or any reasonable argument for the extension or modification of existing law.

A.  **Count 1: Breach of Contract**.

Plaintiff's breach of contract claim alleges that he submitted a promissory note to Wings "in order to perform on the mortgage" and that Wings ignored that "tender." Compl., ¶¶ 60–61. This claim is without any legal merit because Plaintiff does not identify what provision(s) in any of his contracts were breached or what language within those contracts would require Wings to accept this alleged "promissory note" as the payment he is required to make under the terms of both loans.

Courts have rejected similar claims on numerous occasions. For example, in *Harp v. Police*, 2023 U.S. Dist. LEXIS 139418, *2 (E.D. Penn. Aug. 10, 2023), the plaintiff

attempted to pay her credit card bill by submitting to the defendant credit union a "bill of exchange" that "was fashioned from the Enclosure Form sent with her credit card statement, on which [the plaintiff] indicated that the 'Amount Enclosed' was $5,480.46, with notations stating 'ACCEPTED,' 'PAY TO BEARER,' 'PAY WITH INTEREST,' and 'PAY ON DEMAND.'" Along with the "bill of exchange", the plaintiff sent a letter claiming, "I have performed my contractual obligations by remitting payment via bill of exchange as collateral security and legal tender." *Id.* at *2-3. When the credit union refused to accept the "bill of exchange" as legal tender, the plaintiff sued the credit union asserting, among other claims, breach of contract. *Id.* at *4.

The court dismissed the breach of contract claim, noting that the terms of the plaintiff's account agreement gave the credit union discretion to refuse any financial instrument presented for deposit. *Id.* at *8. Moreover, the court found that, even if the terms of the agreement did not give the credit union such discretion, the "bill of exchange" presented by the plaintiff clearly was not valid legal tender. *Id.* The court explained:

> In other circumstances, a bill of exchange is certainly a valid financial instrument, often used to keep track of debt in international trade. … But here, rather than a legally enforceable document noting an existing debt that PFFCU owed to her, Harp simply handwrote an array of financial buzzwords on her credit card statement and tried to pass this off to PFFCU as valid legal tender for her credit card debt. This is not a valid financial instrument, and other courts nationwide have rejected such "frivolous" attempts to satisfy a debt through a fictitious "bill of exchange."

*Id.* at *8-9.

The provisions of the Mortgage, HELOC, and related loan documents do not contain any provisions requiring Wings to accept an alleged "promissory note" or "bill of

exchange" in lieu of payment. Instead, the Mortgage and underlying note require Plaintiff to repay the loan in the form of cash, check or money order and make payments "in U.S. currency." *See* ECF No. 10-2, at 1; ECF No. 10-1, at 2–3. Nowhere in the Mortgage, HELOC, or related loan documents does it state that Wings is required to accept a fictitious "promissory note" or "bill of exchange" in lieu of payment. Similar to the "bill of exchange" in *Harp*, Plaintiff's "promissory note", "bills of exchange", and "special indorsements" are not valid financial instruments.

Because the entire theory underlying Plaintiff's breach of contract claim is frivolous and unsupported by both the law and the factual allegations, sanctions are appropriate.

**B.    Count 2: Breach of Fiduciary Duty**.

Plaintiff's breach of fiduciary duty claim is likewise frivolous. Plaintiff alleges that Wings "has a fiduciary duty to [his] financial success," "is paid to ensure the law is correctly applied in respect to" him, and that Wings never mentioned to him "the benefits of special indorsements," claiming that "[t]his breach of fiduciary duty has caused years of anxiety over the extraneous paying of bills that is entirely unnecessary." Compl. ¶¶ 69–70, 78, 80.

This claim is meritless because Wings does not owe Plaintiff fiduciary duties. *See Roers v. Countrywide Home Loans, Inc.*, 728 F.3d 832, 838 (8th Cir. 2013) ("The general rule in Minnesota is that lenders bear no fiduciary duty to borrowers." (quotation omitted)); *Impulse Trading v. Norwest Bank Minn., N.A.*, 870 F. Supp. 954, 961 (D. Minn. 1994) ("The relationship between a bank and its customer is one of debtor and creditor, with the customer as the creditor and the bank the debtor. This relationship is not one of agent and

principle and therefore does not give rise to a fiduciary relationship." (citation omitted)). Plaintiff's relationship with Wings is contractual, not fiduciary.

Plaintiff also fails to identify any actions that would constitute a breach of fiduciary duty, if such a duty existed. Plaintiff's breach of fiduciary duty claim appears to be based on his theory that he can do a "special indorsement" on certain documents and somehow that constitutes payment of Plaintiff's loans with Wings. Plaintiff seems to assert that Wings should have advised him regarding his ability to do a "special indorsement." *See* Compl. ¶¶ 15–19, 45, 49, 51–54, 74–80. As Plaintiff's theory regarding a "special indorsement" is meritless, it cannot support a claim for breach of fiduciary duty.

