# UNITED STATES DISTRICT COURT
for the
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| PRESTON BYRON KNAPP | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| vs. | ) | Cause No: 0:24-cv-00434-DWF-ECW |
| | ) | |
| | ) | |
| WINGS CREDIT UNION; | ) | |
| AKA WINGS FINANCIAL CREDIT UNION. | ) | |
| | ) | |
| *Defendants.* | ) | |

### PLAINTIFF'S AMENDED COMPLAINT FOR DAMAGES AND JURY DEMAND

COMES NOW, person PRESTON BYRON KNAPP, presented by man Preston Byron Knapp, allege and state as follows: (**Please note that spelling of each name is important and will always be as above throughout this complaint for clarity in the court.**)

### I.     Introduction

1. The plaintiff's cause of action is brought before this Honorable Court for actual, statutory, and punitive damages, against Defendant WINGS CREDIT UNION AKA WINGS FINANCIAL CREDIT UNION (hereafter, collectively "WINGS"), for peonage by subjecting plaintiff to being held in debt servitude due to fraud, pursuant to 42 U.S.C. § 1994, *et al.*, under the threat of foreclosure.

### II.     JURISDICTION AND VENUE

2. Through the power of naturalization, found in 8 U.S.C. § 1101(a)(23), Preston Byron Knapp confers the nationality of the State called "STATE OF MINNESOTA" on PRESTON BYRON KNAPP, after birth, by any means whatsoever. This satisfies the jurisdictional requirements of the court.

3. Preston Byron Knapp confers that PRESTON BYRON KNAPP will be on a general appearance.

1

Preston Byron Knapp will be speaking on behalf of PRESTON BYRON KNAPP because PRESTON BYRON KNAPP is incapable of speaking or writing.

4. WINGS is a person doing business in "STATE OF MINNESOTA," through the power of naturalization, and is within the jurisdiction of this Honorable Federal Court.

### III.     PARTIES

5. Plaintiff is a person residing in Hennepin County, Minnesota.

6. Plaintiff resided in Hennepin County, Minnesota, at all times relevant and all actions related to Plaintiff's stated herein took place in and around Dakota County, Minnesota.

7. Defendant WINGS is listed by the Minnesota Secretary of State as an "Assumed Name" Business Type.  Defendant's Principal Place of Business Address is 14985 Glazier Avenue, Apple Valley, Minnesota 55124-7484.  Defendant conducts business in the State of Minnesota. WINGS has a filing date listed as 7/18/2023.

8. Defendant acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

9. Defendant's agents, employees, officers, members, directors, and representatives were working within the course and scope of their employment when taking the actions stated herein.

### IV.     GENERAL FACTUAL ALLEGATIONS

10. PRESTON BYRON KNAPP has a loan #2100036119 with WINGS.

11. PRESTON BYRON KNAPP also has HELOC #3205925609 with WINGS.

12. Preston Byron Knapp gave permission to WINGS to access and use the credit of PRESTON BYRON KNAPP.

13. For many years, these accounts were improperly performed on by Preston Byron Knapp on behalf of PRESTON BYRON KNAPP.

14. Improper performance was by submitting extraneous negotiable instruments called Federal Reserve Notes.

15. Proper performance would have been to indorse the original collateral securities under special negotiation, prior to them being exchanged for Federal Reserve Notes.

16. Preston Byron Knapp failed to do a qualified/special indorsement on the original collateral securities.

17. Had Preston Byron Knapp known, Preston Byron Knapp would have done qualified/special indorsements on these collateral securities all the way from the beginning.

18. Preston Byron Knapp never intended to do ANY blank indorsements on behalf of PRESTON BYRON KNAPP.

19. Proper performance is done primarily through clear orders and qualified/special indorsements.

20. Improper performance is done via blank indorsements and lack of orders.

21. Proper performance balances the accounting.

22. Improper performance unbalances the accounting.

23. There were promissory notes made on these loans.

24. A promissory note is an unconditional promise to pay.

25. The promissory notes are negotiable instruments.

26. "Promissory note" and "note" mean the same thing.

