UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Preston Byron Knapp,<br><br>        Plaintiff,<br><br>vs.<br><br>Wings Credit Union; AKA Wings Financial Credit Union,<br><br>        Defendant. | Case No: 0:24-cv-00434 (DWF/ECW)<br><br>**DEFENDANT WINGS FINANCIAL CREDIT UNION'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND PLAINTIFF'S COMPLAINT FOR DAMAGES** |

Defendant Wings Financial Credit Union ("Wings") respectfully requests this Court deny Plaintiff's Motion for Leave to Amend Plaintiff's Complaint for Damages ("Motion to Amend") because Plaintiff's Motion to Amend violates this Court's April 19, 2024 Order to not file any additional motions and because the motion is futile.[1]

## FACTUAL BACKGROUND

### A. Plaintiff's Complaint

Plaintiff's proposed Amended Complaint contains no material changes to the allegations contained in the first 66 paragraphs of the Complaint. Accordingly, Wings largely re-states its recitation of the facts from its Memorandum of Law in Support of

---

[1] Wings has no intention to violate this Court's April 19, 2024 Order that the parties' not file any additional motions, and it files this Memorandum solely in response to Plaintiff's Motion to Amend which Plaintiff filed in violation of that Order. *See* Doc. No. 29. Wings' position is this Court should deny Plaintiff's Motion to Amend solely on the grounds that it violates this Court's Order, without addressing the merits of Plaintiff's Motion. Out of an abundance of caution, Wings also addresses the substantive deficiencies in Plaintiff's Motion, if the Court chooses to consider Plaintiff's Motion on the merits.

Defendant's Motion to Dismiss herein to provide background to the present motion and for ease of the Court's reference. These facts are based on the allegations in the Complaint, Doc. No. 1, and the Declaration of Tessa Mansfield Hirte ("Hirte Decl.") and attached documents. *See* Doc. No. 10.

Wings is a state-chartered credit union organized pursuant to Chapter 52 of Minnesota Statutes. Plaintiff Preston Byron Knapp and his wife, non-party Michelle Nichole Knapp, have a mortgage loan with Wings (the "Mortgage"), and a HELOC with Wings (the "HELOC"). (Compl. ¶¶ 10–11, Doc. No. 1; Declaration of Tessa Mansfield Hirte ("Hirte Decl."), Ex. 1 (Mortgage); Ex. 2 (Note); Ex. 3 (Revolving Credit Mortgage); Ex. 4 (Open-End Home Equity Credit Agreement and Truth in Lending Disclosure).

Under the terms of Plaintiff's Mortgage and HELOC, he is required to make payments on the loans when due. *See* Hirte Decl. Ex. 2, at 1 ("In return for a loan that I have received, I promise to pay U.S. $1,119,400.00 (this account is called 'Principal'), plus interest, to the order of the Lender."); Hirte Decl. Ex. 1, at 2–3 (agreeing to "pay when due the principal of, and interest on, the debt evidenced by the Note"); Hirte Decl. Ex. 3, at 2 ("Borrower shall promptly pay when due all amounts borrowed under the Credit Agreement, all finance charges and applicable other charges and collection costs as provided in Credit Agreement."); Hirte Decl. Ex. 4, at 1 ("You promise to repay to the Credit Union, or order, all advances made to you under this Plan, plus finance charges, other applicable charges, and costs of voluntary payment protection for which you are responsible for under this Plan."). Plaintiff further agreed to make all payments under the

2

Mortgage "in the form of cash, check or money order" and "in U.S. currency." Hirte Decl. Ex. 2, at 1; Ex. 1, at 3.

In November of 2023, Plaintiff signed a document appointing Brandon Joe Williams ("Williams") as his "attorney-in-fact" and purporting to grant Williams the power to "[p]erform any act necessary to deposit, negotiate, sell or transfer any note, real estate, security, or draft of the United States of America, including U.S. Treasury Securities. This includes any non-US notes, securities, drafts, etc. This includes indorsements, approvals, exchanges, etc." *See* Compl. ¶¶ 39, 43; *see also* Hirte Decl. Ex. 5, Documents Received from Williams January 11, 2024, at 6–17.

