**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Preston Byron Knapp,                                    Civil No. 24-434 (DWF/ECW)

       Plaintiff,

v.                                                      **MEMORANDUM**
                                                        **OPINION AND ORDER**

Wings Credit Union; *also known as*
Wings Financial Credit Union,

       Defendant.

**INTRODUCTION**

This matter is before the Court on Defendant Wings Credit Union's ("Wings")

motion to dismiss (Doc. No. 7) and motion for sanctions (Doc. No. 24), and *pro se*

Plaintiff Preston Byron Knapp's ("Plaintiff") motion to strike (Doc. No. 13) and motion

for sanctions (Doc. No. 16).[1]  For the reasons set forth below, the Court grants Wings'

motion to dismiss, grants in part and denies in part Wings' motion for sanctions, and

denies Plaintiff's motions.

**BACKGROUND**

Plaintiff initiated this action on February 12, 2024 against Wings.  (Doc. No. 1

("Compl.").)  While the exact basis for Plaintiff's Complaint is unclear, it appears that

---

[1]     In addition, Plaintiff filed a motion to alter or amend his pleadings.  (Doc. No. 31.)
However, that filing violated the terms of the Court's order that the "parties shall refrain
from filing any additional motions until the Court rules on the motions presently on the
docket."  (Doc. No. 29.)  Therefore, the Court declines to consider the motion and denies
it as moot on that ground.

Plaintiff seeks to discharge a mortgage loan and home equity line of credit, which are secured by property owned by Plaintiff and his wife, non-party Michelle Nichole Knapp.

Wings is a state-chartered credit union organized under Chapter 52 of the Minnesota Statutes.  Plaintiff and his wife have both a mortgage loan (the "Mortgage") and a home equity line of credit (the "HELOC") with Wings.  (Compl. ¶¶ 10-11; Doc. No. 10 ¶ 2, Ex. 1 ("Mortgage"); ¶ 3, Ex. 2 (Note); ¶ 4, Ex. 3 ("Revolving Credit Mortgage"); and ¶ 5, Ex. 4 ("Home Equity Credit Agreement").[2]  Under the terms of the Mortgage and HELOC, Plaintiff is required to make payments on loans when due.  (*See* Mortgage at 2-3; ¶ 3, Note at 1; Revolving Credit Mortgage at 2; and Home Equity Credit Agreement at 1.)  Specifically, Plaintiff agreed that, in return for the loans, he would pay back the principal plus interest on the debt.  (*See* Note at 1 ("In return for a loan that I have received, I promise to pay U.S. $1,119,400.00 (this account is called 'Principal'), plus interest, to the order of the Lender."); Mortgage at 2 (agreeing to "pay when due the principal of, and interest on, the debt evidenced by the Note"); Revolving Credit Mortgage at 2 ("Borrower shall promptly pay when due all amounts borrowed under the Credit Agreement, all finance charges and applicable other charges and collection costs as provided in the Credit Agreement."); Home Equity Credit Agreement at 1 ("You promise to repay to the Credit Union, or order, all advances made to you under this Plan, plus finance charges, other applicable charges, and costs of voluntary payment protection

---

[2]     The Court considers these documents as they are embraced by the complaint.  *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

for which you are responsible under this Plan.  You agree to pay the minimum payment on or before the due date.").)  Plaintiff agreed to make all payments under the Mortgage "in the form of cash, check or money order" and "in U.S. currency."  (Note at 1; Mortgage at 3.)

In November 2023, Plaintiff appointed Brandon Joe Williams ("Williams") as his "attorney-in-fact" and purportedly granted Williams the power to "[p]erform any act necessary to deposit, negotiate, sell or transfer any note, real estate, security, or draft of the United States of America, including U.S. Treasury Securities.  This includes any non-US notes, securities, drafts, etc. . . . [and] . . . indorsements, approvals, exchanges, etc." (Compl. ¶¶ 39, 43; Doc. No. 10, 6, Ex. 5 at 13-14.)

In January 2024, Williams sent Wings "orders" related to Plaintiff's mortgage loan and HELOC.  (Compl. ¶¶ 39-40.)  Plaintiff alleges that these "orders" included an "unconditional tender of payment in accordance with UCC 3-603," "a payment for US dollars," and "an unconditional order to pay."  (*Id.* ¶¶ 47, 49-50.)  Plaintiff also alleges that he "submitted another entire promissory note in order to perform on the mortgage." *Id.* ¶ 60.  While not entirely clear, Plaintiff's theory appears to be that, by signing documents included in the "orders" with a "special indorsement," he converted the documents to "negotiable instruments" which constitute "payment in US dollars," thereby satisfying his loans with Wings.  (*See id.* ¶¶ 15, 49, 74-75.)