Plaintiff's claim for breach of fiduciary duty is not warranted under the law, and thus sanctions are appropriate.

### C.     Count 3: 12 U.S.C. § 504 (Civil Money Penalty – Federal Reserve Act).

Plaintiff's claim for civil penalties under 12 U.S.C. § 504 is also frivolous. Section 504 provides civil penalties for any "member bank" which engages in certain conduct. A "member bank" is "any national bank, State bank, or bank or trust company which has become a member of one of the Federal reserve banks." 12 U.S.C. § 221. Wings is not a "national bank, State bank, or bank or trust company." It is a state-chartered credit union organized pursuant to Chapter 52 of Minnesota Statutes, and thus cannot be "a member of one of the Federal reserve banks." *See id.*; *see also* Minn. Stat. § 52.001 (defining credit union as "a cooperative, not-for-profit financial institution formed and operating under this chapter"); Minn. Stat. § 52.01 (providing the manner of organization for a Minnesota credit union).

Plaintiff's claim is also meritless because section 504 does not provide a private right of action. *See* 12 U.S.C. § 504 (e) (providing that penalties shall be assess and collected be either the Comptroller of the Currency or the Federal Reserve Board); *Harp*, 2023 U.S. Dist. LEXIS 139418, at *12  (holding that "the imposition of civil penalties under [12 U.S.C. § 504] is carried out by federal officials, and private individuals do not have a private right of action to enforce [12 U.S.C. § 504] of the Federal Reserve Act"); *see also Ritchie*, 2024 U.S. Dist. LEXIS 12159, at *6 ( "Plaintiff has not stated a claim for relief under the Federal Reserve Act because this statutory scheme does not contain a private right of action."). Plaintiff is not a federal official with the authority to impose civil penalties under section 504.

Finally, Plaintiff's claim is also frivolous because Plaintiff failed to plead facts that support a violation of Section 504. Plaintiff alleges that Section 504 "is involved because WINGS never attempted to work with Preston Byron Knapp's performance." Even if true, such an allegation does not amount to a violation of the Federal Reserve Act. Section 504 provides for several different tiers of violations, subject to different penalties. *See* 12 U.S.C. § 504. Subsection (a) provides that, "Any member bank which . . . violates any provision of section 371c, 371c–1, 375, 375a, 375b, 376, or 503 of this title, or any regulation issued pursuant thereto, shall forfeit and pay a civil penalty of not more than $5,000 for each day during which such violation continues." *Id.*, (a). However, Sections 371c and 371c-1 relate to affiliate transactions, Section 375 is blank (reserved for future use), Sections 375a and 375b relate to loans and extension of credit to executive officers, Section 376 relates to the interest rates paid to directors, employees, and related

individuals, and Section 503 imposes liability for directors and officers for violation of sections 375, 375a, 375b, and 376. None of the allegations in the Complaint bear any logical connection with those sections of the Act.

Subsection (b) provides liability for committing a violation described in subsection (a), recklessly engaging "in an unsafe or unsound practice in conducting the affairs of such member bank" or breaching a fiduciary duty, if such violation, practice, or breach is: "(A) is part of a pattern of misconduct; (B) causes or is likely to cause more than a minimal loss to such member bank; or (C) results in pecuniary gain or other benefit to such party." *Id.*, (b). Plaintiff does not allege a violation of subsection (a) or that Wings engaged in an unsafe or unsound practice, and as addressed above, Wings neither owes Plaintiff fiduciary duties nor breached such non-existent duties to Plaintiff. Subsection (c) provides similar liability where such conduct "knowingly or recklessly causes a substantial loss to such credit union or a substantial pecuniary gain or other benefit to such party by reason of such violation, practice, or breach." *Id.*, (c). Plaintiff's Complaint fails to identify any actions by Wings that would lead to imposition of a penalty under section 504, even if it applied, and Plaintiff's claim is unsupported by the law.

Because Section 504 does not apply to Wings, Plaintiff cannot enforce Section 504, and Plaintiff's Complaint fails to allege facts that would support a violation of Section 504, Plaintiff's claim is frivolous, and sanctions are warranted.