27. Federal Reserve Notes are promissory notes.

28. Federal Reserve Notes are negotiable instruments.

29. All promissory notes are collateral securities in accordance with 12 U.S.C. § 412.

30. Each month there was a billing statement generated on the above accounts.

31. A "billing statement" is an unconditional order to pay.

32. A "billing statement" or "bill" or any similar language, is another term to describe a "bill of exchange".
33. An unconditional order to pay is a bill of exchange.
34. A bill of exchange is a negotiable instrument.
35. Bills of exchange are collateral securities in accordance with 12 U.S.C. § 412.
36. All promissory notes produced by PRESTON BYRON KNAPP are under the purview of 18 U.S.C. § 8.
37. All bills of exchange sent to PRESTON BYRON KNAPP are under the purview of 18 U.S.C. § 8.
38. The Federal Reserve Bank is the custodian to pay on behalf of obligations or other securities of the United States (18 U.S.C. § 8).
39. Attorney-in-fact Brandon Joe Williams sent orders that were received by WINGS.
40. Parcel was signed for on 1/11/24 at 8:43 AM.
41. Parcel was signed by a "J Harrett" or "J Harnett" or "J Harett" or very similar spelling of name (spelling is difficult to see on the PS 3811 - I will supply a color copy in discovery).
42. Parcel was signed for by hand using a blue ink pen.
43. Inside this parcel was a Limited Power of Attorney ("LPOA") regarding agent Brandon Joe Williams.
44. Inside this parcel contained a full and completed packet documenting the fee simple absolute title documentation on this property.
45. Inside this parcel contained a series of orders that described how all previous blank indorsements on all negotiable instruments were being converted to qualified/special indorsements due to fraud.

46. This fraud was due to a complete lack of disclosure of the terms of the loan as well as the collateralization of the original promissory note.

47. The orders inside this parcel constitute unconditional tender of payment in accordance with UCC 3-603.

48. The term "US dollars" includes Federal Reserve Notes.

49. Due to the original application having already been swapped for Federal Reserve Notes after the application was indorsed with a blank indorsement, the orders inside the parcel were a payment for US dollars.

50. An unconditional order to pay is a bill of exchange. The orders sent by Brandon Joe Williams are an unconditional order to pay on this account.

51. Inside this LPOA contained a special indorsement for all past, present and future negotiable instruments of:

**WITHOUT RECOURSE**
Pay to the Order of:
PRESTON BYRON KNAPP

By: /s/ *Preston Byron Knapp*, agent

—

Preston Byron Knapp, Representative

And

**WITHOUT RECOURSE**
Pay to the Order of:
MICHELLE NICHOLE KNAPP

By: /s/ *Michelle Nichole Knapp*, agent

---------

Michelle Nichole Knapp, Representative

5

52. PRESTON BYRON KNAPP is now the person entitled to enforce all negotiable instruments on all the above accounts.

53. PRESTON BYRON KNAPP is now the holder in due course regarding all negotiable instruments on all the above accounts.

54. Any previous arbitration clauses or agreements are hereby void due to the extreme alleged felonies and fraud associated with this case. Also, any real property involved in this case is no longer collateral on any loans due to the original collateral securities (notes) being the only collateral needed to secure this loan.

## V. COUNT ONE – BREACH OF CONTRACT:

55. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

56. Preston Byron Knapp was attempting to perform on the accounts.

57. The definition of "payment" is: "The fulfillment of a promise, or the performance of an agreement".

58. One definition for "tender" is: "The offer of performance, not performance itself, and, when unjustifiably refused, places other party in default and permits party making tender to exercise remedies for breach of contract.".

59. The above definition is in accord with UCC 3-603(b).

60. Preston Byron Knapp previously submitted another entire promissory note in order to perform on the mortgage.

61. The tender of Preston Byron Knapp was ignored.

62. This promissory note was retained by WINGS.

63. Had someone spoken to Preston Byron Knapp about his options, he would have done a qualified/special indorsement on any instruments to properly perform.

64. Preston Byron Knapp desperately wanted to perform. This is shown by his attempts to perform.

65. This situation being ignored is evidence of dishonor.

66. This dishonor caused anxiety and depression due to Preston Byron Knapp not getting the information needed to properly move forward and clarify or complete his attempts to perform.

## VI.  COUNT TWO – BREACH OF FIDUCIARY DUTIES:

67. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

68. WINGS is not a "lender" after rescission of the blank indorsement was completed and the qualified/special indorsement replaced it. Any statements that a "lender" does not have a fiduciary responsibility are irrelevant.