In January of 2024, Williams sent "orders" to Wings related to Plaintiff's mortgage loan and HELOC. *See* Compl. ¶¶ 39–40; Hirte Decl. Ex. 5. Plaintiff alleges these "orders" included at "unconditional tender of payment in accordance with UCC 3-603," "a payment for US dollars," and "an unconditional order to pay." *Id.* ¶¶ 47, 49–50. The Complaint also alleges that Plaintiff "submitted another entire promissory note in order to perform on the mortgage." *Id.* ¶ 60. Plaintiff's theory appears to be that, by signing the documents included in the "orders" with a "special indorsement," he converted the documents to "negotiable instruments" which constitute "payment in US dollars" and thereby satisfy Plaintiff's loans with Wings. *See id.* ¶¶ 15, 49, 74–75.

Plaintiff's Complaint asserts state-law claims for breach of contract (Count 1) and breach of fiduciary duties (Count 2), and federal claims for violation of 12 U.S.C. § 504 (Count 3), violation of securities-related criminal statutes (Counts 4–6), and violations of

3

Chapter 77 of Title 18 related to peonage, slavery, and trafficking in persons (Counts 7–11). *See* Compl.

Plaintiff and his wife have also commenced a separate lawsuit in the District of Minnesota against Compass Minnesota, LLC and Daniel Phillip Hollerman, their real estate broker and agent, asserting similar claims to those asserted here. *See Knapp v. Compass Minnesota, LLC*, No. 24-cv-00100-SRN-DTS (D. Minn.).

### B. Relevant Court Orders

Since Wings filed its Motion to Dismiss back in March, two orders have been issued that are relevant to the present motion. First, this Court issued the following text order on April 19, 2024:

> The Court has reviewed the pending motions filed in this case. These include motions filed at Doc. Nos. [7], [13], [16], and [24]. It appears that all motions, with the exception of Defendant's Motion for Sanctions at Doc. No. [24], are fully briefed and ready for the Court's consideration. The Court will permit Plaintiff to file a response to Defendant's motion for sanctions. Once that motion is fully briefed, the Court will take all pending matters under advisement and will rule on the papers, without oral argument. *With the exception of Plaintiff's response brief noted above, the parties shall refrain from filing any additional motions until the Court rules on the motions presently on the docket.*

Doc. No. 29 (emphasis added).

Second, the court recently dismissed Plaintiff's other lawsuit, with prejudice. *See Knapp v. Compass Minn., LLC*, No. 24-cv-00100 (SRN-DTS), 2024 U.S. Dist. LEXIS 98771, at *30 (D. Minn. June 4, 2024). In a detailed and well-reasoned opinion, Judge

4

Susan Richard Nelson rejected similar claims brought by Plaintiff and his wife against their real estate broker and agent, dismissing those claims with prejudice. *See id.*

### C. Plaintiff's Proposed Amended Complaint

Plaintiff's proposed Amended Complaint makes the following changes to Plaintiff's Complaint:

1) Changes the term "special indorsement" to "qualified/special indorsement." *See* Doc. No. 31-1, ¶¶ 16–17, 19, 63, 78–79, 100, 102, and 104.

2) Alters the language used in the incorporation by reference paragraphs at the beginning of each count. *See, e.g.*, Doc. No. 31-1, ¶ 67.

3) Adds an allegation to the breach of fiduciary duties claim that Wings "is not a 'lender' after rescission of the blank indorsement was completed and the qualified/special indorsement replaced it. Any statements that a 'lender' does not have a fiduciary responsibility are irrelevant." *See* Doc. No. 31-1, ¶ 68.

4) Removes the initial Count 3, based on 12 U.S.C. § 504.