Plaintiff asserts state-law claims for breach of contract (Count 1), breach of fiduciary duties (Count 2), and various federal claims for violations of 12 U.S.C. § 504 (Count 3), securities-related criminal statutes (Counts 4-6), and Chapter 77 of Title 18

related to peonage, slavery, and trafficking in persons (Counts 7-11). (*See* Compl.)

Presently before the Court are Wings' motion to dismiss, Plaintiff's motion to strike, and

the parties' respective motions for sanctions.

## DISCUSSION

### I.    Motion to Dismiss

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable

inferences from those facts in the light most favorable to the complainant. *Morton v.*

*Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept

as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*,

183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the

facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court

may consider the complaint, matters of public record, orders, materials embraced by the

complaint, and exhibits attached to the complaint in deciding a motion to dismiss under

Rule 12(b)(6). *Porous Media Corp.*, 186 F.3d at 1079.

To survive a motion to dismiss, a complaint must contain "enough facts to state a

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007). Although a complaint need not contain "detailed factual allegations," it must

contain facts with enough specificity "to raise a right to relief above the speculative

level." *Id.* at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements," will not

pass muster under Twombly. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

4

*Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Twombly*, 550 U.S. at 556.

*Pro se* complaints are to be construed liberally, but they still must allege sufficient facts to support the claims advanced.  *See Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).  Moreover, "a court is under no obligation to repeatedly accept baseless filings, particularly those of the sovereign citizen fashion."  *Siruk v. Minnesota*, Civ. No. 20-2373, 2021 WL 1581242, at *3 (D. Minn. Feb 22, 2021) (citing cases), *report and recommendation adopted* 2021 WL 1577681 (D. Minn. Apr. 22, 2021).

### A.    Counts 1 and 2

In Counts 1 and 2, Plaintiff alleges claims for breach of contract and breach of fiduciary duties.  Both claims appear to be based on the "vapor money" theory.  This theory typically relies on the "convoluted and nonsensical argument that a plaintiff does not owe the money advanced by the lender on his loan because the indebtedness was not funded by the lender with actual money."  *Tonea v. Bank of Am., N.A.*, 6 F. Supp. 3d 1331, 1344 (N.D. Ga. 2014).  "The essence of the 'vapor money' theory is that promissory notes (and similar instruments) are the equivalent of 'money' that citizens literally 'create' with their signatures."  *McLaughlin v. CitiMortg., Inc.*, 726 F.Supp.2d 201, 212 (D. Conn. 2010).  Here, Plaintiff alleges that by sending Wings documents containing his signature and specific language (which he calls a "special indorsement"), he can convert various documents (including the notes underlying the Mortgage and HELOC, the additional "promissory note" that he created, and the monthly billing

statements sent by Wings) into "negotiable instruments" that can be used as payments to satisfy his debts to Wings.  (*See* Compl. ¶¶ 23, 30-34.)

Unfortunately for Plaintiff, this theory has been consistently rejected by federal courts in this District and across the country as frivolous and nonsensical.  *See Connell v. Wells Fargo Bank, N.A.*, Civ. No. 10-3133, 2011 WL 4359979, at *2 (D. Minn. Sept. 19, 2011) (citing *Hennis v. Trustmark Bank*, Civ. No. 10-20, 2010 WL 1904860, at *5 (S.D. Miss. May 10, 2010) ("From coast to coast, claims that debts have been paid under the redemption theory . . . have been dismissed as frivolous.")); *Baker v. CitiMortg., Inc.*, Civ. No. 16-1103, 2016 WL 4697334, at *2 (D. Minn. Sept. 7, 2016) ("There is no legal authority that supports the 'vapor money' theory.  Indeed, it has been repeatedly rejected as frivolous by courts across the country.") (collecting cases); *Thomas v. Servbank*, Civ. No. 23-223, 2023 WL 9226936, at *8 (S.D. Ala. Dec. 7, 2023) (dismissing with prejudice a case where claims are based on the "fundamentally frivolous" variation of the "redemptionist" legal theory, to which the "vapor money theory" is a corollary); *Barnes v. Citigroup Inc.*, Civ. No. 4:10-620, 2010 WL 2557508, at *2 (E.D. Mo. June 15, 2010) (noting that the "vapor money theory" has been rejected by federal courts across the country).