**D.      Counts 4, 5, and 6: 18 U.S.C. § 1956 (Laundering of Monetary Instruments), 18 U.S.C. § 2314 (Transportation of Stolen Securities), and 18 U.S.C. § 1348 (Securities and Commodities Fraud).**

Plaintiff's claims under 18 U.S.C. §§ 1348, 1956, and 2314 are also unsupported by the law because they are all based on alleged violations of criminal statutes. Count 4 is based on 18 U.S.C. § 1956 (Laundering of Monetary Instruments), Count 5 is based on 18 U.S.C. § 2314 (Transportation of Stolen Securities), and Count 6 is based on 18 U.S.C. § 1348 (Securities and Commodities Fraud). As a private citizen, Plaintiff does not have standing to bring these claims. *See Kunzer v. Magill*, 667 F. Supp. 2d 1058, 1062 (D. Minn. 2009) ("A private citizen does not have standing either to enforce federal criminal statutes or to have such statutes enforced."). Only the United States Attorney has power to enforce these laws. *See* 28 U.S.C. § 547 ("Except as otherwise provided by law, each United States attorney, within his district, shall…prosecute for all offenses against the United States.").

These claims are also unsupported by the law because there is no private right of action under these sections of Title 18. Numerous courts have found there is no private right of action under Section 1956. *See Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 668 (S.D.N.Y. 2000) (finding that § 1956 does not expressly provide a private right of action); *see also Selmon-Austin El v. Wells Fargo Bank*, No. 2:19-cv-02538-JTF-cgc, 2020 U.S. Dist. LEXIS 61713, at *10 (W.D. Tenn. Mar. 12, 2020) (citing a number of cases holding Section 1956 does not provide a private right of action); *Barrett v. City of Allentown*, 152 F.R.D. 50, 56 (E.D. Pa. 1993) (holding there is no civil action available under 18 U.S.C. § 1956). Likewise, there is no language within Section 2314 that provides a private right of action, *see* 18 U.S.C. § 2314, and courts in other districts have found no

private right of action exists under Section 2314, *see Klein v. Sutro Bros. & Co.*, No. 69 Civ. 3693., 1970 U.S. Dist. LEXIS 13072, at *4 (S.D.N.Y. Jan. 26, 1970); *Carroll v. United States Equities Corp.*, No. 1:18-CV-667, 2020 U.S. Dist. LEXIS 258605, at *49 (N.D.N.Y. Nov. 30, 2020) (holding there is no independent civil claim under 18 U.S.C. § 2314). Additionally, nothing in the language of Section 1348 implies a private right of action, *see* 18 U.S.C. § 1348, and courts have held there is no private right of action, *see, e.g.*, *Barringer v. Ohio*, No. 3:23 CV 1530, 2023 U.S. Dist. LEXIS 216430, at *3 (N.D. Ohio Dec. 5, 2023); *Francis v. Fannie Mae*, No. 20-CV-5863(EK)(LB), 2021 U.S. Dist. LEXIS 48595, at *5 (E.D.N.Y. Mar. 15, 2021).

Counts 4, 5, and 6 of the Complaint are unsupported by the law and sanctions are appropriate against Plaintiff for asserting these counts as well.

**E.    Counts 7, 8, 9, 10, and 11: 18 U.S.C. § 1581 (Peonage), 18 U.S.C. § 1583 (Enticement into Slavery); 18 U.S.C. § 1584 (Sale into Involuntary Servitude); 18 U.S.C. § 1589 (Forced Labor); 18 U.S.C. § 1593A (Benefitting Financially from Peonage, Slavery, and Trafficking in Persons).**

Plaintiff's remaining claims are all based on Chapter 77 of Title 18 of the US Code, which deals with the federal crimes of peonage, slavery, and trafficking in persons. None of the facts in Plaintiff's Complaint bear any logical connection to these claims and sanctions are also appropriate against Plaintiff for these counts.

Plaintiff's Count 7 asserts a violation of 18 U.S.C. § 1581 (Peonage), Count 8 asserts a violation of 18 U.S.C. § 1583 (Enticement into Slavery); Count 9 asserts a violation of 18 U.S.C. § 1584 (Sale into Involuntary Servitude); Count 10 asserts a violation of 18

U.S.C. § 1589 (Forced Labor); and Count 11 asserts a violation of 18 U.S.C. § 1593A (Benefitting Financially from Peonage, Slavery, and Trafficking in Persons).

> Peonage is "compulsory service in payment of a debt" and "compulsory service" is the equivalent of "involuntary servitude", which the Supreme Court has defined as "a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process."

*United States v. Farrell*, 563 F.3d 364, 372 (8th Cir. 2009) (quoting *Bailey v. Alabama*, 219 U.S. 219, 242 (1911)) (cleaned up) (noting that threatening to put workers who "run away" in a balikbayan box and ship them back to the Philippines was a threat of physical force).