69. PRESTON BYRON KNAPP is the beneficiary of WINGS.

70. WINGS has a fiduciary duty to the financial success of PRESTON BYRON KNAPP.

71. WINGS is paid to ensure the law is correctly applied in respect to beneficiary PRESTON BYRON KNAPP.

72. WINGS has an obligation and desire to ensure that UCC Article 3 is properly followed.

73. WINGS has an obligation and desire to ensure that the Emergency Banking Act of 1933 is followed.

74. Once presented with orders or conditional acceptances above, WINGS never attempted to clarify or perform for Preston Byron Knapp or PRESTON BYRON KNAPP.

75. WINGS follows 12 U.S.C. § 412.

76. WINGS has had access to Federal Reserve Window services since 9/26/1994, according to the Federal Reserve Master Account and Services Database.

77. WINGS acknowledges that it would be in the best interest of their beneficiaries to do special indorsements on negotiable instruments.

78. WINGS acknowledges that, if clients knew how to do a qualified/special indorsement, a vast majority would do it.

79. WINGS never mentioned to either Preston Byron Knapp or PRESTON BYRON KNAPP about the benefits of qualified/special indorsements.

80. This harmed PRESTON BYRON KNAPP by now having an imbalanced account and having to work to acquire extraneous and entirely irrelevant Federal Reserve Notes, then send them in to WINGS to "pay" the accounts.

81. This breach of fiduciary duty has caused years of anxiety over the extraneous paying of bills that is entirely unnecessary.

## VII. COUNT THREE – MONEY HAD AND RECEIVED:

82. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

83. Plaintiff became the person entitled to enforce these instruments once negotiation was rescinded and clarified.

84. Plaintiff became the holder in due course of these instruments once negotiation was rescinded and clarified.

85. Illegal possession and transfer of above negotiable instruments are retained currently with defendant WINGS.

86. Unknown negotiation via a blank indorsement allowed WINGS to take possession of all collateral securities on these accounts.

87. This transportation should have been done under special negotiation and should have been temporary until the application for notes via 12 U.S.C. § 412 was completed at the Federal Reserve Window. This would have allowed for Preston Byron Knapp to benefit from the funds he created. Instead, those funds were carefully taken under coercion.

88. Each individual credit transaction on these accounts would be a separate charge of this claim.

89. The promissory note that was sent in by Preston Byron Knapp was never returned and also never credited to the account as a payment (purloined).

## VIII.   COUNT FOUR – FRAUD

90. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

91. Plaintiff was never informed as to these instruments being negotiable.

92. Plaintiff was never informed of various optional indorsements in accordance with UCC Article 3.

93. Plaintiff has a responsibility to avail himself of his optional indorsements, but WINGS could have spent a very short period of time to educate plaintiff about indorsements as a part of their fiduciary duties.

94. Preston Byron Knapp has clarified and ordered all current and future negotiation while rescinding all previous blank negotiation under fraud.

95. Fraud is due to complete failure to disclose the terms and options of signing/indorsing above collateral securities.

96. This damaged plaintiff materially due to valuable instruments being purloined and not available for plaintiff.

97. Due to Preston Byron Knapp's signature being the birth of value for all the above negotiable instruments, Preston Byron Knapp and PRESTON BYRON KNAPP are the secured parties for all transactions in this deal.

98. Each individual credit transaction on these accounts would be a separate charge of this claim.

## IX.   COUNT FIVE – 42 U.S.C. § 1994 (PEONAGE):

99. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

100. Plaintiff was forced to work and perform under this contract as "debt," when the debt was only existing due to a failure to use a qualified/special indorsement on the original note.

101. Plaintiff had to work or find entirely irrelevant negotiable instruments in order to falsely satisfy "performance" on this account.

102. WINGS made it appear that plaintiff was in debt by failing to help the plaintiff do a qualified/special indorsement.

103. WINGS has threatened the plaintiff with foreclosure if plaintiff failed to "perform" within the false contract of needing to tender extraneous Federal Reserve Notes.

104. Due to a failure to do a qualified/special indorsement (which could have easily been done), plaintiff was enticed into having to pay each month using irrelevant and extraneous negotiable instruments called Federal Reserve Notes.

105. Plaintiff was intimidated with fear of losing his home to perform in an absolutely unnecessary way. This is peonage.

## X. COUNT SIX – UNLAWFUL CONVERSION:

106. Plaintiff got absolutely no equal consideration in exchange for his collateral securities and negotiable instruments beyond the facilitation of security swaps and transfers.