5) Relabels the initial Count 4, 18 U.S.C. § 1956 (Laundering of Monetary Instruments), and the initial Count 5, 18 U.S.C. § 2314 (Transportation of Stolen Securities), as a claim for money had and received with the same conspiracy-based allegations as before. *Compare* Doc. No. 1, ¶¶ 85–87, 89–92, *with* Doc. No. 31-1, ¶¶ 83–89. The only changes to the prior allegations is to add an allegation that further confirms the conspiracy-based nature of the claim, *see* Doc. No. 31-1, ¶ 87 (asserting that "transportation . . . under special negotiation . . . would have allowed for Preston Byron Knapp to

5

benefit from the funds he created. Instead, those funds were carefully taken under coercion"), and to change the word "felony" to "claim," *see id.*, ¶ 88.

6) Relabels the initial Count 6 based on 18 U.S.C. § 1348 (Securities and Commodities Fraud) as a claim for common law fraud. *Compare* Doc. No. 1, ¶¶ 94–101, *with* Doc. No. 31-1, ¶¶ 91–89. The only change to the allegations is swapping the word "felony" with the word "claim." *See* Doc. No. 31-1, ¶ 98.

7) Relabels the initial Count 7, based on 18 U.S.C. § 1581 (Peonage), as a claim based on 42 U.S.C. § 1994 (Peonage), incorporating two allegations under the initial Count 8, based on 18 U.S.C. § 1583 (Enticement into Slavery). *Compare* Doc. No. 1, ¶¶ 103–06, 108–09, *with* Doc. No. 31-1, ¶¶ 100–05. The only change to the allegations is swapping the word "(slavery)" with "This is peonage." *See* Doc. No. 31-1, ¶ 105.

8) Relabels the initial Count 8, based on 18 U.S.C. § 1583 (Enticement into Slavery), the initial Count 9, based on 18 U.S.C. § 1584 (Sale into Involuntary Servitude), and the initial Count 10, based on 18 U.S.C. § 1589 (Forced Labor), as a claim for unlawful conversion. *Compare* Doc. No. 1, ¶¶ 110–12, 114–19, 122–25, *with* Doc. No. 31-1, ¶¶ 106–18. The only change to the allegations is in paragraph 112, which now alleges that: "While not <u>originally</u> legally theft, that transaction was not equal consideration. <u>Now that the blank indorsement has gone through rescission, these negotiable</u>

6

instruments are now stolen." *See* Doc. No. 31-1, ¶ 112 (additions are underlined).

9) Relabels the initial Count 11, based on 18 U.S.C. § 1593A (Benefitting Financially from Peonage, Slavery, and Trafficking in Persons), as a claim for unjust enrichment. *Compare* Doc. No. 1, ¶¶ 128–32, *with* Doc. No. 31-1, ¶¶ 120–24. The only changes to the allegations are to add "unknowingly" before "released with a blank indorsement," *compare* Doc. No. 1, ¶ 129, *with* Doc. No. 31-1, ¶ 121, and make to changes to paragraph 124 so it now reads: "Due to lack of terms and communications, it is assumed that WINGS intends to entice its beneficiaries into peonage for financial gain by having them fund their own loans," *compare* Doc. No. 1, ¶ 132, *with* Doc. No. 31-1, ¶ 124 (additions/changes underlined).

For the reasons detailed below, all of these proposed amendments are futile.

## ARGUMENT

**I.     Plaintiff's Motion Violates this Court's April 19, 2024 Order.**

First, and most importantly, two months ago this Court ordered the parties to "refrain from filing any additional motions until the Court rules on the motions presently on the docket." Doc. No. 29; *cf. Clinton v. Jones*, 520 U.S. 681, 706, 117 S. Ct. 1636, 1650 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *Roehrs v. Walstrom*, No. 0:23-cv-01885-SRN-DLM, 2024 U.S. Dist. LEXIS 102, at *12 (D. Minn. Jan. 2, 2024) ("District courts have this inherent authority to temporarily stay cases as part of their power to control the disposition

7

of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." (quotation omitted)). Plaintiff's Motion to Amend violates this Order, without providing any justification for the violation or even an acknowledgement of this Court's prior order. Plaintiff's Motion to Amend should be denied on that basis alone.