Not only has the theory underlying his state-law claims been rejected, but Plaintiff otherwise fails to allege any acts by Defendants that would support either a breach of contract or breach of fiduciary duty claim.  For example, Plaintiff has not identified any contract or contractual term that Wings has allegedly breached, demonstrated that Wings owes Plaintiff a fiduciary duty, or identified any actions by Wings that would constitute a

breach of any such duty.  In short, Plaintiff's breach of contract and breach of fiduciary duty claims are frivolous and unsupported by law and fact.  Both Counts 1 and 2 are properly dismissed with prejudice.

**B.      Federal Claims**

Plaintiff also asserts a host of federal statutory claims, all of which fail.  First, Plaintiff alleges a claim under 12 U.S.C. § 504, but that section only applies to a "member bank," namely "any national bank, State Bank, or bank or trust company which has become a member of one of the Federal reserve banks."  12 U.S.C. § 221.  Wings is a state-chartered credit union organized pursuant to Chapter 52 of Minnesota Statutes and cannot be a member of one of the Federal reserve banks.  Thus, Wings is not subject to the requirements of § 504.  This claim also fails because § 504 does not provide a private right of action.  *See* 12 U.S.C. § 504(e) (providing that any penalty imposed under this statues shall be assessed by the Comptroller of Currency or the Federal Reserve Board); *see also Harp v. Police and Federal Credit Union*, Civ. No. 23-2577, 2023 WL 5152625, at *4  (E.D. Pa. Aug. 10, 2023) (holding that there is no private right of action to enforce the Federal Reserve Act and the imposition of civil penalties under that Act is carried out by federal officials).  In addition, Plaintiff has wholly failed to plead any facts to support a violation of that statute.

Second, in Counts 4 through 6, Plaintiff alleges violations of 18 U.S.C. §§ 1956 (laundering of monetary instruments), 2314 (transportation of stolen securities), and 1348 (securities and commodities fraud), all of which are criminal statutes.  Plaintiff does not have standing to bring these claims.  *See Kunzer v. Magill*, 667 F. Supp. 2d 1058, 1062

(D. Minn. 2009) ("A private citizen does not have standing either to enforce federal criminal statutes or to have such statutes enforced.").  In addition, none of these statutes provide a private right of action.  *See* 28 U.S.C. § 547 ("Except as otherwise provided by law, each United States attorney . . . shall . . .  prosecute for all offenses against the United States."); *Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 668 (S.D.N.Y. 2000) (finding that § 1956 does not expressly provide a private right of action); *Selmon-Austin El v. Wells Fargo Bank*, Civ. No. 19-2538, 2020 WL 1941322, at *3 (W.D. Tenn. Mar. 12, 2020) (same and collecting cases); *Carroll v. U.S. Equities Corp.*, Civ. No. 18-667, 2020 WL 11563716, at *13 (N.D.N.Y. Nov. 30, 2020) (holding there is no independent civil claim under 18 U.S.C. § 2314); *Barringer v. Ohio*, Civ. No. 23-1530, 2023 WL 8436427, at *2 (N.D. Ohio Dec. 5. 2023) ("Section 1348 is a criminal statute.  It does not provide a private cause of action for civil plaintiffs.").[3]

Finally, in Counts 7 through 11, Plaintiff alleges claims based on Chapter 77 of Title 18 of the U.S. Code, which pertains to various federal crimes of peonage, slavery, and trafficking in persons.  (*See* Compl. Count 7 (violation of 18 U.S.C. § 1581 (Peonage)); Count  8 (violation of 18 U.S.C. § 1583 (Enticement into Slavery)); Count 9 (violation of 18 U.S.C. § 1584 (Sale into Involuntary Servitude)); Count 10 (violation of

---

[3]    In addition, § 1348, which provides punishment for securities or commodities fraud, requires particularity in pleading under Rule 9(b).  Plaintiff alleges that Wings engaged in fraud "due to complete failure to disclose the terms and options of signing/indorsing above collateral securities." (Compl. ¶ 98.)  This conclusory allegation is not enough to satisfy the particularity requirements when pleading fraud.  Therefore, Count 6 is properly dismissed for the additional reason that it failed to plead fraud with particularity.