Section 1583 (Enticement into Slavery) and section 1584 (Sale into Involuntary Servitude) address very similar conditions. "The essence of a holding in involuntary servitude is the exercise of control by one individual over another so that the latter is coerced into laboring for the former." *United States v. Mussry*, 726 F.2d 1448, 1452 (9th Cir. 1984); *see also Saraswat v. Bus. Integra, Inc.*, No. 15-CV-4680 (PKC) (LB), 2019 U.S. Dist. LEXIS 70054, at *17 (E.D.N.Y. Apr. 25, 2019) (explaining that "Civil liability for forced labor under § 1589 requires a finding, by a preponderance of the evidence, that the defendant 'knowingly provide[d] or obtain[ed] the labor or services of a person' by means of: (1) force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) serious harm or threats of serious harm to that person or another person; (3) the abuse or threatened abuse of law or legal process; or (4) any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical

restraint"); *Aragon v. Ku*, 277 F. Supp. 3d 1055, 1069 (D. Minn. 2017) (explaining that the purpose of Section 1589 "is to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominately women and children, to ensure just and effective punishment of traffickers").

Here, Plaintiff's allegations bear no connection to the conduct prohibited by Sections 1581, 1583, 1584, 1589, or 1593A.[3] Plaintiff alleges that these statutes apply because he has to work in order to pay back the loans he obtained from Wings and feared losing his home if he failed to make payments on the loans. *See* Compl. ¶¶ 103, 108–09, 112, 119, 122, 125, 130; *see also id.* ¶ 117 (acknowledging that the transaction was "not legally theft"). Such allegations are wholly inadequate to state claims under any of the alleged statutes. As the Ninth Circuit has explained:

> We recognize that economic necessity may force persons to accept jobs that they would prefer not to perform or to work for wages they would prefer not to work for. Such persons may feel coerced into laboring at those jobs. That coercion, however, results from societal conditions and not from the employer's conduct. Only improper or wrongful conduct on the part of an employer subjects him to prosecution. To illustrate this point further, an employer who truthfully informs an individual that there are no other available jobs in the market, merely provides an opportunity for a person to work for low wages, or simply takes advantage of circumstances created by others is not guilty of an offense. An employer who has not engaged in improper or wrongful conduct has not violated the law.

*Mussry*, 726 F.2d at 1453; *see also Heart of Atlanta Motel v. United States*, 379 U.S. 241, 244, 261 (1964) (rejecting the contention that "by requiring appellant to rent available

---

[3] Liability under Section 1593A requires receiving a benefit "from participation in a venture which has engaged in any act in violation of this chapter, knowing or in reckless disregard of the fact that the venture has engaged in such violation." 18 U.S.C. § 1593A. Because the other claims are frivolous, so too is Count 11 based on Section 1593A.

rooms to Negroes against its will, Congress is subjecting it to involuntary servitude"). Rather, "courts assessing claims concerning § 1583's prohibition against slavery and § 1584's similar prohibition against involuntary servitude make clear that circumstances running afoul of those provisions are typically 'limited to labor camps, isolated religious sects, or forced confinement.'" *Tegete v. Maryknoll Sisters of Saint Dominic, Inc.*, No. 20-CV-5023 (CS), 2023 U.S. Dist. LEXIS 43034, at *38 (S.D.N.Y. Mar. 14, 2023) (quoting *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 540 (3d Cir. 2012)).

There is simply no question that Plaintiff—who had sufficient assets and income to obtain a loan of over $1 million to purchase his house—is not being subjected to peonage, slavery, involuntary servitude, or forced labor, simply because Wings is requiring him to pay back his loans. Plaintiff's Chapter 77 claims are unsupported by either law or fact and so utterly absurd on their face that they can only have been brought to harass Wings. Plaintiff should also be sanctioned for bringing claims 7–11 based on Chapter 77 of Section 18.

## CONCLUSION

For the foregoing reasons, Wings respectfully requests that the Court grant its Motion for Sanctions, impose a sanction against Plaintiff sufficient to deter future misconduct, and award Wings' reasonable attorney fees, costs, disbursements, and other expenses incurred in having to defend this frivolous action.

**FOLEY & MANSFIELD, PLLP**

Dated:  April 18, 2024      By:    *s/ Tessa Mansfield Hirte*
_____
                                            Lisa M. Lamm Bachman (#264313)
                                            Tessa Mansfield Hirte (#0396591)
                                            Paul W. Magyar (#0399108)
                                            250 Marquette Avenue, Suite 540
                                            Minneapolis, MN 55401
                                            (612) 338-8788
                                            Email:  llammbachman@foleymansfield.com
                                                            tmansfield@foleymansfield.com
                                                            pmagyar@foleymansfield.com

                                            Attorneys for Defendant