107. WINGS could have informed plaintiff of his option to do a special indorsement rather than a blank indorsement.

108. Due to ease of which WINGS could have helped and informed the plaintiff of a special versus blank indorsement, it is assumed that the intent was to entice the plaintiff into slavery.

109. Due to the financial gain of having the plaintiff do a blank indorsement rather than a special indorsement on the original collateral security, WINGS had financial motive to ensure plaintiff indorsed with a blank indorsement.

110. Intent to have plaintiff sign with a blank indorsement was pre-conceived by WINGS.

111. Intent to have plaintiff do a blank indorsement allowed WINGS to take possession of the collateral securities without it being legally considered theft.

112. While not originally legally theft, that transaction was not equal consideration. Now that the blank indorsement has gone through rescission, these negotiable instruments are now stolen.

113. Due to the terms being so vague (uncommunicated), this can be construed as coercion and fraud.

114. Plaintiff was left in a situation where he felt compelled to provide entirely irrelevant Federal Reserve Notes in order to prevent foreclosure on his property.

115. Plaintiff was forced to provide entirely irrelevant Federal Reserve Notes after his collateral security was purloined via a blank indorsement.

116. WINGS should have been providing a service of swapping the collateral security under special negotiation.

117. Preston Byron Knapp would have been more than happy to pay a small swap fee for the service of exchanging the collateral security at the Federal Reserve Window.

118. Instead, the plaintiff was forced to perform each month unnecessarily under threat of punishment (foreclosure).

### XI. COUNT SEVEN – UNJUST ENRICHMENT:

119. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein with the same force and effect as if the same were set forth at length herein.

120. WINGS benefits from a blank indorsement by being able to take back the property through foreclosure if the plaintiff was unable to supply irrelevant and extraneous Federal Reserve Notes each month.

121. WINGS pretends it is the "lender" by claiming the collateral security, after it is unknowingly released with a blank indorsement.

122. Under special negotiation, PRESTON BYRON KNAPP is actually the lender and Preston Byron Knapp is the borrower. WINGS is just a currency exchange at this point and facilitates Federal Reserve services.

123. WINGS collects substantially more Federal Reserve Notes by carefully failing to inform their beneficiaries of their indorsement options.

124. Due to lack of terms and communications, it is assumed that WINGS intends to entice its beneficiaries into peonage for financial gain by having them fund their own loans.

## XII. DEMANDS FOR RELIEF

125. Full discharge of all above loans in their current state.

126. Full release of interest and liens on the property.

127. Full refund of each individual extraneous payment made on the account using Federal Reserve Notes.

128. $50,000,000.00 (fifty-million) in damages. Payable in Federal Reserve Notes.

129. Optional: HELOC can be transformed into a revolving credit line through a limited power of attorney, allowing the defendant to have the ability to do special indorsements on behalf of both PRESTON BYRON KNAPP and Preston Byron Knapp, thus having the account automatically discharge and have the credit limit of the entire value of the property. Plaintiff will allow defendant to have the interest generated on these securities. Statements will be generated for PRESTON BYRON KNAPP, but not bills of exchange. This optional choice would make paragraph 128 unnecessary.

## XIII. SUMMARY

NOW, THEREFORE, in accordance with the pertinent legal provisions and in the interest of justice,

the Plaintiff respectfully requests this Honorable Court to issue an Order for the award of monetary damages against the Defendant, WINGS. The Plaintiff further seeks any additional and appropriate relief that this Court, in its wisdom, may consider just and equitable given the circumstances at hand.

THE PLAINTIFF ENTERS THIS COURT PROCEEDING WITH A CONSTRUCTIVE INTENT, VESTED IN THE DESIRE TO COLLABORATE WITH THE DEFENDANT TOWARDS A FAIR AND EQUITABLE CONCLUSION.

Dated: June 14th, 2024                                       RESPECTFULLY SUBMITTED,

                                        BY:     /s/ *Preston Byron Knapp*
                                                Preston Byron Knapp
                                                Plaintiff, Pro Se
                                                Pknapp5@gmail.com
                                                (262) 496-8083


## CERTIFICATE OF SERVICE

I hereby certify that on June 14th, 2024, a copy of the foregoing was filed with the Clerk of this Court and all counsel of record by ECF.

/s/ *Preston Byron Knapp, agent*