## II. Plaintiff's Motion to Amend is Futile.

Moreover, Plaintiff's Motion to Amend is futile because none of the changes in the proposed Amended Complaint fix any of the fatal flaws already articulated in Wing's briefing in support of its Motion to Dismiss and Motion for Sanctions. *See* Doc Nos. 9, 26. Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint should be given freely "when justice so requires." However, "a party is not entitled to amend a complaint without making a showing that such an amendment would be able to save an otherwise meritless claim. A district court thus may deny a motion to amend a complaint when such an amendment would be futile." *Plymouth Cty. v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014) (citation omitted). Here, Plaintiff's motion papers offer no explanation for how the proposed Amended Complaint "would be able to save an otherwise meritless claim," and an examination of the proposed changes fails to reveal any viable legal theory. *See id.* Accordingly, this Court should deny Plaintiff's Motion to Amend as futile.

### 1. Changing Special Indorsement to Qualified/Special Indorsement.

In a number of paragraphs, Plaintiff's proposed Amended Complaint changes the term "special indorsement" to "qualified/special indorsement." *See* Doc. No. 31-1, ¶¶ 16–17, 19, 63, 78–79, 100, 102, and 104. Regardless of how Plaintiff phrases the term, his

underlying theory remains the same—that by sending Wings documents containing his signature and specific language, he can then convert various documents, including the notes underlying the Mortgage and HELOC, an additional "promissory note" he created, and the monthly billing statements sent by Wings (which he claims are "bills of exchange") into "negotiable instruments," which he can then use as payments to satisfy his debts to Wings.[2] *See* Doc. No. 31-1 ¶¶ 23, 30–34. As Wings explained in briefing on its prior motions, Plaintiff's claims are based on a theory often referred to as the "vapor money" theory, and federal courts have widely and universally rejected the theories underlying Plaintiff's allegations for decades. *See* Doc. No. 9 at 5–8; Doc. No. 26 at 5–9.

## 2. Incorporation Paragraphs.

While Plaintiff has changed the language at the beginning of each claim to incorporate the prior allegations by reference, there is no credible argument that such

---

[2] In Plaintiff's version of this conspiracy theory, he appears to assert that Wings exchanged the original loan documents he signed for Federal Reserve Notes (i.e., paper US currency) pursuant to 12 U.S.C. § 412, and that by sending Wings "orders" with his signature and a "special indorsement" those Federal Reserve Notes are then used to payoff his loans. *See* Doc. 31-1, ¶ 15 ("Proper performance would have been to indorse the original collateral securities under special negotiation, prior to them being exchanged for Federal Reserve Notes."); *id.* ¶ 49 ("Due to the original application having already been swapped for Federal Reserve Notes after the application was indorsed with a blank indorsement, the orders inside the parcel were a payment for US dollars."); *see also id.* ¶¶ 29, 75. In addition to being based on conspiracy theories universally rejected by the federal courts, the underlying premise that Wings can obtain Federal Reserve Notes pursuant to 12 U.S.C. § 412 is false. Section 412 requires that an application for Federal Reserve Notes be made by a "Federal Reserve bank." Clearly, Wings is not a "Federal Reserve bank," and thus Section 412 is inapplicable to it. *See, e.g.*, 12 U.S.C. § 225 (requiring federal reserve banks to "include in its title the name of the city in which it is situated, as 'Federal Reserve Bank of Chicago'").

9

language has any relevant legal difference. *Compare* Doc. No. 1, ¶ 55, *with* Doc. No. 31-1, ¶ 55.

### 3. Changes to Count 2 – Breach of Fiduciary Duty.

The new allegation in Count 2, a claim for breach of fiduciary duty, is non-sensical and does not alter the legal analysis in Wing's prior briefing that, as a matter of law, Wings does not owe Plaintiff fiduciary duties.