18 U.S.C. § 1589 (Forced Labor); Count 11 (violation of 18 U.S.C. § 1593A (Benefitting

Financially from Peonage, Slavery, and Trafficking in Persons)).)  In particular, Plaintiff

alleges that these various statutes apply because "[d]ue to a failure to do a special

indorsement" or to "use a special indorsement on the original note," Plaintiff must work

in order to pay back the loans at issue while under the threat of foreclosure and the loss of

his home.  (*See* Compl. ¶¶ 103, 108-09, 112, 119, 122, 125, 130.)  What is clear from the

pleadings is that Plaintiff obtained a loan of over $1 million to purchase his house.  The

argument that Plaintiff is now being subjected to peonage, slavery, involuntary servitude,

or forced labor because Wings is requiring Plaintiff to pay back the loans is frivolous,

nonsensical, and unsupported by the law.  Counts 7 through 11 are properly dismissed

with prejudice.

## II.     Motion to Strike

Plaintiff moves to strike Wings' motion to dismiss pursuant to Federal Rule of

Civil Procedure 12(f)(2).  Plaintiff submits that Wings' motion should be dismissed

because it contains "scandalous matters and represents an attempt by Attorney Mansfield

to simulate a legal process to the detriment of the Plaintiff and the integrity of this

Court."  (Doc. No. 13 at 1.)  Plaintiff argues that the motion contains scandalous and

prejudicial allegations and that it was prematurely filed before service perfected.

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient

defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P.

12(f).  This rule applies to motions to strike portions of a pleading.  *See VanDanacker v.

Main Motor Sales Co.*, 109 F. Supp. 2d 1045, 1047 (D. Minn. 2000).  It is not the proper

way to oppose a motion. *Id.*; *see also Hill v. Shakopee Mdewakanton Sioux Cmty.*, Civ.

No. 17-1300, 2018 WL 1446413, at *2 (D. Minn. Mar. 23, 2018). In *Hill*, the Court

explained that "[t]he proper way for a plaintiff to respond to a motion to dismiss [a]

complaint is to file a memorandum explaining why the motion should not be granted, not

to file a motion to strike the motion." *Hill*, 2018 WL 1446413, at *2. Plaintiff did not

file a memorandum in opposition to Wings' motion to dismiss. The Court denies

Plaintiff's motion to strike.

## III.    Motions for Sanctions

Wings argues that sanctions against Plaintiff are appropriate because Plaintiff's

Complaint is patently frivolous and that Plaintiff is asserting claims that are unwarranted

under any existing law or any nonfrivolous argument for extending, modifying, or

reversing existing law. On March 8, 2024, Wings served Plaintiff with a copy of a

Rule 11 Safe Harbor letter. (Doc. No. 27 ("Hirte Decl.") ¶¶ 3-5, Exs. A, B.) Plaintiff

responded, indicating his intent to continue to pursue his lawsuit. (*Id.* Ex. C.)

Rule 11 of the Federal Rules of Civil Procedure states in part:

(b)    By presenting to the court a pleading, written motion, or other
paper—whether by signing, filing, submitting, or later advocating it—an
attorney or unrepresented party certifies that to the best of the person's
knowledge, information, and belief, formed after an inquiry reasonable
under the circumstances:

    1.    it is not being presented for any improper purpose, such as to
          harass, cause unnecessary delay, or needlessly increase the
          cost of litigation; [and]

    2.    the claims, defenses, and other legal contentions are
          warranted by existing law or by a nonfrivolous argument for

> extending, modifying, or reversing existing law or for establishing new law . . . .

Fed. R. Civ. P. 11(b).  In addition, Rule 11(c) provides for the imposition of sanctions when there is a violation of Rule 11(b).  Specifically, the rule provides:

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

Fed. R. Civ. P. 11(c)(2).  Such a motion for sanctions may only "be filed or . . . presented to the court" if "the challenged paper, claim, defense, contention, or denial" is not "withdrawn or appropriately corrected" within the 21 day period.  Thus, Rule 11(c)(2) creates a "safe harbor" where a party is given the opportunity to withdraw or correct the challenged paper before a sanctions motion is filed.  Plaintiff has not done so.