Plaintiff now asserts that Wings "is not a 'lender' after rescission of the blank indorsement was completed and the qualified/special indorsement replaced it. Any statements that a 'lender' does not have a fiduciary responsibility are irrelevant." *See* Doc. No. 31-1, ¶ 68. First, it is it plain from the legal documents Plaintiff and his wife signed that Wings is, in fact, the lender in the parties' contractual relationship, and Plaintiff cannot alter that legal conclusion in contravention of the plain language of the parties' contracts. *See* Doc. No. 10-2, at 1 ("In return for a loan that I have received, I promise to pay U.S. $1,119,400.00 (this account is called 'Principal'), plus interest, to the order of the Lender."); Doc. No. 10-1, at 2–3 (agreeing to "pay when due the principal of, and interest on, the debt evidenced by the Note"); Doc. No. 10-3, at 2 ("Borrower shall promptly pay when due all amounts borrowed under the Credit Agreement, all finance charges and applicable other charges and collection costs as provided in Credit Agreement."); Doc. No. 10-4, at 1 ("You promise to repay to the Credit Union, or order, all advances made to you under this Plan, plus finance charges, other applicable charges, and costs of voluntary payment protection for which you are responsible for under this Plan."); *see also* doc. No. 31-1, ¶¶ 10–11 (alleging Plaintiff has a loan and HELOC with Wings).

Second, Wings argument in its Motion to Dismiss briefing is that Wings relationship with Plaintiff is contractual, not fiduciary, which is supported by federal interpretations of Minnesota state law. *See Roers v. Countrywide Home Loans, Inc.*, 728 F.3d 832, 838 (8th Cir. 2013) ("The general rule in Minnesota is that lenders bear no fiduciary duty to borrowers." (quotation omitted)); *Impulse Trading v. Norwest Bank Minn., N.A.*, 870 F. Supp. 954, 961 (D. Minn. 1994) ("The relationship between a bank and its customer is one of debtor and creditor, with the customer as the creditor and the bank the debtor. This relationship is not one of agent and principle and therefore does not give rise to a fiduciary relationship." (citation omitted)). Finally, the proposed Amended Complaint, as with the Complaint, fails to identify actions that would constitute a breach of fiduciary duties. *See* Doc. No. 9 at 12.

### 4. Dropping Count 3 – 12 U.S.C. § 504.

While Plaintiff removed his explicit claim for relief under 12 U.S.C. § 504, his proposed Amended Complaint is still based on the meritless conspiracy theory that he can effectively create money from nothing. *See, e.g.*, Doc. No. 31-1, ¶ 87 (alleging that a "transportation . . . under special negotiation . . . would have allowed for Preston Byron Knapp to benefit from the funds he created"). Dropping this particular claim does not, therefore, salvage an otherwise meritless Complaint.

### 5. Adding a Claim for Money Had and Received (Count 3 in the proposed Amended Complaint).

Next, Plaintiff relabels his initial Count 4, 18 U.S.C. § 1956 (Laundering of Monetary Instruments), and initial Count 5, 18 U.S.C. § 2314 (Transportation of Stolen

11

Securities), as a claim for money had and received, while retaining the same conspiracy-based allegations as before. *Compare* Doc. 1, ¶¶ 85–87, 89–92, *with* Doc. 31-1, ¶¶ 83–89. The only changes to the prior allegations is to add an allegation that further confirms the conspiracy-based nature of the claim, *see* Doc. 31-1, ¶ 87 (asserting that "transportation . . . under special negotiation . . . would have allowed for Preston Byron Knapp to benefit from the funds he created. Instead, those funds were carefully taken under coercion"), and to change the word "felony" to "claim," *see id.*, ¶ 88.

As the Minnesota Supreme Court has explained, money had and received is the historical antecedent of an unjust enrichment claim, both of which are equitable claims. *See Herlache v. Rucks*, 990 N.W.2d 443, 450 (Minn. 2023). "The theory of . . . money had and received has salutary and beneficial uses and has been invoked in support of claims based upon failure of consideration, fraud, mistake, and in other situations where it would be morally wrong for one party to enrich himself at the expense of another." *Cady v. Bush*, 166 N.W.2d 358, 361–62 (Minn. 1969). However, the principles of money had and received "should not be invoked merely because a party has made a bad bargain." *Id.* And, "[c]ourts are not warranted in interfering with the contract rights of parties as evidenced by their writings which purport to express their full agreement." *Id.* at 362. Key here, it is not "within the province of equity to rewrite or abrogate contracts to protect parties from consequences which are attendant upon their voluntary abandonment of a contract, the consequences of which abandonment were reasonably foreseeable when the contractual obligations were assumed." *Id.*