The purpose of sanctions under Rule 11 is to "deter improper behavior, not to compensate the victims of it or punish the offender." *Hanson v. Loparex, Inc.*, Civ. No. 09-1070, 2011 WL 3609381, at *6, (D. Minn. Aug. 15, 2011) (quoting 5A Charles Alan Wright and Arthur Miller, *Federal Practice and Procedure* § 1336.3, at 689 (3d ed. 2004)).  And while the Court construes motions by *pro se* litigants liberally and in their favor, *pro se* litigants are subject to the same Rule 11 standards as licensed attorneys. *Carman v. Treat*, 7 F.3d 1379, 1381 (8th Cir. 1993).  Courts evaluate Rule 11 motions using a standard of objective reasonableness to assess the litigant's conduct. *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991) ("[W]e hold that it imposes on any party who signs a pleading, motion, or other paper—whether the party's

11

signature is required by the Rule or is provided voluntarily—an affirmative duty to

conduct a reasonable inquiry into the facts and the law before filing, and that the

applicable standard is one of reasonableness under the circumstances.")  And in

determining an appropriate sanction, the Court considers factors such as "the

wrongdoer's history, experience and ability, the severity of the violation, [and] the degree

to which malice or bad faith contributed to the violation."  *Pope v. Fed. Express Corp.*,

49 F.3d 1327, 1328 (8th Cir. 1995).

Wings argues that sanctions are appropriate in this case for several reasons.  First,

Wings maintains that Plaintiff's breach of contract and fiduciary duty claims are based on

a conspiracy theory that has been roundly rejected by federal courts.  Second, Wings

argues that every count of Plaintiff's complaint violates Rule 11 because every count fails

to set forth any cognizable claims for relief because they are not supported by law or any

reasonable argument for the extension or modification of existing law.  Wings requests

that this Court award sanctions against Plaintiff sufficient to deter future misconduct and

to award Wings reasonable attorney fees, costs, disbursements, and other expenses

incurred in having to defend this action.

The Court agrees that Plaintiff's claims are meritless and that their assertion is not

reasonable.  As discussed above, Plaintiff asserts claims that arise from a conspiracy

theory that has been widely rejected by federal courts.  In addition, Plaintiff's statutory

claims are frivolous because the cited statutes do not apply to Wings, do not provide a

private right of action, and assert claims that have no basis in law or fact.  It is apparent to

the Court that Plaintiff is attempting to litigate clearly meritless claims.  Even so, the

Court declines to award monetary sanctions because the Court is dismissing all of Plaintiff's claims with prejudice, which is in and of itself a sanction. The Court believes that this dismissal with prejudice will sufficiently deter Plaintiff from filing additional actions or pursuing similar legal theories. Therefore, the portion of Wings' motion seeking monetary sanctions is respectfully denied. However, the Court does believe that an appropriate additional sanction is to enjoin Plaintiff from filing any civil action in this District Court against Wings or any affiliated parties, without first obtaining leave of Court.

For the above reasons, Wings' motion for sanctions under Rule 11 is denied as to any monetary sanction and granted as set forth above. In particular, Plaintiff's Complaint is dismissed with prejudice and Plaintiff is hereby required to obtain Court approval before filing any action in the United States District Court for the District of Minnesota against Wings, or any affiliated parties.

Plaintiff also moves for sanctions against Wings' attorney. Plaintiff argues that Wings docketed several filings prematurely—before service was perfected. While not clear, Plaintiff appears to take issue with Wings' filing of its motion to dismiss before Plaintiff perfected service. The Court finds no merit in Plaintiff's argument and that Plaintiff's motion lacks merit. For this reason, it is denied.

## CONCLUSION

For the above reasons, all claims of Plaintiff's Complaint are properly dismissed in their entirety with prejudice.

## ORDER

Based upon the record before the Court, and the Court being otherwise duly

advised in the premises, **IT IS HEREBY ORDERED** that:

1.      Wings' motion to dismiss (Doc. No. [7]) is **GRANTED.**

2.      Plaintiff's claims in the Complaint (Doc. No. [1]) are **DISMISSED WITH**

**PREJUDICE**.

3.      Plaintiff's motion to strike (Doc. No. [13]) is **DENIED**.

4.      Plaintiff's motion to amend (Doc. No. [31]) is **DENIED AS MOOT**.

4.      Plaintiff's motion for sanctions (Doc. No. [16]) is **DENIED**:

5.      Wings' motion for sanctions (Doc. No. [24]) is **GRANTED IN PART** and

**DENIED IN PART** as follows:

        a.      This case is dismissed with prejudice;

        b.      Plaintiff is hereby enjoined from filing any civil action in this

District Court against Wings or any affiliated parties, without first obtaining leave

of Court; and

        c.      All monetary sanctions are denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  November 4, 2024               s/Donovan W. Frank
                                       DONOVAN W. FRANK
                                       United States District Judge