Plaintiff's proposed amendment to add a claim for money had and received is futile for two main reasons. First, as is evident from the allegations in the proposed Amended Complaint, it is based on the same baseless conspiracy theory that was recently rejected as to Knapp and his wife in *Compass* and has been resoundingly rejected by the federal courts. *See, e.g.*, *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 214 (D. Conn. 2010) (rejecting plaintiff's claims under the "Redemptionist" theory, the "vapor money" theory; and the "unlawful money" theory, and noting "all three of these theories have been universally and emphatically rejected by numerous federal courts for at least the last 25 years"); *see also* Doc. No. 9 at 5–8; Doc. No. 26 at 5–9. Second, the relationship between Plaintiff and Wings is governed by the contracts he and his wife signed, and there can be no claim for equitable relief where the parties' rights and duties are delineated by contract. *See Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012) (explaining that unjust enrichment "does not apply when there is an enforceable contract that is applicable").

6. **Relabels the Initial Count 6 (18 U.S.C. § 1348 – Securities and Commodities Fraud) as a Common Law Fraud Claim (Count 4 in the proposed Amended Complaint).**

Plaintiffs next change is to relabel his initial Count 6, which is based on 18 U.S.C. § 1348 (Securities and Commodities Fraud), as a claim for common law fraud. *Compare* Doc. 1, ¶¶ 94–101, *with* Doc. 31-1, ¶¶ 91–89. The only change to the allegations is swapping the word "felony" with the word "claim." *See* Doc. 31-1, ¶ 98.

Plaintiff's current iteration of his fraud claim fails for the same reasons his initial attempt at a fraud claim failed. In addition to being based on widely rejected conspiracy

13

theories, it is not pleaded with the particularity required by Fed. R. Civ. P. 9(b). When alleging fraud or mistake, a plaintiff must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The complaint must plead such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 421 (8th Cir. 2020).

Here, Plaintiff's only assertion of fraud is that fraud resulted "due to complete failure to disclose the terms and options of signing/indorsing above collateral securities." Doc. No. 31-1, ¶ 95. Plaintiff's cursory assertion of fraud is not pleaded with sufficient particularity to comply with requirements of the federal rules—it does not identify the time, place, or contents of the misrepresentation, or the identity of the person making it. Plaintiff's relabeled fraud claim is thus futile as it fails to remedy the deficits in his initial version of the claim.

> **7. Changes the Statutory Basis for the Initial Count 7 for Peonage From 18 U.S.C. § 1581 to 42 U.S.C. § 1994 (Count 5 in the proposed Amended Complaint).**

Next, Plaintiff relabels his initial Count 7, based on 18 U.S.C. § 1581 (Peonage), as a claim based on 42 U.S.C. § 1994 (Peonage), incorporating two allegations under the initial Count 8, based on 18 U.S.C. § 1583 (Enticement into Slavery). *Compare* Doc. 1, ¶¶ 103–06, 108–09, *with* Doc. 31-1, ¶¶ 100–05. The only change to the allegations is swapping the word "(slavery)" with "This is peonage." *See* Doc. 31-1, ¶ 105.

14

Altering which statute Plaintiff relies on to assert a claim for peonage does not alter the underlying flaw with the claim—that none of the facts alleged bear any logical connection to a claim for peonage.

> Peonage is 'compulsory service in payment of a debt'" and "'compulsory service' is the equivalent of 'involuntary servitude', which the Supreme Court has defined as 'a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process.'

*United States v. Farrell*, 563 F.3d 364, 372 (8th Cir. 2009) (quoting *Bailey v. Alabama*, 219 U.S. 219, 242 (1911)) (cleaned up) (noting that threatening to put workers who "run away" in a balikbayan box and ship them back to the Philippines was a threat of physical force). Plaintiff's allegations do not state a claim for peonage.

Plaintiff alleges that he is subject to peonage because he has to work in order to pay back the loans he obtained from Wings and feared losing his home if he failed to make payments on the loans. *See* Doc. No. 31-1, ¶¶ 100, 104–05; *see also id.* ¶¶ 108, 114–15, 118, 122. Such allegations are wholly inadequate to state a claim for peonage, as the Ninth Circuit has explained:

> We recognize that economic necessity may force persons to accept jobs that they would prefer not to perform or to work for wages they would prefer not to work for. Such persons may feel coerced into laboring at those jobs. That coercion, however, results from societal conditions and not from the employer's conduct. Only improper or wrongful conduct on the part of an employer subjects him to prosecution. To illustrate this point further, an employer who truthfully informs an individual that there are no other available jobs in the market, merely provides an opportunity for a person to work for low wages, or simply takes advantage of circumstances

15

> created by others is not guilty of an offense. An employer who has not engaged in improper or wrongful conduct has not violated the law.

*Mussry*, 726 F.2d at 1453; *see also Heart of Atlanta Motel v. United States*, 379 U.S. 241, 244, 261 (1964) (rejecting the contention that "by requiring appellant to rent available rooms to Negroes against its will, Congress is subjecting it to involuntary servitude").

There is simply no question that Plaintiff—who had sufficient assets and income to obtain a loan of over $1 million to purchase his house—is not being subjected to peonage simply because Wings is requiring him to pay back the loans he used to purchase that house, and Plaintiff's relabeled claim for peonage fails for the same reasons as his initial claims and the proposed amendment is futile.

### 8. Adding a Claim for Unlawful Conversion (Count 6 in the proposed Amended Complaint).

In his "new" count 6 for unlawful conversion, Plaintiff has simply relabeled his initial Count 8, based on 18 U.S.C. § 1583 (Enticement into Slavery), initial Count 9, based on 18 U.S.C. § 1584 (Sale into Involuntary Servitude), and initial Count 10, based on 18 U.S.C. § 1589 (Forced Labor), as a claim for unlawful conversion. *Compare* Doc. 1, ¶¶ 110–12, 114–19, 122–25, *with* Doc. 31-1, ¶¶ 106–18. The only change to the allegations is in paragraph 112, which now alleges that: "While not <u>originally</u> legally theft, that transaction was not equal consideration. <u>Now that the blank indorsement has gone through rescission, these negotiable instruments are now stolen.</u>" *See* Doc. 31-1, ¶ 112 (additions are underlined).

"Conversion requires (1) willful interference with the property of another, (2) without lawful justification, that causes (3) the lawful possessor to be deprived of use and possession of the property." *Petsche v. EMC Mortg. Corp.*, 830 F. Supp. 2d 663, 673 (D. Minn. 2011) (citing *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997)). As with his other claims, Plaintiff's claim for conversion is based on a universally rejected conspiracy theory often referred to as the "vapor money" theory. The vapor money theory posits "that promissory notes (and similar instruments) are the equivalent of 'money' that citizens literally 'create' with their signatures." *McLaughlin*, 726 F. Supp. 2d at 212.

> Bolstering this argument (at least for its adherents) is the fact that once received, banks typically deposit promissory notes into their own accounts and list them as assets. Then, according to the vapor money theory, the bank purports to lend the 'money' that was "created" by the citizen's signature back to the citizen-borrower.

*Id.*

Plaintiff's Complaint and proposed Amended Complaint rely on a form of the "vapor money" theory, under which Plaintiff apparently believes that by sending Wings documents containing his signature and specific language (which he refers to as a "special indorsement"), he can then convert various documents, including the notes underlying the Mortgage and HELOC, an additional "promissory note" he created, and the monthly billing statements sent by Wings (which he claims are "bills of exchange") into "negotiable instruments," which he can then use as payments to satisfy his debts to Wings. *See* Doc. No. 31-1 ¶¶ 23, 30–34, 106–07, 116–17; *see also* footnote 1, *supra*; Doc. No. 31-1, ¶ 122. As Wings explained in briefing on its prior motions, federal courts have widely and universally rejected the theories underlying Plaintiff's allegations for decades, and

17

Plaintiff's proposed amendment is thus futile. *See McLaughlin*, 726 F. Supp. 2d at 214 (rejecting plaintiff's claims under the "Redemptionist" theory, the "vapor money" theory; and the "unlawful money" theory, and noting "all three of these theories have been universally and emphatically rejected by numerous federal courts for at least the last 25 years"); *Harp v. Police*, No. 23-2577, 2023 U.S. Dist. LEXIS 139418 (E.D. Pa. Aug. 10, 2023) ("[O]ther courts nationwide have rejected such 'frivolous' attempts to satisfy a debt through a fictitious 'bill of exchange.'"); *Rabbe v. Wells Fargo Home Mortg., Inc.*, No. 8:17-CV-131, 2017 U.S. Dist. LEXIS 88910, at *4 (D. Neb. June 9, 2017) ( "The plaintiffs' particular permutation is commonly referred to as a 'vapor money' or an 'unlawful money' claim, and has been uniformly rejected by every court to consider it."); *Hennis v. Trustmark Bank*, 2010 U.S. Dist. LEXIS 45759, *16 (S.D. Miss. May 10, 2010) ("From coast to coast, claims that debts have been paid under the redemption theory by the plaintiffs' issuance of 'bills of exchange' have been dismissed as frivolous."); *see also Demmler v. Bank One NA*, 2006 U.S. Dist. LEXIS 9409, *3 (S.D. Oh. Mar. 9, 2006) (explaining that [w]hile a promissory note may be a negotiable instrument, the note itself is not 'money.' It is nothing more than the acknowledgment of a debt and a promise to repay the debt at some date in the future").

### 9. Adding a Claim for Unjust Enrichment.

Finally, Plaintiff relabels his initial Count 11, based on 18 U.S.C. § 1593A (Benefitting Financially from Peonage, Slavery, and Trafficking in Persons), as a claim for unjust enrichment. *Compare* Doc. 1, ¶¶ 128–32, *with* Doc. 31-1, ¶¶ 120–24. The only changes to the allegations are to add "unknowingly" before "released with a blank

18

indorsement," *compare* Doc. 1, ¶ 129, *with* Doc. 31-1, ¶ 121, and make two changes to paragraph 124 so it now reads: "Due to lack of terms and communications, it is assumed that WINGS intends to entice its beneficiaries into <u>peonage</u> for financial gain <u>by having them fund their own loans</u>," *compare* Doc. 1, ¶ 132, *with* Doc. 31-1, ¶ 124 (additions/changes underlined).

"In order to establish a claim for unjust enrichment, the claimant must show that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit." *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. App. 2001). Importantly, "[a]n action for unjust enrichment does not lie simply because one party benefits from the efforts of others; instead, it must be shown that a party was unjustly enriched in the sense that the term 'unjustly' could mean illegally or unlawfully." *Id.* (quotation omitted).

As explained in prior briefing and the proceeding sections, Plaintiff's allegations are based on a widely and universally rejected conspiracy theory and can be rejected on that basis alone. Put simply, there is no credible argument that Wings was unjustly enriched by requiring Plaintiff to comply with the terms of his loans and repay to Wings the money he borrowed. Moreover, as the loans are governed by enforceable contracts that provide the repayment terms, there can be no action for unjust enrichment. *See Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012) (explaining that unjust enrichment "does not apply when there is an enforceable contract that is applicable"). As with the other changes, Plaintiff's proposed Amended Complaint is futile, and this Court should deny Plaintiff's motion.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Leave to Amend Plaintiff's Complaint for Damages is procedurally improper and meritless and must be denied.

**FOLEY & MANSFIELD, PLLP**

Dated: June 21, 2024   By: */s/ Paul W. Magyar*
Lisa M. Lamm Bachman (#264313)
Tessa Mansfield Hirte (#0396591)
Paul W. Magyar (#0399108)
250 Marquette Avenue, Suite 540
Minneapolis, MN 55401
(612) 338-8788
Email:  llammbachman@foleymansfield.com
         tmansfield@foleymansfield.com
         pmagyar@foleymansfield.com

Attorneys for Defendant Wings Financial Credit Union